**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ALANNA DUNN, on behalf of herself and others similarly situated, | ) ) | Case No. 1:23-CV-00364 |
| | ) | |
| Plaintiff, | ) | Judge Bridget Meehan Brennan |
| | ) | |
| v. | ) | |
| | ) | **DEFENDANT'S BRIEF IN OPPOSITION** |
| CUYAHOGA COUNTY, *et al.*, | ) | **TO PLAINTIFF'S MOTION TO AMEND** |
| | ) | **COMPLAINT** |
| Defendants. | ) | |

Defendant Cuyahoga County respectfully submits this brief in opposition to Plaintiff Alanna Dunn's motion to amend her Complaint to add five new parties to the lawsuit and assert additional allegations. For the reasons set forth below, this motion to amend the complaint should be denied because it was filed long after the expiration of the deadline for amending the pleadings, and Plaintiff has not made any attempt to show good cause to amend the Case Management Order under Fed R. Civ. P. 16(b) or excusable neglect, as required by Fed. R. Civ. P. 6(b) and the Court's Standing Order.  Thus, the Motion to Amend should be denied in its entirety.

## I.    BACKGROUND & FACTS

On February 23, 2023, Plaintiff Alanna Dunn filed a lawsuit against Cuyahoga County alleging her Fourteenth Amendment Rights were violated when she was allegedly over detained in the Cuyahoga County Corrections Center ("CCCC"). Plaintiff further asserted class claims in her Complaint, speculating that other inmates incarcerated in the CCCC were over detained. The County disputes these allegations.

1

On June 13, 2024, the Court issued a "Case Management Order" setting case deadlines. Pursuant to F.R.C.P. 16(b)(3), the Court ordered that "[t]he pleadings shall be amended and new parties shall be joined on or before October 5, 2023. (Doc. #21, PageID #98). In addition to the Case Management Order, the Court provided the Parties with an Initial Standing Order (*See* Doc. #3), which provides in relevant part:

> Motions to continue or extend deadlines must be submitted, in writing, well in advance of the date to be continued. Unless jointly filed, all motions to continue must state the position of all other parties, meaning if it is unopposed or opposed.
>
> Motions to continue or extend deadlines for submissions, discovery, or dispositive motions submitted after the deadline has passed will be denied unless the requesting party can show excusable neglect.

(Doc. #3, PageID #29), Moreover, when the Parties submitted their Joint Motion to Extend Case Management Deadlines ("Motion to Extend Deadlines") (Doc.# 28), Plaintiff acknowledged the Court's Initial Standing Order requiring requests for extension to be submitted "**well in advance** of the date to be continued." (Emphasis added) (Doc. #27, PageID #130, fn. 3).

Since the filing of the Complaint, the Parties have been actively litigating the case over the past year-and-a-half.  The parties submitted multiple status reports to the Court apprising it of any discovery issues, status of settlement discussions, and other matters pertinent to this case. (See Status Reports, dated July 27, 2023 (Doc. #22), October 23, 2023 (Doc. #25), January 1, 2024 (Doc. #26), and March 11, 2024 (Doc.# 27)).  Three of the Status Reports were submitted *after* the October 23, 2023, deadline to amend the pleadings had expired.   In none of these status reports did Plaintiff mention the need to amend the Complaint to add new parties, allegations, or claims.

Indeed, in the last Joint Status Report submitted in March 2024, Plaintiff could have alerted this Court and Defendant of her intent to amend her Complaint and add new parties but chose not to. This is significant because the Parties were asking the Court to modify the Case Management

Order to extend *other* deadlines in the Case Management Order. (*See* Doc. #27). In their Joint Motion to Extend Deadlines, however, the Parties agreed to *not* modify the October 23, 2023 deadline for amending the pleadings, particularly given that the deadline had already expired.  On March 15, 2024, therefore, this Court granted the Parties' Joint Motion to Amend the Case Management Order that extended the deadlines to complete discovery and submit dispositive motions and class certification motions/memoranda, but did *not* amend the October 23, 2023, deadline for amending the pleadings.  (*Id.*)

On August 1, 2024, Plaintiff asked the County if it would consent to Plaintiff filing an Amended Complaint that would include five new parties and additional allegations. Plaintiff further requested a response from the County by the close of business that day, which the County could not provide on such short notice. Plaintiff then proceeded to file its Motion for Leave and proposed Amended Complaint on August 2, 2024, nearly ten months after the deadline to amend the pleadings had passed.

## II.    LEGAL ANALYSIS

Although Plaintiff's Motion for Leave alleges that leave to amend the Complaint should be "freely granted" under Fed. R. Civ. P. 15(a), this argument fails to appreciate that the Court established a deadline for amending pleadings, and that it is therefore incumbent upon Plaintiffs to prove both (i) "good cause" for retroactively extending the October 23, 2023, deadline under Fed. R. Civ. P. 16(b), and (ii) "excusable neglect" for modifying the deadline after its expiration under Fed. R. Civ. P. 6(b) and the Court's Standing Order.

In its Motion for Leave, however, Plaintiff completely fails to make any attempt to satisfy the "good cause" legal standard for amending a Case Management Order under Fed. R. Civ. P. 16(b).  *In re Natl. Prescription Opiate Litigation*, 956 F.3d 838, 843 (6th Cir.2020). Moreover, the Motion for Leave makes no attempt to establish the "excusable neglect" standard, even though this

Court's Initial Standing Order and binding Supreme Court authority expressly require the moving party to satisfy this legal standard. *See Pioneer Investment Services Company v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 389, 113 S.Ct. 1489 (1993).

Indeed, it is well established that a district court does not abuse its discretion in denying a motion for leave to amend a complaint if it has been filed *after* the Rule 16 deadline for amendments has passed. *See Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir.2003). As the Sixth Circuit explained in *Leary*, "Once the scheduling order's deadline passes, a plaintiff first must show good cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a)." *Id.,* citing *See Sosa v. Airprint Sys.*, 133 F.3d 1417, 1419 (11th Cir.1998)*.*  In this regard, the primary focus of the good cause standard is "the moving party's diligence in attempting to meet the case management order's deadline." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002).  Moreover, another "important consideration" under Rule 16(b)(4) is "whether the opposing party will suffer prejudice by virtue of the amendment." *Leary*, 349 F.3d at 906.

In this regard, the Sixth Circuit has held that compliance with Rule 16(b)'s "good cause" standard is "not optional," and must be satisfied before the Court can grant a motion for leave under Fed. R. Civ. P. 15(a). *See In re Natl. Prescription Opiate Litigation*, 956 F.3d 838, 843 (6th Cir.2020) (citations omitted). In *National Prescription Opiate Litig.*, in fact, the Sixth Circuit *reversed* a district court's decision granting the plaintiffs leave to amend their complaint because it was granted *after* the deadline for amending the pleadings had expired, and the plaintiff failed to satisfy the "good cause" standard.   Moreover, it held that the district court could grant leave to amend only if the plaintiffs demonstrated that "despite their diligence they could not meet the original deadline." *Id.,* quoting *Leary*, 349 F.3d at 907. In reversing the district court's ruling, therefore, the

4

Sixth Circuit found that "neither the plaintiffs nor the district court even attempted to show that the plaintiffs 'demonstrated diligence as required by Rule 16(b),'" ruling that the plaintiffs did not amend their complaint to add new claims "because they *expressly chose not to bring them*" and concluded "[n]ot a circuit court in the country, so far as we can tell, would allow a district court to amend its scheduling order under these circumstances. *Id.* at 843-844.

Additionally, because Plaintiff did not timely move for an extension of time before the expiration of the deadline, it also must satisfy the "excusable neglect" standard set forth in Fed. R. Civ. P. 6(b) and show why she failed to comply with the Court's deadline for amending the pleadings. *See Pioneer Investment Services Company v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 389, 113 S.Ct. 1489 (1993). In *Pioneer Investment Services Company*, the U.S. Supreme Court listed several factors to consider in determining whether excusable neglect exists, including: (1) the danger of prejudice to the other party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; (4) whether the delay was within the reasonable control of the late party; and (5) whether the late party acted in good faith. *Id.* at 395. Yet, Plaintiff's Motion ignores this "excusable neglect" standard altogether, let alone discuss any of the foregoing five (5) factors.

For these reasons, therefore, Plaintiff's Motion for Leave to File an Amended Complaint should be denied. Here, as in *Natl. Prescription Opiate Litig.*, Plaintiff has not even attempted to satisfy the "good cause" standard established by Fed. R. Civ. P. 16(b) and has made no attempt to satisfy the "excusable neglect" standard required by Fed. R. Civ. P. 6(b). While it may attempt satisfy both standards in its Reply Brief, it is well established that the moving party cannot raise new arguments in a Reply Brief that could and should have been raised in the original Motion. *See Canady v. Ortho McNeil Pharm.*, Inc., 2014 WL 1653349, at *4 (N.D. Ohio Apr. 24, 2014) (citing

*Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) (explaining reply briefs allow movant to reply to opposition's arguments, not raise new arguments in support of motion).  In any event, the fact remains that, even if new arguments were raised, they will be legally insufficient to satisfy the applicable legal standards.  Accordingly, the Motion for leave should be denied.

### A.  <u>Plaintiff's Motion Failed To Satisfy Rule 16(b)'s Good Cause Standard</u>

Plaintiff cannot satisfy the "good cause" standard required to amend the Court's Case Management Order after the expiration of the deadline.   Plaintiff erroneously contends the County is at fault for their failure to timely amend the Complaint, arguing that only after the County "abruptly reversed course" on mediation that it decided to seek leave to amend their Complaint to add five new parties. This is not a compelling argument for several reasons.

First, nothing prevented Plaintiff from adding new parties prior to the October 5, 2023, deadline, and it appears Plaintiff simply elected to ignore the deadline.  The County never promised or guaranteed that it would go to mediation and was never asked by Plaintiffs to extend any of the case management deadlines pending the conclusion of any proposed mediation.  Prior to mediation, Plaintiff agreed to submit a global demand to resolve the entire case. This did not happen because Plaintiff wanted to engage in extensive, rather than targeted discovery, prior to mediation.  Defense counsel also could not agree to mediation until after it received a global demand, discussed it with the client, and received authority to go forward with mediation. Consequently, an early mediation was never guaranteed – only a potentiality, contingent upon several other factors/events occurring.

Ultimately, however, this excuse does not matter because a defendant's willingness to mediate a case does not operate as a blanket excuse for a plaintiff to ignore the deadlines contained in the Court's Case Management Order.  Like the plaintiffs in *In re Natl. Prescription Opiate Litigation*, Plaintiff chose not to amend her Complaint before the deadline to amend under the Case

Management Order had passed. *Id.*, 956 F.3d at 843. As such, Plaintiff cannot satisfy the "good cause" standard required by binding Sixth Circuit precedent for extending a deadline that passed nearly ten months ago. *Id.* at 843-844.

Second, Plaintiff does not argue that the five additional Defendants are necessary for class certification. She simply desires to add them to the case. If Plaintiff is an adequate class representative, as alleged in the Complaint, then these additional Defendants are unnecessary and do not need to be added. If they are necessary for class certification, Plaintiff should have added them long before passage of the amendment deadline. Stated differently, if Plaintiff knew Ms. Dunn was an inadequate class representative, she should not have waited over a year to correct this deficiency.

Third, Plaintiff never mentioned adding additional parties or allegations to the lawsuit until August 1, 2024, when it contacted the undersigned about the proposed amendment. But Plaintiff knew as early as June 19, 2024, that Defendant was considering postponing mediation until after the Court ruled on class certification. Admittedly, the County did not make a final decision on whether to go to early mediation until July 2, 2024. But this does not explain why Plaintiff waited until August 1, 2024, -- over 10 months after the deadline had expired – to request leave to amend her lawsuit.

**B.** **<u>Defendant will be prejudiced if leave is granted</u>**

Plaintiff also cannot show that Defendant will not be prejudiced by granting leave to amend over ten months after the expiration of the deadline.  This case has been pending since February 2023, and Defendant has prepared its defense to the class allegations and Ms. Dunn's individual claims based on the allegations in the original Complaint. Plaintiff now seeks to add additional parties and engage in additional discovery. With the additional parties and allegations in the

Complaint, Defendant must now re-examine its entire defense of this case, and alter its defense strategy, including whether it will need to seek leave to identify expert witnesses since that deadline expired for both parties several months ago. In addition, Defendant will need to engage in a significant amount of new discovery, including service of additional interrogatories, request for production of documents, and perhaps issue subpoenas to third parties. Finally, Defendant will need to take additional depositions due to the proposed amendments.

Furthermore, Defendant will be required to respond to additional discovery from Plaintiff's counsel. *Defendant has already produced approximately a million of pages of documents*. Although Defendant took exception to the overbroad nature of Plaintiff's discovery requests, Defendant nevertheless opted not to burden this Court with unnecessary discovery disputes and instead produced millions of pages of documents. Plaintiff also submitted the maximum number of interrogatories permitted by rule and *has submitted **seventy** requests for production of documents*. In their most recent set of document requests, which Plaintiff told the Court would be "modest," Plaintiff submitted extremely broad and burdensome discovery requests, which may require Defendant to spend weeks (if not months) compiling, reviewing, and producing responsive documents.

A copy of Plaintiff's most recent discovery requests is attached as Exhibit 1. Some examples of the overbreadth of these requests includes the following:

51. All communications with the Cuyahoga County Clerk of Courts concerning detainees being held at the Jail after their release triggering event.

* * *

55. All meeting notes or minutes concerning internal Jail meetings or Jail meetings with outside entities (*e.g.*, the City of Cleveland, Cleveland Municipal Court, the Cuyahoga County Clerk of Courts), during which attendees discussed: (a) Jail detainees being held beyond release, or (b) Jail release and/or booking policies and procedures. This includes, but is not limited to, Central Booking Meetings, Jail

Review Meetings, Prisoner Held Beyond Release Meetings, and Warden/Admin Meetings.

52. All documents (including reports) issued by the Cuyahoga County Clerk of Courts listing detainees who were held at the Jail after their release triggering event."

\* \* \*

58. All daily, weekly or periodic reports submitted by Leah Palagyi since January 1, 2018.

59. All daily, weekly or periodic reports submitted by Russell Jaenke since January 1, 2018, including all Lieutenant Daily Reports.

60. All daily, weekly, or periodic reports submitted by Kevin O'Donnell since January 1, 2018.[1]

\* \* \*

70. The personnel or employment files for the following individuals:

    a.  All employees who have worked as or held the "Jailer" position since January 2018.

There is nothing modest about these requests, and it is anticipated Plaintiff's counsel will submit additional interrogatory responses for each of the five plaintiffs she is seeking to add to this lawsuit.

Accordingly, Plaintiff's proposed amendment will require the County to essentially start over, reexamine its entire defense of this 1 ½ year-old case, and prepare a new defense strategy. With all the additional paper discovery and the approximately twenty (20) depositions that still need to be taken, Defendants will be prejudiced in its defense of this case.

**C.**    **Plaintiff does submit any argument or evidence that its failure to timely amend constitutes excusable neglect**

As previously discussed, the plain language of Fed. R. Civ. P. 6(b), binding Supreme Court precedent, and this Court's standing order (Doc.#3) all require that the Plaintiffs satisfy the "excusable neglect" standard if they want to extend the deadline established in the Case

---

[1] Most of these document requests could have been submitted several months ago. Instead, Plaintiff waited until just prior to the Parties beginning depositions to submit them.

Management Order *after* the deadline has expired.  In her Motion for Leave, however, Plaintiff completely ignores this legal requirement and fails to address whether her actions constituted excusable neglect. Therefore, Plaintiff has failed to comply with the requirements of Fed. R. Civ. P. 6(b) and the Court's Initial Standing Order.

For this reason, standing alone, therefore, Plaintiff's motion for leave to amend the complaint, after the expiration of the deadline, should be denied.  Indeed, even if Plaintiffs attempt to show "excusable neglect" in their Reply Brief, the fact remains that they cannot satisfy this legal standard, which requires a balancing of the five (5) factors established by the Supreme Court.  In this case, all five factors weigh against granting leave because, for the reasons previously discussed above in Sections A. and B., (1) there is a "danger of prejudice" to  to the other party; (2) the length of the delay and its potential impact on the proceedings is great, (3) there is no valid reason for why Plaintiff waited ten (10) months to move for leave; (4) the 10-month delay was "within the reasonable control of the late party; and (5) the plaintiff has failed to show that it acted in good faith by ignoring the Court's deadline. *See Pioneer Investment Services*, 507 U.S. at 395.  Accordingly, the Court should conclude that Plaintiff cannot satisfy the excusable neglect standard.

## III.    CONCLUSION

For the above reasons, Plaintiff's motion for leave to amend her original complaint should be denied. The proposed amendment is too late, Plaintiff has not presented good cause or excusable neglect for her untimely request for leave to amend, and Defendant will be prejudiced if leave is granted.

Respectfully submitted,

MICHAEL C. O'MALLEY, Prosecuting
Attorney of Cuyahoga County, Ohio

BY:  */s//Brendan D. Healy*_____
BRENDAN D. HEALY (0081225)
bhealy@prosecutor.cuyahogacounty.us
Tel: (216) 698-6447 / Fax: (216) 443-7602
JAKE A. ELLIOTT (0093521)
jelliott@prosecutor.cuyahogacounty.us
Tel: (216) 443-5756
Cuyahoga County Prosecutor's Office
1200 Ontario Street, 8th Floor
Cleveland, Ohio 44113

*Counsel for Defendant Cuyahoga County*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

ALANNA DUNN

                Plaintiff

*v.*

CUYAHOGA COUNTY, *et al.*

                Defendants

Case No. 1:23-cv-00364

Judge Bridget Meehan Brennan

---

## PLAINTIFF'S THIRD REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Rule 26.3 of the Local Civil Rules of the United States District Court for the Northern District of Ohio, Plaintiff, Alanna Dunn, requests that Defendant, Cuyahoga County, produce for examination, inspection, and copying, within thirty (30) days of the service hereof, all documents described below.

### DEFINITIONS

1.      Common Pleas Queue refers to the "workflow queue" or lists generated by CJIS which informs Jail staff that a detainee has posted bond or is entitled to release pursuant to a court order or journal entry *See* CCSD Release Clerk Duties Responsibilities at 16-17.

2.      Cuyahoga County Clerk of Courts means the Cuyahoga County Clerk of Courts and any of her agents and employees.

3.      "Concerning," "relating to," and "referring to," mean and include anything which discusses, describes, refers to, forms any part of the basis for, reflects, embodies, contains, analyzes, reports on, comments on, evinces, constitutes, sets forth, considers, concerns, bears upon, or is in any way factually, legally, or logically connected to the matter inquired thereof.

1



4.      "Defendant" or the "County" means Cuyahoga County and any of its agents or employees.

5.      "Detainee" means any person held or detained at the Jail (defined in paragraph 7 of this section) whether pre-trial, post-conviction, or otherwise.

6.      "Document" means any document or electronically stored information as described in Federal Rule of Civil Procedure 34(a), and includes communications, electronic or otherwise, and any and all other means of transmitting information. A draft or nonidentical copy is a separate document within the meaning of this term.

7.      "Jail" means the Cuyahoga County Corrections Center or any other facility that the County uses to hold or detain people in its custody.

8.      "Release triggering event" means the event that entitled a detainee to release, including but not limited to: the declination, dismissal, or refusal of all criminal charges; a release order from a court; the satisfaction of all conditions of pre-trial release, including the paying or posting of sufficient sureties; or the expiration of a sentence.

## **INSTRUCTIONS**

1.      You are requested to produce not only those documents in your possession, custody, or control, but also documents in the possession, custody, or control of your present or former employees, representatives, affiliates, parents, subsidiaries, owners, members, shareholders, lenders, attorneys, insurers, agents, or other persons acting or purporting to act on your behalf as well as those documents in the possession, custody, or control of entities that you, directly or indirectly, control, manage, or in which you are a principal or have an equity interest.

2

2.     Each Request shall be deemed to be continuing in nature. If at any time additional documents come into your possession, custody, or control or are brought to your attention, prompt supplementation of your response to these Requests is required.

3.     For each document requested herein that is withheld from production on the ground of privilege, furnish the following: (a) the type of document (i.e., letter, e-mail, memorandum, etc.) or some other means of identifying it; (b) its subject matter (specific enough to enable a determination to be made concerning the propriety of the assertion of the privilege); (c) its date; (d) its author(s), all addressee(s) and recipient(s), as well as all persons who have viewed or possessed the document; (e) its present location; and (f) the claim of privilege with respect thereto.

4.     Consistent with Rule 34(b)(2)(E) of the Federal Rules of Civil Procedure, you shall produce all documents in the way they are maintained in the usual course of business, and you shall organize and label the documents to correspond with the categories in these Requests. A Request for a document shall be deemed to include a Request for any and all file folders within which the document was contained, transmittal sheets, cover letters, exhibits, enclosures, or attachments to the document in addition to the document itself.

5.     If and to the extent documents are maintained in a database or other non-standard electronic format, you shall produce, along with the document(s), software that will enable access to the document(s) as you would access such document(s) in the ordinary course of business or, if the documents are not used in the ordinary course of your business, you shall produce software that will enable the document(s) to be understood.

6.     Documents attached to each other should not be separated.

7.     Documents are to be produced in full, unredacted, and unexpurgated form.

3

8.      Documents not otherwise responsive to these Requests shall be produced if any such documents mention, discuss, refer to, or explain the documents which are responsive to these Requests.

9.      If you object to any part of any Request, you shall state fully the nature of and reason for the objection. Notwithstanding any objections, you shall nonetheless comply fully with the other parts of the Request not objected to.

10.     If you respond that there are no responsive documents to a Request or a part of a Request, you shall (a) state in writing that you conducted a good faith search for the requested documents; (b) describe the extent and nature of the search; and (c) state that, based on the search, there are no requested documents in your possession, custody, or control or in the possession, custody, or control of any persons encompassed by paragraph 1 of this section.

11.     Each Request shall be construed independently and not with reference to any other Request for the purpose of limitation.

12.     The terms "all" and "each" shall be construed as "all and each."

13.     The term "any" shall be construed as "any and all."

14.     The connectives "and" and "or" shall be construed either distinctively or conjunctively as necessary to bring within the scope of the Request all responses that might otherwise be construed to be outside of its scope.

15.     The use of the singular form of any word includes the plural and vice versa. The past tense shall include the present tense and vice versa.

16.     Produce each document in accordance with the default ESI formatting specified in Exhibit A. The parties will meet and confer on the production format as needed.

17.     **Unless otherwise stated, the relevant timeframe for each request is May 1,**
**2019, up until the date of the trial in this matter.**

## DOCUMENTS REQUESTED

49.     A spreadsheet[1] sufficient to show the following for all bonds or release orders
entered into the Common Pleas Queue between January 1, 2019, and the date of the trial in this
matter:

    a.  The date and time when the Cuyahoga County Clerk of Courts (or any other
individual or entity) entered the bond or release order information into the Common
Pleas Queue.

    b.  The date and time Jail staff pulled or retrieved the bond or release order information
from the Common Pleas Queue.

    c.  The identity of the Jail staff member who pulled or retrieved the bond or release
order information from the Common Pleas Queue.

50.     All documents relating to policies and procedures concerning processing and
releasing detainees after a Common Pleas bond or release order has been entered, including pulling
bonds and release orders from the Common Pleas Queue during or after business hours.

51.     All communications with the Cuyahoga County Clerk of Courts concerning
detainees being held at the Jail after their release triggering event.

52.     All documents (including reports) issued by the Cuyahoga County Clerk of Courts
listing detainees who were held at the Jail after their release triggering event.

53.     To the extent not already produced in response to Request 52 or other prior requests,
all documents (including reports) issued by any entity concerning or listing detainees who were
held at the Jail after their release triggering event.

---

[1] If a spreadsheet cannot be generated, please provide documents sufficient to show the information
requested.

54.     All documents (including reports) reflecting reviews or analyses conducted by the Jail concerning any documents responsive to Requests 52 or 53.

55.     All meeting notes or minutes concerning internal Jail meetings or Jail meetings with outside entities (*e.g.*, the City of Cleveland, Cleveland Municipal Court, the Cuyahoga County Clerk of Courts), during which attendees discussed: (a) Jail detainees being held beyond release, or (b) Jail release and/or booking policies and procedures. This includes, but is not limited to, Central Booking Meetings, Jail Review Meetings, Prisoner Held Beyond Release Meetings, and Warden/Admin Meetings.

56.     All corrective action plans, and drafts thereof, concerning policies or procedures for releasing detainees from the Jail.

57.     The personnel or employment files for the following individuals:

   a.  All employees who have worked in the "Releases" or "Records Checks" departments since January 1, 2018.

   b.  All individuals who served as civilian supervisors of the "Releases" or "Records Checks" departments since January 1, 2018, including, but not limited to, Leah Palagyi.

   c.  Russel Jaenke.

   d.  Kevin O'Donnell.

58.     All daily, weekly or periodic reports submitted by Leah Palagyi since January 1, 2018.

59.     All daily, weekly or periodic reports submitted by Russell Jaenke since January 1, 2018, including all Lieutenant Daily Reports.

60.     All daily, weekly or periodic reports submitted by Kevin O'Donnell since January 1, 2018.

6

61.     All offensive grids of disciplinary matrices that have been in effect since January 1, 2018.

62.     The Justice Services Reform Committee Report on Central Booking.

63.     The report referenced in Joseph Greiner's December 6, 2019 email to David Schilling.

64.     All documents relating to, and including, the jail transition plan created by the consultant that was hired by the City of Cleveland, as discussed in the document tilted, "R2014-0073: Cleveland Jail Operations Follow-Up Questions."

65.     All documents concerning Reginald Haymon's December 2023 detention at and release from the Jail.

66.     All documents concerning Adam Day's February 2022 detention at and release from the Jail.

67.     All documents concerning Eric Zeider's April 2022 detention at and release from the Jail.

68.     All documents concerning Cameron Leonard's July 2022 detention at and release from the Jail.

69.     All documents concerning Jason Wilson's May 2022 detention at and release from the Jail.

///

///

///

///

Drew Legando (0084209)
MERRIMAN LEGANDO WILLIAMS & KLANG, LLC
1360 West 9th Street, Suite 200
Cleveland, Ohio 44113
T. (216) 522-9000
F. (216) 522-9007
E. drew@merrimanlegal.com

_____/s/_____
Akeeb Dami Animashaun
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
T. (929) 266-3971
E. animashaun@pm.me

Kate Schwartz
Caryn Lederer
Emily Brown
HUGHES SOCOL PIERS RESNICK & DYM LTD.
70 W. Madison Street, Suite 4000
Chicago, Illinois 60602
T. (312) 580-0100
E. kschwartz@hsplegal.com
    clederer@hsplegal.com
    ebrown@hsplegal.com

Janet Herold
JUSTICE CATALYST LAW
40 Rector Street, Floor 9
New York, New York 10006
T. (518) 732-6703
E. jherold@justicecatalyst.org

*Counsel for Plaintiff & Proposed Class*

## EXHIBIT A: DEFAULT ESI FORMAT

1. Images:
   a. Produce documents in Single Page Group IV TIFF files
   b. Image Resolution at least 300 DPI
   c. Black and White unless color is necessary to understand the meaning, or is requested
   d. File Naming Convention: Match Bates Number
   e. Insert Placeholder image for files produced in Native form
   f. Produce in native format data (including excel), word processing documents, presentations, spreadsheets, images, audio, video, and any file that is not reasonably usable in TIFF format
   g. Original document orientation shall be retained
   h. Scanned paper documents should not be merged into a single record, nor single documents split into multiple records
   i. For ESI, parent/child relationships shall be preserved

2. Full Text Extraction/OCR:
   a. Produce full extracted text for all file types of ESI (but not for redacted text)
   b. Production format: Single text file for each document, not one text file per page
   c. File Naming Convention: Match Bates Number

3. Load File Specifications:
   a. Images Load File: Opticon OPT file
   b. Metadata Load File: Comma-separated value (.csv) with field header information added as the first line of the file
   c. Extracted TEXT: Reference File Path to TEXT file in .csv file
   d. Native Files Produced: Reference File Path to Native file in .csv file

4. ESI Production Metadata Fields:
   a. bates_start: Beginning Bates Number
   b. bates_end: Ending Bates Number
   c. BegAttach: Beginning Bates number of the first document in an attachment range
   d. EndAttach: Ending Bates number of the last document in attachment range
   e. Custodian: Name of the Custodian of the File(s) Produced – Last Name, First Name format
   f. Custodians: If de-duplicated, list all custodians of the document.
   g. File_Name: Filename of the original digital file name
   h. native_file: Path and filename to produced Native file
   i. Email_Subject: Subject line extracted from an email message
   j. Document_name: Title field extracted from the metadata of a non-email document
   k. Document_Author: Author field extracted from the metadata of a non-email document
   l. Email_author: From field extracted from an email message
   m. Recipients: To or Recipient field extracted from an email message
   n. Cc: CC or Carbon Copy field extracted from an email message

    o.  BCC:  BCC or Blind Carbon Copy field extracted from an email message
    p.  Email_Received:  Received date of an email message (mm/dd/yyyy format)
    q.  Email_Sent:  Sent date of an email message  (mm/dd/yyyy format)
    r.  Created_Date_Time:  Date that a file was created  (mm/dd/yyyy format)
    s.  Modified_Date_Time:  Modification date(s) of a non-email document
    t.  LastModBy: Last Modified/Saved By information as derived from the properties of the document
    u.  File_name: Original file name as it appeared in the source
    v.  Attach_count:  Number of attachments
    w.  Attach_Names:  Filenames of attachments
    x.  File_Type: Type of document
    y.  File_Path: File path storage location of the document or email if the source application allows for the creation of folders.  Any email container name should be included in the path.
    z.  Pages: Page count
    aa. Fingerprint:  MD5 or SHA-1 has value generated by creating a binary stream of the file
    bb. ConversationID: Email ConversationID
    cc. MsgID: Email MsgID
    dd. Attach_Count: Number of attachments
    ee. Attach_Names: Filenames of attachments
    ff. HasRevisions: Yes if word processing document with revisions
    gg. HasComments: Yes if electronic document with comments
    hh. HasHiddenContent:  Yes if electronic document with hidden content
    ii.  Confidential: Yes if confidential, otherwise blank
    jj.  Isredacted: Yes if redacted otherwise blank
    kk. RedactionReason: Reason for redaction
    ll.  Prod_Vol:  Identifies production media deliverable
    mm. Text_file: File path to Extracted Text/OCR File

5.  Paper Documents Metadata Fields:
    a.  BegBates: Beginning Bates Number
    b.  EndBates: Ending Bates Number
    c.  BegAttach:  Beginning Bates number of the first document in an attachment range
    d.  EndAttach:  Ending Bates number of the last document in attachment range
    e.  Pages: Page count
    f.  Source/Custodian: Name of the Source or Custodian of the File(s) Produced – Last Name, First Name format
    g.  Confidential: Yes if confidential, otherwise blank
    h.  Redacted: Yes if redacted otherwise blank
    i.  RedactionReason: reason for redaction
    j.  ProdVolume:  Identifies production media deliverable

## **CERTIFICATE OF SERVICE**

This *Third Request for Production of Documents* was emailed to defense counsel on August 16, 2024.

/s/
_____
Akeeb Dami Animashaun

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

ALANNA DUNN

                Plaintiff

    *v.*

CUYAHOGA COUNTY, *et al.*

                Defendants

Case No. 1:23-cv-00364

Judge Bridget Meehan Brennan

---

## PLAINTIFF'S FOURTH REQUEST FOR PRODUCTION OF DOCUMENTS

---

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Rule 26.3 of the Local Civil Rules of the United States District Court for the Northern District of Ohio, Plaintiff, Alanna Dunn, requests that Defendant, Cuyahoga County, produce for examination, inspection, and copying, within thirty (30) days of the service hereof, all documents described below.

### <u>DEFINITIONS</u>

1.      Common Pleas Queue refers to the "workflow queue" or lists generated by CJIS which informs Jail staff that a detainee has posted bond or is entitled to release pursuant to a court order or journal entry *See* CCSD Release Clerk Duties Responsibilities at 16-17.

2.      Cuyahoga County Clerk of Courts means the Cuyahoga County Clerk of Courts and any of her agents and employees.

3.      "Concerning," "relating to," and "referring to," mean and include anything which discusses, describes, refers to, forms any part of the basis for, reflects, embodies, contains, analyzes, reports on, comments on, evinces, constitutes, sets forth, considers, concerns, bears upon, or is in any way factually, legally, or logically connected to the matter inquired thereof.

1

4. "Defendant" or the "County" means Cuyahoga County and any of its agents or employees.

5. "Detainee" means any person held or detained at the Jail (defined in paragraph 7 of this section) whether pre-trial, post-conviction, or otherwise.

6. "Document" means any document or electronically stored information as described in Federal Rule of Civil Procedure 34(a), and includes communications, electronic or otherwise, and any and all other means of transmitting information. A draft or nonidentical copy is a separate document within the meaning of this term.

7. "Jail" means the Cuyahoga County Corrections Center or any other facility that the County uses to hold or detain people in its custody.

8. "Release triggering event" means the event that entitled a detainee to release, including but not limited to: the declination, dismissal, or refusal of all criminal charges; a release order from a court; the satisfaction of all conditions of pre-trial release, including the paying or posting of sufficient sureties; or the expiration of a sentence.

## INSTRUCTIONS

1. You are requested to produce not only those documents in your possession, custody, or control, but also documents in the possession, custody, or control of your present or former employees, representatives, affiliates, parents, subsidiaries, owners, members, shareholders, lenders, attorneys, insurers, agents, or other persons acting or purporting to act on your behalf as well as those documents in the possession, custody, or control of entities that you, directly or indirectly, control, manage, or in which you are a principal or have an equity interest.

2

2.      Each Request shall be deemed to be continuing in nature. If at any time additional documents come into your possession, custody, or control or are brought to your attention, prompt supplementation of your response to these Requests is required.

3.      For each document requested herein that is withheld from production on the ground of privilege, furnish the following: (a) the type of document (i.e., letter, e-mail, memorandum, etc.) or some other means of identifying it; (b) its subject matter (specific enough to enable a determination to be made concerning the propriety of the assertion of the privilege); (c) its date; (d) its author(s), all addressee(s) and recipient(s), as well as all persons who have viewed or possessed the document; (e) its present location; and (f) the claim of privilege with respect thereto.

4.      Consistent with Rule 34(b)(2)(E) of the Federal Rules of Civil Procedure, you shall produce all documents in the way they are maintained in the usual course of business, and you shall organize and label the documents to correspond with the categories in these Requests. A Request for a document shall be deemed to include a Request for any and all file folders within which the document was contained, transmittal sheets, cover letters, exhibits, enclosures, or attachments to the document in addition to the document itself.

5.      If and to the extent documents are maintained in a database or other non-standard electronic format, you shall produce, along with the document(s), software that will enable access to the document(s) as you would access such document(s) in the ordinary course of business or, if the documents are not used in the ordinary course of your business, you shall produce software that will enable the document(s) to be understood.

6.      Documents attached to each other should not be separated.

7.      Documents are to be produced in full, unredacted, and unexpurgated form.

3

8.      Documents not otherwise responsive to these Requests shall be produced if any such documents mention, discuss, refer to, or explain the documents which are responsive to these Requests.

9.      If you object to any part of any Request, you shall state fully the nature of and reason for the objection. Notwithstanding any objections, you shall nonetheless comply fully with the other parts of the Request not objected to.

10.      If you respond that there are no responsive documents to a Request or a part of a Request, you shall (a) state in writing that you conducted a good faith search for the requested documents; (b) describe the extent and nature of the search; and (c) state that, based on the search, there are no requested documents in your possession, custody, or control or in the possession, custody, or control of any persons encompassed by paragraph 1 of this section.

11.      Each Request shall be construed independently and not with reference to any other Request for the purpose of limitation.

12.      The terms "all" and "each" shall be construed as "all and each."

13.      The term "any" shall be construed as "any and all."

14.      The connectives "and" and "or" shall be construed either distinctively or conjunctively as necessary to bring within the scope of the Request all responses that might otherwise be construed to be outside of its scope.

15.      The use of the singular form of any word includes the plural and vice versa. The past tense shall include the present tense and vice versa.

16.      Produce each document in accordance with the default ESI formatting specified in Exhibit A. The parties will meet and confer on the production format as needed.

17. **Unless otherwise stated, the relevant timeframe for each request is May 1, 2019, up until the date of the trial in this matter.**

## DOCUMENTS REQUESTED

70. The personnel or employment files for the following individuals:

   a. All employees who have worked as or held the "Jailer" position since January 1, 2018.

Drew Legando (0084209)
MERRIMAN LEGANDO WILLIAMS & KLANG, LLC
1360 West 9th Street, Suite 200
Cleveland, Ohio 44113
T. (216) 522-9000
F. (216) 522-9007
E. drew@merrimanlegal.com

/s/
_____
Akeeb Dami Animashaun
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
T. (929) 266-3971
E. animashaun@pm.me

Kate Schwartz
Caryn Lederer
Emily Brown
HUGHES SOCOL PIERS RESNICK & DYM LTD.
70 W. Madison Street, Suite 4000
Chicago, Illinois 60602
T. (312) 580-0100
E. kschwartz@hsplegal.com
    clederer@hsplegal.com
    ebrown@hsplegal.com

Janet Herold
JUSTICE CATALYST LAW
40 Rector Street, Floor 9
New York, New York 10006
T. (518) 732-6703
E. jherold@justicecatalyst.org

*Counsel for Plaintiff & Proposed Class*

5

## EXHIBIT A: DEFAULT ESI FORMAT

1. Images:
   a. Produce documents in Single Page Group IV TIFF files
   b. Image Resolution at least 300 DPI
   c. Black and White unless color is necessary to understand the meaning, or is requested
   d. File Naming Convention: Match Bates Number
   e. Insert Placeholder image for files produced in Native form
   f. Produce in native format data (including excel), word processing documents, presentations, spreadsheets, images, audio, video, and any file that is not reasonably usable in TIFF format
   g. Original document orientation shall be retained
   h. Scanned paper documents should not be merged into a single record, nor single documents split into multiple records
   i. For ESI, parent/child relationships shall be preserved

2. Full Text Extraction/OCR:
   a. Produce full extracted text for all file types of ESI (but not for redacted text)
   b. Production format: Single text file for each document, not one text file per page
   c. File Naming Convention: Match Bates Number

3. Load File Specifications:
   a. Images Load File: Opticon OPT file
   b. Metadata Load File: Comma-separated value (.csv) with field header information added as the first line of the file
   c. Extracted TEXT: Reference File Path to TEXT file in .csv file
   d. Native Files Produced: Reference File Path to Native file in .csv file

4. ESI Production Metadata Fields:
   a. bates_start: Beginning Bates Number
   b. bates_end: Ending Bates Number
   c. BegAttach: Beginning Bates number of the first document in an attachment range
   d. EndAttach: Ending Bates number of the last document in attachment range
   e. Custodian: Name of the Custodian of the File(s) Produced – Last Name, First Name format
   f. Custodians: If de-duplicated, list all custodians of the document.
   g. File_Name: Filename of the original digital file name
   h. native_file: Path and filename to produced Native file
   i. Email_Subject: Subject line extracted from an email message
   j. Document_name: Title field extracted from the metadata of a non-email document
   k. Document_Author: Author field extracted from the metadata of a non-email document
   l. Email_author: From field extracted from an email message
   m. Recipients: To or Recipient field extracted from an email message
   n. Cc: CC or Carbon Copy field extracted from an email message

    o.  BCC: BCC or Blind Carbon Copy field extracted from an email message

    p.  Email_Received: Received date of an email message (mm/dd/yyyy format)

    q.  Email_Sent: Sent date of an email message  (mm/dd/yyyy format)

    r.  Created_Date_Time: Date that a file was created  (mm/dd/yyyy format)

    s.  Modified_Date_Time: Modification date(s) of a non-email document

    t.  LastModBy: Last Modified/Saved By information as derived from the properties of the document

    u.  File_name: Original file name as it appeared in the source

    v.  Attach_count: Number of attachments

    w.  Attach_Names: Filenames of attachments

    x.  File_Type: Type of document

    y.  File_Path: File path storage location of the document or email if the source application allows for the creation of folders.  Any email container name should be included in the path.

    z.  Pages: Page count

    aa. Fingerprint: MD5 or SHA-1 has value generated by creating a binary stream of the file

    bb. ConversationID: Email ConversationID

    cc. MsgID: Email MsgID

    dd. Attach_Count: Number of attachments

    ee. Attach_Names: Filenames of attachments

    ff. HasRevisions: Yes if word processing document with revisions

    gg. HasComments: Yes if electronic document with comments

    hh. HasHiddenContent: Yes if electronic document with hidden content

    ii. Confidential: Yes if confidential, otherwise blank

    jj. Isredacted: Yes if redacted otherwise blank

    kk. RedactionReason: Reason for redaction

    ll. Prod_Vol: Identifies production media deliverable

    mm. Text_file: File path to Extracted Text/OCR File

5.  Paper Documents Metadata Fields:

    a.  BegBates: Beginning Bates Number

    b.  EndBates: Ending Bates Number

    c.  BegAttach: Beginning Bates number of the first document in an attachment range

    d.  EndAttach: Ending Bates number of the last document in attachment range

    e.  Pages: Page count

    f.  Source/Custodian: Name of the Source or Custodian of the File(s) Produced – Last Name, First Name format

    g.  Confidential: Yes if confidential, otherwise blank

    h.  Redacted: Yes if redacted otherwise blank

    i.  RedactionReason: reason for redaction

    j.  ProdVolume: Identifies production media deliverable

## **CERTIFICATE OF SERVICE**

This *Fourth Request for Production of Documents* was emailed to defense counsel on August 15, 2024.

/s/
_____
Akeeb Dami Animashaun

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ALANNA DUNN, on behalf of herself and others similarly situated, | ) ) ) | Case No. 1:23-CV-00364 |
| Plaintiff, | ) ) | Judge Bridget Meehan Brennan |
| v. | ) ) | |
| CUYAHOGA COUNTY, *et al.*, | ) ) ) | **DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO AMEND COMPLAINT** |
| Defendants. | ) | |

Defendant Cuyahoga County respectfully submits this brief in opposition to Plaintiff Alanna Dunn's motion to amend her Complaint to add five new parties to the lawsuit and assert additional allegations. For the reasons set forth below, this motion to amend the complaint should be denied because it was filed long after the expiration of the deadline for amending the pleadings, and Plaintiff has not made any attempt to show good cause to amend the Case Management Order under Fed R. Civ. P. 16(b) or excusable neglect, as required by Fed. R. Civ. P. 6(b) and the Court's Standing Order.  Thus, the Motion to Amend should be denied in its entirety.

**I.      BACKGROUND & FACTS**

On February 23, 2023, Plaintiff Alanna Dunn filed a lawsuit against Cuyahoga County alleging her Fourteenth Amendment Rights were violated when she was allegedly over detained in the Cuyahoga County Corrections Center ("CCCC"). Plaintiff further asserted class claims in her Complaint, speculating that other inmates incarcerated in the CCCC were over detained. The County disputes these allegations.

1