IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ALANNA DUNN, et al., | ) | CASE NO. 1:23-CV-00364-BMB |
| | ) | |
| Plaintiffs, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | |
| CUYAHOGA COUNTY, *et al*., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT'S MOTION IN LIMINE TO PRECLUDE USE OF LACEY R. KELLER'S EXPERT REPORTS AND DECLARATION TO PROVE THE TIME TO RELEASE OR FOR DETERMINING THE MEMBERS OF THE PROPOSED CLASS**

Defendant Cuyahoga County hereby submits the following Motion in Limine to Exclude and Preclude the Use of Plaintiffs' Expert Reports (Doc.#45-30 and #45-29) and the Declaration of Plaintiffs' Expert, Lacey R. Keller (Doc.#45-45) for the purpose of showing the time to release a detainee from the Cuyahoga County Correctional Center (the "Jail") or for determining whether a person is a member of the proposed class.  This Motion in Limine is being filed because Lacey Keller's expert report is based upon <u>limited</u> sources of data that fail to take into account all of the facts and circumstances of each release, and is based solely upon the instructions of counsel without conducting her own independent verification and analysis of the facts.  Since "class certification requires the plaintiffs to provide 'evidentiary proof' that they meet the elements of Rule 23," the Sixth Circuit has held that a district court can and should determine whether "expert testimony is insufficiently reliable" in determining whether to grant a motion for class certification. *In re Nissan N. Am., Inc. Litig.*, 122 F.4th 239, 253 (6th Cir. 2024).  Accordingly, it is entirely appropriate to consider the reliability of Keller's calculations of release time to determine whether

they are based upon "sufficient facts or data," are the "product of reliable principles and methods," and reflect "a reliable application of the principles and methods to the facts of the case," as required by Fed. R. Evid. 702(b), (c), and (d).

A Memorandum in Support of this Motion in Limine is attached hereto for the Court's review and consideration.

                                              Respectfully submitted,

| | |
|---|---|
| | */s/ Stephen W. Funk* |
| Michael C. O'Malley, Prosecuting Attorney for Cuyahoga County, Ohio | Stephen W. Funk (0058506)<br>ROETZEL & ANDRESS, LPA<br>222 South Main Street |
| Brendan D. Healy (0081225)<br>Jake A. Elliott (0093521)<br>Bridget E. Dever (0102462)<br>Assistant Prosecuting Attorneys<br>Cuyahoga County Prosecutor's Office<br>1200 Ontario Street, 8th Floor<br>Cleveland, Ohio 44113<br>Telephone:  (216) 443-7800<br>Facsimile:  (216) 443-7829<br>bhealy@prosecutor.cuyahogacounty.us<br>jelliott@prosecutor.cuyahogacounty.us<br>bdever@prosecutor.cuyahogacounty.us | Akron, Ohio  44308<br>Telephone:  (330) 376-2700<br>Facsimile:  (330) 376-4577<br>E-mail:  sfunk@ralaw.com<br><br>David Sporar (0086640)<br>ROETZEL & ANDRESS LPA<br>600 Superior Avenue East, Suite 1600<br>Cleveland, Ohio 44114<br>Telephone:  (216) 830-6821<br>E-mail: dsporar@ralaw.com<br><br>*Attorneys for Defendant Cuyahoga County* |

2

**FACTUAL BACKGROUND**

Plaintiffs' Motion for Class Certification asks this Court to certify a class of pretrial detainees where the time to release the detainee from the Cuyahoga County Correctional Center is greater than 12 hours "after the basis for their detention ended." (Doc.#44, Pl. Motion for Class Cert., pg. 3, PageID#318). While the County strongly disputes that such a class can be certified under Fed. R. Civ. P. 23(a) and (b)(3), the fact remains that Plaintiffs' methodology for determining the "time to release" is seriously flawed and unreliable because it relies upon limited sources of data that do not take into the account all of facts and circumstances surrounding each release. In particular, Keller has relied upon Excel spreadsheets produced by the Cuyahoga County Correctional Center, the City of Cleveland, the Cuyahoga County Clerk of Courts, the Cleveland Municipal Court, the Ohio Alcohol Monitoring Systems ("Ohio AMS"), and Oriana House that contained <u>limited</u> data that do not take into account all of the facts and circumstances surrounding each release.  (Doc.#45-30, Keller Expert Report, pp. 10-19, PageID#1779-1788); (Doc.#50-1, Deposition of Lacey R. Keller, pp. 57-60).[1]  In so doing, Keller relies <u>entirely</u> upon Plaintiffs' counsel to determine what data to include or not include in her calculations, and did not conduct any independent investigation to determine whether the data accurately depicts the actual time to release.  (Doc.#50-1, Keller Dep., pp. 46, 51-52, 78:8-9, 91:21-23, 98:13, 107:12-16, 108:9-20, 137:18-21, 173). As a result, her findings are based upon insufficient data that does not provide a

---

[1] A more complete description of the Excel spreadsheets produced by Cuyahoga County and the Cleveland Municipal Court can be found in the Declarations of Kevin O'Donnell (Doc.#49-1), Janice Smith (Doc.#50-7), and Krystal Lawyer (Doc.#50-8). The Declaration of Janice Smith (Doc.#50-7) authenticates and describes the spreadsheets and data produced by the Cleveland Municipal Court, and the Declaration of Krystal Lawyer (Doc.#50-8) authenticates and describes the spreadsheets and data produced by the Cuyahoga County Clerk of Courts. Kevin O'Donnell's Declaration discusses the IMACS spreadsheet produced by the Jail. (Doc.#49-1, O'Donnell Decl., ¶ 9-10, PageID#2022-2024).

1

reliable methodology for determining the <u>actual</u> time of release, and often leads to erroneous results that conflict with the information found in an inmate's individual file. (*See* Doc.#50-2, Declaration of Sean Malone, Ph.D.); (Doc.#50-3, Expert Report of Sean T. Malone, Ph.D, pp. 6-19); (Doc.#50-4, Supplemental Expert Report of Sean Malone, Ph.D, pp. 2-14).

In this regard, Keller relied upon Plaintiffs' counsel to determine that there were nine (9) different types of events that could be considered a "release triggering event." (Doc.#45-30, Keller Report, pg. 17, Table 8, PageID#1786); (Doc.#50-1, Keller Dep. pp. 51-52). The eight (8) release triggering events used by Keller were (i) "Bond Posted Date," (ii) Disposition – RNFC, (iii) Disposition – Station House Released, (iv) GPS Added, (v) Monetary Bond Created, (vi) Municipal Release Order, (vii) Personal Bond Created, (viii) Personal Bond Executed, and (ix) Release Order. (*Id.*) With respect to each of the release triggering event, however, Keller did not know or take into account the time when the Jail received <u>actual</u> <u>notice</u> of the release triggering event, and often was forced to make <u>assumptions</u> about the actual time because the Excel spreadsheets only showed the date of the disposition, not the time of the disposition or the date and time when the Jail would have received actual notice of the disposition. (*Id.* at 77-108).

This is fatal to Keller's calculation of "time to release" because the applicable constitutional standard "depends on whether the length of detention between the time the Sheriff was <u>notified</u> that bond had been posted and the time that the detainee was released was reasonable in any given case." *Harper v. Sheriff of Cook Cnty.*, 581 F.3d 511, 515 (7th Cir. 2009) (emphasis added). Indeed, with respect to RNFC dispositions where the Cleveland Police arrests a detainee, and then later decides not to file any charges, there often will be a delay caused by the Cleveland Police who would complete a "green slip" that would be delivered to the Jail or picked up by the Jailer. (Doc.#49-1, O'Donnell Decl., ¶ 31, PageID#2030). In her Expert Report, however, Keller

2

relied solely upon the date of disposition reflected in the City of Cleveland's arrest database, not the time stamp on the green slip that marks the actual time when the green slip was received by the Jail. (Doc.#50-1, Keller Dep. pp. 84, 88-89). The City of Cleveland's arrest database, however, did not record the time of the RNFC or station house release dispositions, only the date, and did not state the date and time when the Jail would have been actually notified of the disposition. (*Id.* at 88-89).

Similarly, with respect to determining the date and time for the installation of GPS devices and alcohol monitoring devices, Keller relied entirely upon the data set forth in the Excel spreadsheets produced by Oriana House and Ohio AMS. (Doc.#50-1, Keller Dep. 90-91). With respect to the Oriana House data, however, Keller admitted that she did not know what the "scheduled end date" field meant, and did not know whether the date and times shown in the Oriana House database was the date and time when the GPS was installed or time when the "installation was communicated to the release desk or the jailer." (*Id.* at 93-94). Moreover, with respect to the Ohio AMS data, Keller again relied upon the dates of installation set forth in the Ohio AMS spreadsheet, even though it only showed the date, and not the time. (*Id.* at 94-95).

The same flaws arise with respect to Keller's use of the spreadsheets in determining the date and time of the following release triggering events – bonds posted, monetary bond created, personal bond created, and personal bond executed – cited in her expert report. (Doc.#50-1, Keller Dep. 81-83, 96-101). With respect to "bonds posted," Keller relied upon the bond posted date and time in the Clerk of Court's spreadsheet, but she did not know how or when the Jail's release desk would have learned that a bond had been posted. (*Id.* at 81-82). Moreover, she did not know what the "monetary bond event date" in the Cleveland Municipal Court ("CMC") spreadsheet may be, or whether it showed the date that the bond was set or the date when the bond was posted. (*Id.* at

3

97-98). Indeed, the data in the "CMC Defendants Detained-Bonds Settings-Bonds Posted or Processed" spreadsheet cited in Keller's report is limited because it only contained dates, not times. (*Id.* at 100-102); (Doc.#50-7, Smith Decl. ¶ 7.a., Ex. 1). And, if a CMC spreadsheet listed both date and time, Keller did not know whether the date and time listed was the date and time when the bond was actually posted or the date and time when the bond was created. (Doc.#50-1, Keller Dep. pp. 100-102). Yet, she blindly used this data in the CMC spreadsheets as being a release triggering event without confirming the underlying facts. (*Id.*)

Indeed, as set forth on Page 6 of her Expert Report, a significant number of the spreadsheets used by Keller were missing timestamps, in whole or in part. (Doc.#45-30, Keller Expert Report, pp. 6-7, PageID#1775-1776). This included the arrest data file produced by the City of Cleveland, the GPS installation file produced by Ohio AMS, and the CMC database, entitled, "Bonds Settings – Bonds Posted or Processed." (*Id.* at 6-8, PageID#1775-77). With respect to all of the events that had no time-stamps, Keller simply assumed that the time was 11:59 pm based upon the instructions received from counsel. (Doc.#50-1, Keller Dep. pp. 95-96, 100-101, 130). While Keller sought to justify this assumption by stating that it was the "latest possible date and time on a day," she later admitted at her deposition that 49,988 rows of custody sessions in her database showed a negative time to the release, which she attributed to the fact that the release time may have occurred on the same day as the release triggering event that was listed in the database as 11:59 pm. (*Id.* at 133-136). Yet, in performing her analysis, Keller excluded all of the custody sessions that showed a negative time to release from all of the charts in her expert report. (Doc.#50-1, Keller Dep. pg. 136) (explaining that she was instructed by counsel to exclude all negative times from her report); (Doc.#45-30, Keller Report, pg. 20-21, ¶ 49.5, PageID#1790) (explaining that any custody sessions with a release time less than 0 hours were excluded).

4

This is a serious flaw in Keller's analysis because Keller's report includes 28 charts that purport to present a number of expert opinions about the time to release, including but not limited to the "median" amount of time that it took to release a detainee in each group, and the number of custody sessions in each group that exceeded 10 hours. (Doc.#45-30, Keller Report, pp. 23-55, PageID#1792-1824). Keller admitted, however, that there were over 494,000 rows of custody sessions in her database, and 58,098 custody sessions that involved a release. (Doc.#50-1, Keller Dep. pp. 66-67, 74-77). Yet, due her exclusion of custody sessions with negative times and the other exclusions set forth in Paragraph 49 of her Report, Keller's charts only analyze a total of 5,343 custody sessions. (*Id*. at 141-144); (Doc.#50-3, Malone Expert Report, pp. 9-11). Moreover, her charts fail to perform any outlier analysis of the data and fail to exclude any outliers at all because, while she had been asked to perform an outlier analysis in other cases, she "wasn't asked to do that here." (Doc.#50-1, Keller Dep. pp. 149-152).

More importantly, Keller made absolutely no effort to conduct any investigation to determine the reasons for any of the outliers in her charts. (Doc.#50-1, Keller Dep. pp. 149-152). Again, this is fatal to her analysis because, as set forth in the Expert Report of Sean Malone, Ph.D, a review of a number of the individual files for the custody sessions included in Keller's report show that the length of the time to release is often inaccurate because it does not take in account all of the individualized facts and circumstances surrounding the time to release. (Doc.#50-3, Malone Report, pp. 11-18, ¶ 32-55). For example, Keller's database showed that the time to release for Devonte Seals was 155.55 hours because her calculations simply determined the time between the date of a municipal release order on 8/17/2022 and the time of release on 8/23/2022. (*Id*. at ¶ 38). A review of the inmate's records, however, confirmed that there was a court order issued on 8/16/2022 that stated that Seals shall be held <u>until his 8/23/2022 hearing at 2 pm</u>. (*Id*. at

5

¶ 39-42). Moreover, the inmate's file showed that he was granted a personal bond at the hearing, and released at 4:17 pm that same day. (*Id.* at ¶ 40-42). Yet, due to the limited nature of the data used by Keller, none of these facts were taken into account in determining the time to release.

Malone's Expert Report and Supplemental Export Report detail other examples where Keller's data did not correspond to the information in the inmate's files. (Doc.#50-3, Malone Expert Report, pp. 6-19); (Doc.#50-4, Malone Supp. Report, pp. 2-14). While Plaintiffs likely will argue that Malone's examples are anomalies that should be disregarded, the fact remains that the Court and the Parties cannot know whether Keller's report accurately calculates the time to release each inmate without reviewing each and every inmate's paper file to consider all of the relevant facts and circumstances. (Doc.#50-6, Deposition of Sean Malone, pp. 110-111, 138-139, 263-264). Yet, Keller submits a Declaration that conclusively states the number of persons who were detained for more than 12 hours after a release triggering event based upon the flawed methodology and limited data used in her report. (Doc.#45-45, Keller Decl. ¶ 4, PageID#1910).

This is improper and should be not be permitted by this Court. As discussed below, the Sixth Circuit has held that the district court can and should consider the reliability of expert testimony in deciding whether to grant class certification. Indeed, as set forth below, the issue is not simply whether Keller's report is accurate. Rather, it is whether Keller's methodology is reliable given that she relies on a limited set of data that is not sufficient, standing alone, to determine both the time of release and the cause of any alleged delay. Accordingly, given that Plaintiffs are wrongfully presenting Keller's Expert Reports and Declaration as setting forth a reliable and accurate methodology for determining both the time of release and the members of the proposed class, Defendants have filed this Motion in Limine to exclude the use of Keller's Expert Reports and Declaration for this improper purpose.

6

**LAW AND ARGUMENT**

It is well-established that Rule 702 of the Federal Rules of Evidence entrusts district courts with a "gatekeeping role" to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). While *Daubert* challenges often are raised for purposes of excluding expert testimony at trial, the Sixth Circuit has held that such *Daubert* challenges also can be raised at the class certification stage, so that the district court can determine whether "expert testimony is insufficiently reliable" in determining whether to grant a class certification motion. *In re Nissan N. Am., Inc. Litig.*, 122 F.4th at 253.

Under Fed. R. Evid. 702, expert testimony is not admissible unless "the proponent demonstrates to the court that it is more likely than not that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."

*Id.*; *see also Kopp Development, Inc. v. Metrasens, Inc.*, 1:21-cv-01216-PAB, 2024 WL 4826381, at *16 (N.D. Ohio Nov. 19, 2024). Thus, in assessing the reliability of expert testimony under Rule 702, this Court should consider "whether the testimony is based upon 'sufficient facts or data,' whether the testimony is the 'product of reliable principles and methods,' and whether the expert 'has applied the principles and methods reliably to the facts of the case.'" *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528-29 (6th Cir. 2008) (quoting Rule 702).

Here, as discussed in the Factual Background above, Keller's expert testimony is not based upon "sufficient facts or data" to determine the actual time to release because she relies upon a

limited set of data that does not take into account all of the facts and circumstances surrounding each release. Indeed, as set forth in the Declaration of Kevin O'Donnell and the attached Expert Reports of Sean T. Malone, Ph.D., there are a whole host of factors that may impact the time to release that are not reflected in the limited databases used by Keller. (Doc.#49-1, O'Donnell Decl. ¶ 11-13, PageID#2024-2027, and ¶ 41-85, PageID#2032-2040); (Doc.#50-3, Malone Expert Report, pp. 6-18); (Doc.#50-4, Malone Supp. Report, pp. 2-9). Thus, the time to release cannot be determined based solely upon the limited data used in Keller's report without considering all of the relevant facts and circumstances of each release. (*Id.*) Accordingly, the Court should conclude that "there is simply too great an analytical gap between the data and the opinion proffered" to satisfy the applicable *Daubert* reliability standards. *See Gen. Elec. v. Joiner*, 522 U.S. 136, 146 ("A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered"); *Ask Chemicals, LP v. Computer Packages, Inc.*, 593 F. App'x 506, 510-11 (6th Cir. 2014) (affirming district court's exclusion of expert testimony because the expert relied upon "faulty and incomplete" data and failed to conduct any "independent verification or analysis"); *Hamilton Cnty. Emergency Communications Dist. v. Level 3 Communications*, 845 F. App'x 376, 383 (6th Cir. 2021) (affirming exclusion of expert testimony because "Gillan's expert opinion was not based on sufficient facts or data, and there was too great an analytical gap between the data and Gillan's opinion").

Second, Keller's calculations of the time to release are not reliable because she fails to conduct any independent investigation to determine whether the limited data provided by Plaintiffs' counsel can be effectively used to determine the actual time to release based upon all of the relevant facts and circumstances. Here, Keller admitted that she relied upon the instructions of Plaintiffs' counsel about what data to use or not use in her analysis, and did not conduct any

8

independent investigation to determine what sources of information should actually be considered. (Doc.#50-1, Keller Dep., pp. 51-52, 78:8-9, 91:21-23, 98:13, 107:12-16, 108:9-20, 137:18-21, 173). As the Sixth Circuit held in *Ask Chemicals, LP*, expert testimony may be excluded under Rule 702 if the expert fails to conduct an "independent verification or analysis" of the data provided by the client to ensure that it is accurate and reliable. *Id.*, 593 F. App'x at 510. Thus, where, as here, "an expert merely offers his client's opinion as his own, that opinion may be excluded." *Id.*; *see e.g. CIT Grp./Bus. Credit, Inc. v. Graco Fishing & Rental Tools, Inc.*, 815 F.Supp.2d 673, 677 (S.D.N.Y. 2011) (rejecting expert testimony based on "the conclusory statements of [the party's management] and not on his independent evaluation of the facts"); *King-Indiana Forge, Inc. v. Millennium Forge, Inc.*, No. 1:07–cv–00341–SEB–SML, 2009 WL 3187685, at *2 (S.D. Ind. Sept. 29, 2009) ("When an expert's proffered opinion merely parrots information provided to him by a party, that opinion is generally excluded").

Indeed, as Sean Malone explained at his deposition, it is incumbent upon a data analyst or statistical expert to "validate the assumptions that are given me. And especially if they're assumptions that can be ground[ed] in the data that I'm responsible for reviewing. . . . So I would check all of those assumptions for myself" to ensure that they are true and can be relied upon in drawing accurate conclusions from the data. (Doc.#50-6, Malone Dep. 294 and Errata Sheet). In so doing, Malone explained that he would not be able to simply rely upon the client's assumptions as true, but would need to conduct "some due diligence about the assumptions before you continue to calculate results" and "understand [the] limitations of the assumptions" before "you go drawing conclusions." (*Id.* at 296-297). Here, Keller's report completely fails to comply with this reliable methodology. She did not investigate the relevant facts to determine what data should be reviewed. Rather, with respect to every question asked at her deposition about why she used certain data and

9

excluded other data, her response was consistently the same: <u>she relied exclusively upon the instructions of counsel</u>. (Doc.#50-1, Keller Dep. 51-52, 78:8-9, 91:21-23, 98:13, 107:12-16, 108:9-20, 137:18-21, 173). Accordingly, the Court can have no assurance that her calculations of the time to release are accurate or reliable because she conducted no independent investigation or analysis of the reliability of the data, the assumptions provided by counsel, or whether she was actually considering all of the relevant sources of information. For this additional reason, therefore, the calculations of the time to release in Keller's Expert Reports and in Keller's Declaration should be excluded and not relied upon by the Court.

## **CONCLUSION**

For these reasons, therefore, Defendant Cuyahoga County respectfully requests that the Court exclude and disregard the calculations of the time to release set forth in Plaintiffs' Expert Reports (Doc.#45-30 and #45-29) and the Declaration of Plaintiffs' Expert, Lacey R. Keller (Doc.#45-45) in deciding Plaintiffs' Motion for Class Certification.

Respectfully submitted,

/s/ Stephen W. Funk

| | |
|---|---|
| Michael C. O'Malley, Prosecuting Attorney for Cuyahoga County, Ohio | Stephen W. Funk (0058506)<br>ROETZEL & ANDRESS, LPA<br>222 South Main Street<br>Akron, Ohio  44308<br>Telephone:  (330) 376-2700<br>Facsimile:   (330) 376-4577<br>E-mail:  sfunk@ralaw.com |
| Brendan D. Healy (0081225)<br>Jake A. Elliott (0093521)<br>Bridget E. Dever (0102462)<br>Assistant Prosecuting Attorneys<br>Cuyahoga County Prosecutor's Office<br>1200 Ontario Street, 8th Floor<br>Cleveland, Ohio 44113<br>Telephone:  (216) 443-7800<br>Facsimile:  (216) 443-7829<br>bhealy@prosecutor.cuyahogacounty.us<br>jelliott@prosecutor.cuyahogacounty.us<br>bdever@prosecutor.cuyahogacounty.us | David Sporar (0086640)<br>ROETZEL & ANDRESS LPA<br>600 Superior Avenue East, Suite 1600<br>Cleveland, Ohio 44114<br>Telephone:  (216) 830-6821<br>E-mail: dsporar@ralaw.com<br><br>*Attorneys for Defendant Cuyahoga County* |

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of May, 2025, the foregoing *Motion in Limine* was served upon all counsel of record via the Court's electronic filing system.

*/s/ Stephen W. Funk*
Stephen W. Funk (0058506)
