**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| ALANNA DUNN, et al., ) | CASE NO. 1:23-CV-00364-BMB |
| ) | |
| Plaintiffs, ) | JUDGE BRIDGET MEEHAN BRENNAN |
| ) | |
| v. ) | |
| ) | |
| CUYAHOGA COUNTY, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF
MOTION IN LIMINE TO PRECLUDE USE OF LACEY R. KELLER'S EXPERT
REPORTS AND DECLARATION TO PROVE THE TIME TO RELEASE OR FOR
DETERMINING THE MEMBERS OF THE PROPOSED CLASS**

**INTRODUCTION**

Plaintiffs' Response in Opposition (Doc.#54) misconstrues the nature of Defendant Cuyahoga County's Motion in Limine, which seeks to preclude the use of Lacey R. Keller's Expert Reports (Doc.#45-30 and #45-29) and Declaration (Doc.#45-45) for two purposes: (i) showing the time to release a detainee from the Cuyahoga County Correctional Center (the "Jail") or (ii) ascertaining whether a person is a member of the proposed class. (Doc.#50, Def. Motion in Limine, pg. 1, PageID#2263). Contrary to Plaintiffs' suggestions, the County's Motion in Limine does not seeks to exclude Keller's Expert Reports and Declaration because she failed to engage in a "subjective analysis" of whether a person was overdetained. (Doc.#54, Pl. Resp. pg. 1, PageID#2658). Rather, Defendant's Motion in Limine is based upon the argument that Keller's methodology is unreliable because it does not rely upon sufficient facts or data to determine the time to release, and relies exclusively upon the instructions of Plaintiffs' counsel about what data should be considered without conducting any independent analysis or investigation of the facts.

1

Plaintiffs' Response does not dispute Keller's calculations are based upon a limited set of data that does not take into account all of the facts and circumstances surrounding each detainee's release, and that Keller relied exclusively upon Plaintiffs' counsel in interpreting the data and in deciding how to calculate the time to release. Accordingly, for the reasons set forth in the County's Motion in Limine (Doc.#50) and for the additional reasons set forth below, the Court should grant Defendant Cuyahoga County's Motion in Limine under Evid. R. 702 and issue an Order precluding the use of Keller's Expert Reports and Declaration for the purpose of (i) showing the time to release a detainee from the Jail, and (ii) ascertaining whether a person is a member of the proposed class.

## REPLY TO PLAINTIFFS' ARGUMENTS

**A.     Plaintiffs Mischaracterize The Nature Of The County's Motion in Limine.**

Plaintiffs' Response is based upon a wrongful attempt to change the subject by repeatedly mischaracterizing the nature and purpose of the Motion. Contrary to Plaintiffs' suggestion, the County is in fact challenging the reliability of Keller's methodology in calculating the "time to release," which is expressly stated on Page 1 of Defendant's Memorandum. (Doc.#50, Def. Memorandum in Support, pg. 1, PageID#2265) (arguing that "Plaintiffs' methodology for determining the 'time to release' is seriously flawed and unreliable because it relies upon limited sources of data that do not take into account all of the facts and circumstances surrounding each release"). Moreover, while the County is not challenging Keller's <u>qualifications</u>, it is challenging the <u>reliability</u> of her expert testimony based upon 3 of the 4 grounds set forth in Fed. R. Evid. 702(b), (c), and (d) – *i.e.*, that the testimony is not based upon "sufficient facts or data," is not the "product of reliable principles and methods," and does not reflect "a reliable application of the principles and methods to the facts of the case," as expressly stated in Defendant's Motion. (Doc.#50, Def. Mot. in Lim., pp. 1-2, PageID#2263-64).

2

In this regard, Plaintiffs are wrong in suggesting that Defendant's Motion in Limine is based upon the argument that Keller's Expert Reports should be excluded because she "performed an objective analysis of calculating the time between a detainee's release trigger and release," rather than a "subjective analysis that considered the facts and circumstances of each release." (Doc.#54, Pl. Resp. pg. 1, PageID#2658). The question is not whether Keller's analysis was "objective" or "subjective," as those terms do not appear *anywhere* in Defendant's Motion. Rather, the question presented is whether Keller's expert conclusions about the time to release are based upon a reliable methodology that can be relied upon by this Court in determining the actual time to release and for ascertaining whether a person is a member of the proposed class, which Keller purports to determine in Paragraph 4 of her Declaration. (Doc.#45-45, Keller Decl. ¶ 4, PageID#1910).

This is an critical point because Keller's Expert Reports and Declaration have been presented by Plaintiffs for the sole purpose of satisfying its evidentiary burden to prove that a class can be certified under Fed. R. Civ. P. 23(b)(3) based, in part, upon Keller's calculations of the time to release. There is no other methodology provided by Plaintiffs' counsel, in fact, for satisfying the implied ascertainability requirement of Fed. R. Civ. P. 23(b)(3). In performing her calculations of time to release, however, it is undisputed – and not contested by Plaintiffs – that Keller relied exclusively upon the limited data spreadsheets provided by Plaintiffs' counsel, which, for the reasons set forth in our Motion in Limine, did <u>not</u> take into account all of the individual facts and circumstances of each release. (Doc.#50, Mem. in Supp. pp. 2-5, PageID#2266-2269). Moreover, it is undisputed – and not contested by Plaintiffs – that Keller relied <u>exclusively</u> on the instructions and assumptions of Plaintiffs' counsel about what data should be considered, how the data should be interpreted, and how the calculations should be performed. (Doc.#50-1, Keller Dep., pp. 51-

3

52, 78:8-9, 91:21-23, 98:13, 107:12-16, 108:9-20, 137:18-21, PageID#2288, 2295, 2298, 2300, 2302, 2310). Accordingly, the issue presented does not merely turn upon the "credibility" or "weight" of Keller's testimony, but goes to the heart of why this Court cannot rely upon Keller's methodology for purposes of determining the <u>actual</u> time to release and ascertaining whether a person is a member of the proposed class. *See Ask Chemicals, LP v. Computer Packages, Inc.*, 593 F. App'x 506, 510 (6th Cir. 2014) (affirming exclusion of expert testimony because the expert's opinion was not based on "faulty and incomplete data" and failed to conduct any "independent verification or analysis" of the data provided by the client); *Ellipsis, Inc. v. The Color Works, Inc.*, 428 F. Supp.2d 752, 760-761 (W.D. Tenn. 2006) (explaining why expert report should be excluded under Fed. R. Evid. 702 if the conclusions are based upon an unreliable methodology or insufficient facts and data).

> **B.    Plaintiffs Fail To Show That Keller Relied Upon Sufficient Facts And Data In Determining The Actual Time to Release.**

In their Response, Plaintiffs do not dispute that Keller's calculations of the time to release are based solely upon the limited set of data in the spreadsheets identified in her report, and failed to take into account any other individualized facts and circumstances from each individual inmate's file in determining the actual time to release. In response to this argument, Plaintiffs wrongfully suggest that the County's argument is "self-defeating" because a "detainee's actual Time to Release is a simple, objective calculation of the time elapsed between a detainee's release trigger and release," and that the County's argument about "other facts and circumstances" must be focused on "something different, presumably again, the reasonableness to release," not the actual time to release. (Doc.#54, Pl. Resp. pp. 10-11, PageID#2667-2668).

This is a meritless argument that misconstrues the County's arguments about why Keller's calculations of the time to release should be excluded on reliability grounds. The County's Motion

in Limine is not based upon the fact that Keller failed to consider the "reasonableness" of the time to release.  Rather, it is based upon the fact that Keller was not based upon "sufficient facts or data," as required by Fed. R. Evid. 702(b), because it relied upon the limited set of data in the spreadsheets that failed to take into account all of the facts and circumstances relating to the determining the actual time to release.  (Doc.#50-6, Malone Dep. pp. 110-111, 138-139, 263-264, PageID#2398, 2405, 2436); (Doc.#49-1, O'Donnell Decl. ¶ 11, PageID#2024-2025).  Indeed, the spreadsheets used by Keller were often incomplete because they did not always state the actual date and time of a release triggering event.  (Doc.#50-1, Keller Dep. pp. 88-106, PageID#2297-2302).  Moreover, the spreadsheets were incomplete because, as set forth in the Declaration of Kevin O'Donnell, the "HOLD" field in the IMACS spreadsheet used by Keller does not include "every circumstance in which an inmate may continue to be detained," and because there are a number of other individualized facts and circumstances set forth in a pretrial detainee's file that show that the time to release "was actually less than the length of time that may appear from looking at the IMACS database."  (Doc.#49-1, O'Donnell Decl. ¶ 11, PageID#2024-2025).  Thus, O'Donnell explained that "the actual length" of time for releasing each inmate "cannot be determined without reviewing the inmate's physical file, and such a review of the file may not reveal the length or cause of delay without additional review of the other information." (*Id.* at ¶ 11, PageID#2025).

  The same critique of Keller's methodology was also made by Defendant's expert, Sean Malone.  Contrary to Plaintiff's suggestions, Malone's expert reports were not based upon the argument the individualized facts and circumstances of each release should be considered in order to determine  the "reasonableness" of the time to release.  Rather, Malone's opinions are based upon his conclusion, as a data analyst and statistical expert, that "Keller's unreliable methodology

5

is not appropriate for ascertaining the time that it actually takes to release each inmate" because "it fails into account the individualized facts and circumstances that may have impacted the timing of each inmate's release." (Doc.#50-3, Malone Expert Report, pg. 2, PageID#2325) (emphasis added). In so doing, Malone identified and described a number of examples of how Keller's conclusions about the actual time to release were inaccurate and misleading because her methodology failed to consider all of the facts and circumstances relating to the time to release that were contained in individual inmate files, but were not set forth in the spreadsheets used by Keller. (Doc.#50-3, Malone Report, pp. 6-19, PageID#2327-42); (Doc.#50-4, Malone Supp. Report, pp. 2-14, PageID#2352-64).

Accordingly, the Court should grant Defendant's Motion in Limine and preclude Plaintiffs from using Keller's Expert Reports and Declaration to prove the time to release because Keller does not rely upon sufficient facts and data to determine the actual time to release for each detainee. *Ask Chemicals, LP v. Computer Packages, Inc.*, 593 F. App'x 506, 510-11 (6th Cir. 2014) (affirming district court's exclusion of expert testimony because the expert relied upon "faulty and incomplete" data); *Hamilton Cnty. Emergency Communications Dist. v. Level 3 Communications*, 845 F. App'x 376, 383 (6th Cir. 2021) (affirming exclusion of expert testimony that "was not based on sufficient facts or data").

    **C.    Plaintiffs Do Not Dispute That Keller Relied Exclusively Upon Plaintiffs' Counsel In Selecting The Data and Methodology To Use In Performing Her Calculations.**

Plaintiffs also misconstrue the County's arguments by suggesting that they "do not contest the reliability of the data science methods" used by Keller in calculating the time to release. (Doc.#54, Pl. Resp. pg. 1, PageID#2658). This is not true. As previously discussed, the County is not merely challenging the accuracy of Keller's calculations; it is arguing that Keller's

methodology is unreliable and because she did not rely upon sufficient facts and data to determine the actual time to release for all putative class members and because, by her own admission, she failed to conduct an independent analysis or investigation of the facts and the underlying data to determine whether it was complete and provided a reliable method for determining the actual time to release. *Ask Chemicals, LP*, 593 F. App'x at 510 (affirming exclusion of expert testimony because it was not based on "faulty and incomplete data," and failed to conduct any "independent verification or analysis" of the data provided by the client).

Here, it is undisputed that Keller relied upon the instructions of Plaintiffs' counsel about what data to use or not use in her analysis, and did not conduct her own independent investigation of the facts to determine what sources of information should be considered. (Doc.#50-1, Keller Dep., pp. 51-52, 78-79, 90-91, 94-98, 100-102, 106-114, 136-137, PageID#2288, 2295, 2298-2304, 2309-2311). As a result, Keller was completely unable to answer questions about why she used certain data in performing her calculations and consistently and repeatedly responded to all of those questions with the same answer – she did not conduct an independent analysis of the data, but relied solely upon the instructions of counsel. (Doc.#50-1, Keller Dep. 51-52, 78-79, 90-91, 94:17-19, 95:23-25, 96:1-5, 97:15-19, 98:13, 100:21-23, 101:24-25, 102:1-15, 106:5-12, 107:12-16, 108:9-21, 109:25, 110:1-4, 111:17-22, 113:10-18, 114:11-22, 123:8-25, 124:1-5, 126:3-9, 131:9-16, 134:17-19, 135:20-23, 136:3-16, 137:18-21, PageID#2288, 2295-2311). Accordingly, the Court can have no assurance that Keller's calculations are reliable because Keller conducted no independent investigation or analysis of the underlying data, the assumptions provided by counsel, or whether she was considering all of the relevant sources of information.

Indeed, contrary to Plaintiffs' suggestions, this argument goes to the heart of why Keller's methodology should be excluded because any expert, including any data analyst, has an affirmative

7

duty to ensure that the underlying data provided by their client is complete and accurate, and will not yield misleading results. As Sean Malone explained at his deposition, it is incumbent upon a data analyst or statistical expert to "validate the assumptions that are given me. And especially if they're assumptions that can be ground[ed] in the data that I'm responsible for reviewing. . . . So I would check all of those assumptions for myself" to ensure that they are true and can be relied upon in drawing accurate conclusions from the data. (Doc.#50-6, Malone Dep. 294 and Errata Sheet, PageID#2444 and PageID#2449). In so doing, Malone explained that he would not be able to simply rely upon the client's assumptions, but would need to conduct "some due diligence about the assumptions before you continue to calculate results" and "understand [the] limitations of the assumptions" before "you go drawing conclusions." (*Id.* at 296-297, PageID#2444).

Here, Keller completely fails to conduct any independent expert analysis at all. By her own admission, she did not investigate the relevant facts relating to the alleged "release triggering events" to determine what data should or should not be considered in determining the actual time to release. Indeed, when questioned about this issue at her deposition, Keller showed that she had *no* knowledge or understanding about what the data in the spreadsheets actually showed, and why it should or should not be considered in determining the actual time to release. (Doc.#50-1, Keller Dep. pp. 51-52, 77-111, PageID#2288, 2295-2303). Yet, she blindly used this data from the spreadsheets as being the actual "release triggering event" based solely upon the instructions of counsel and without conducting any independent analysis or investigation of the facts. (*Id.* at 51-52, 78-79, 90-91, PageID#2288, 2295, 2298).

This is fatal to the admissibility of Keller's expert conclusions because Keller's report includes 28 charts that **_purport_** to present a number of expert opinions about the actual time to release, including but not limited to the "median" amount of time that it took to release a detainee

8

in each group, and the number of custody sessions in each group that exceeded 10 hours. (Doc.#45-30, Keller Report, pp. 23-55, PageID#1792-1824).  In so doing, however, Keller wrongfully attempts to suggest that Keller performed her own "expert" analysis of the data to determine the <u>actual</u> time to release each detainee when, in actuality, her "calculations" merely purport to determine the time to release <u>based upon the instructions provided by Plaintiffs' counsel</u>.  Indeed, a review of Keller's deposition confirms that she relied *entirely* upon Plaintiff's counsel on *all aspects* of her time to release calculations, including (a) how to determine a "release triggering event" (Keller Dep. pp. 51-52, 78-79, 90-91, 100); (b) how to determine the date and time of a release triggering event (Keller Dep. 87-98, 101-102, 106, 134-136); (c) how to determine what type of "holds" should be considered (Keller Dep. 112-113), (d) how to determine what "custody sessions" to exclude from the calculations (Keller Dep. 110-111); and (e) and whether any "outliers" should be excluded or any other adjustments made (Keller Dep. 149-151, 153).  Thus, Keller's methodology is not reliable and should be excluded under Evid. R. 702(b), (c) and (d) because she did not conduct her own independent analysis of the data, but merely calculated the time to release based upon the data and methodology provided <u>by Plaintiff's counsel</u>.

The fact that Keller did not perform her own independent analysis is probably best illustrated by her testimony on Page 97 of her deposition transcript where she states:  "What I needed to know was shown in the spreadsheet.  I brought that data into my summary table, and then ***counsel instructed me*** after seeing that ***how to interpret that information***."  (Doc.#50-1, Keller Dep. pg. 97, PageID#2300).  Moreover, it further shown by Keller's testimony on Page 107, where she again states, "All I know is what's recorded in the spreadsheet and ***<u>then how counsel instructed me to interpret that information</u>***."  (Doc.#50-1, Keller Dep. pg. 107, PageID#2302) (emphasis added).  Indeed, after performing her calculations based upon the limited data and

9

methodology provided by Plaintiffs' counsel, Keller did not perform any independent analysis of whether her results were accurate.  Rather, she once again relied exclusively upon Plaintiff's counsel to determine whether the results were "accurate," and whether any "outliers" should be excluded or any other "adjustments" made.  (Doc.#50-1, Keller Dep. pp. 149-151, 153, PageID#2314).  Yet, Plaintiffs have presented Keller's calculations of the time to release as if they were based upon Keller's own independent analysis of the facts, when in reality, it is simply a regurgitation of what Plaintiffs' counsel wanted her to calculate based upon *their* selection of the data and the methodology that *they* wanted Keller to use to determine the time to release.

In their Response, Plaintiffs argue that "providing an expert with *assumptions* about underlying data before the expert undertakes her own complex analysis of that data is common, acceptable, or, and even explicitly contemplated by Rule 26."  (Doc.#54, Pl. Resp. pg. 11, PageID#2668) (emphasis sic).  This argument, however, is not supported by any case law, and fails to appreciate that Keller did not actually perform "her own complex analysis," but relied exclusively upon Plaintiffs' instructions.  Again, this is fatal to the admissibility of Keller's testimony because, as previously discussed, the Sixth Circuit has held that an expert's opinion should be excluded under Fed. R. Evid. 702 if the expert fails to conduct an "independent verification or analysis" of the data provided by the client.  *Ask Chemicals, LP*, 593 F. App'x at 510.  Thus, where, as here, "an expert merely offers his client's opinion as his own, that opinion may be excluded."  *Id.*; *see e.g. CIT Grp./Bus. Credit, Inc. v. Graco Fishing & Rental Tools, Inc.*, 815 F.Supp.2d 673, 677 (S.D.N.Y. 2011) (rejecting expert testimony based on "the conclusory statements of [the party's management] and not on his independent evaluation of the facts"); *King-Indiana Forge, Inc. v. Millennium Forge, Inc.*, No. 1:07–cv–00341–SEB–SML, 2009 WL

10

3187685, at *2 (S.D. Ind. Sept. 29, 2009) ("When an expert's proffered opinion merely parrots information provided to him by a party, that opinion is generally excluded").

In their Response, Plaintiffs cite no case law that refutes this fundamental principle of law. Rather, they concede that "where an expert's specialized knowledge involves *identifying* the correct data to be analyzed, courts may deem the expert's opinion unreliable if the data is not verified." (Doc.#54, Pl. Resp. pg. 12, PageID#2669) (emphasis sic) (citing *Ellipsis, Inc. v. The Color Works, Inc.*, 428 F. Supp.2d 752 (W.D. Tenn. 2006)). While Plaintiffs argue that *Ellipsis* is distinguishable because Keller did not select the underlying data that she used in performing her analysis, this argument makes our point because it is undisputed, as Plaintiffs concede on Page 13 of their Response, that Keller did not perform her own independent analysis or investigation to determine whether the underlying data was sufficiently complete for purposes of determining the actual time to release, but relied entirely "on the assumptions provided by counsel about the contents of the spreadsheets." (Doc.#54, Pl. Resp. pg. 13, PageID#2670). Thus, as in *Ellipsis*, Keller's expert reports and declaration should be excluded because Keller relied "exclusively on the data provided" by the client, without engaging in any independent expert analysis. *Id.*, 428 F. Supp.2d at 761 (excluding expert's findings because "Patzer relied exclusively on data provided by Ellipsis, failed to verify the information from the Realtree website or read the underlying study," failed to provide "any specific basis" for the assumptions in her expert report, and "failed to analyze many other factors that would affect his projection").

**D.   Plaintiffs Make No Argument To Show Why Keller's Testimony Provides A Reliable Methodology For Determining The Members Of The Proposed Class.**

As previously discussed, the County's Motion in Limine not only challenges whether Keller's Expert Reports provide a reliable methodology for determining the time to release, but whether her reports provide a reliable methodology for ascertaining whether a person is a member

11

of the proposed class. (Doc.#50, Motion in Limine, pg. 1, PageID#2263). In their Response, however, Plaintiffs provide no argument about this specific issue, but once again sought to change the subject by suggesting that Keller was retained only for the limited purpose of determining the "Time to Release," and "was not retained to provide, and did not provide, any opinions regarding the circumstances of any particular release." (Doc.#54, Pl. Resp. pg. 2, PageID#2659).

This argument makes our point. In this case, it is undisputed that Keller did not make any attempt to determine whether any alleged time to release in excess of 12 hours was attributable to the County's alleged policies and practices, or was caused by other third parties or other facts and circumstances that cannot be attributed to the County. (Doc.#50-1, Keller Dep. pg. 46, PageID#2287). This is fatal to whether Keller's expert reports can be used for ascertaining the members of the plaintiff class because Keller's Expert Reports fail to present any objective criteria for determining causation, which is one of the essential elements of a *Monell* claim and must be considered in determining whether a person has Article III standing and is a member of the proposed class. *Woodall v. Wayne Cnty., Mich.*. No. 20-1705, 2021 WL 5298537, at *7 (6th Cir. Nov. 15, 2021)).[1] Indeed, in *Healey v. Louisville Metro Gov't*, No. 3:17-CV-00071, 2021 WL 149859 (W.D. Ky. Jan. 15, 2021), a case relied heavily upon by the Plaintiffs, the district court specifically held that "the class definitions of over-detention classes premised on a municipal policy, practice, or custom should contain the cause of the over-detention." *Id.* at *17 (emphasis added). Otherwise, the class definition would be overly broad because it "would include members who have not suffered harm at the hands of the defendant." *Carter v. PJS of Parma, Inc.*, No. 1:15

---

[1] The fact that *Woodall* involved a strip search claim is not material. Rather, *Woodall* is directly relevant because, like this case, it involved a claim for *Monell* liability against a County Jail, and thus it discusses the essential elements of a *Monell* claim for purposes of determining whether to grant a motion for class certification based upon allegations of *Monell* liability. *Id.* at *6-8.

CV 1545, 2016 WL 3387597, *2 (N.D. Ohio June 20, 2016) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013), and *Wal-Mart v. Dukes*, 564 U.S. 338, 350 (2011)).

In their Response, Plaintiffs argue that it does not matter whether the time to release was attributable to other third parties, such as the City of Cleveland or the Cleveland Municipal Court, because "[n]othing in [Ohio law] imposes upon the clerk a statutory duty to guarantee that a copy of the . . . the judge's order reaches the affected party [or jail]." (Doc.#54, Pl. Resp. pg. 9, PageID#2666) (citing *Shorts v. Bartholomew*, 255 F. App'x 46, 59 (6th Cir. 2007), and quoting *Sampson v. City of Xenia*, 108 F. Supp.2d 821, 831 (S.D. Ohio 1999)). This quotation is misleading because it does not appear in *Shorts v. Bartholmew* opinion at all. While there is a quotation in *Sampson* about the alleged duties of a Clerk of Courts under Mississippi law, the quotation was merely intended to explain why the Clerk of Courts could not be held liable for the alleged failure to forward a copy of a journal entry to the Sheriff. In so doing, the district court in *Sampson* did <u>not</u> impose any mandatory duty upon the Sheriff to somehow "guarantee" that the Clerk's Order is timely forwarded to the affected party. Thus, the quotation from *Sampson*, as altered by Plaintiffs' Response Brief, is misleading because it suggests that Cuyahoga County can be held liable for a third party's failure to forward a copy of a release order to the Jail, which is not the holding in *Sampson* at all.

Ultimately, however, Plaintiffs' argument misses the point. The question at this juncture is not whether the County can be held liable for the alleged over-detention of each alleged class member. Rather, the question presented by Defendant's Motion in Limine is whether Keller's methodology provides a reliable method for ascertaining whether a person is a member of the proposed class. Thus, the Court must examine not only whether Keller provides a reliable method for calculating the time to release, but whether her methodology provides a reliable method for

13

identifying the cause of the alleged 12-hour release time, which was not determined by Keller and would require individualized factual determinations that fail to satisfy the ascertainability requirement under Fed. R. Civ. P. 23(b)(3). *Tarrify Props., LLC v. Cuyahoga Cnty., Ohio*, 37 F.4th 1101, 1106 (6th Cir. 2022); *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 466, 471-474 (6th Cir. 2017). Accordingly, for all of these reasons and for the additional reasons set forth in the County's Motion in Limine (Doc.#50), the Court should conclude that Keller's Expert Reports and Declaration fail to provide a reliable methodology for calculating the time to release and for ascertaining the members of the proposed class.

## CONCLUSION

For these reasons, therefore, Defendant Cuyahoga County respectfully requests that the Court should issue an Order in Limine that precludes the use of Lacey R. Keller's Expert Reports and Declaration for the purpose of (i) proving the time to release a detainee from the Cuyahoga County Jail or (ii) for ascertaining whether a person is a member of the proposed class.

Respectfully submitted,

Michael C. O'Malley, Prosecuting
Attorney for Cuyahoga County, Ohio

Brendan D. Healy (0081225)
Jake A. Elliott (0093521)
Bridget E. Dever (0102462)
Assistant Prosecuting Attorneys
Cuyahoga County Prosecutor's Office
1200 Ontario Street, 8th Floor
Cleveland, Ohio 44113
Telephone: (216) 443-7800
Facsimile: (216) 443-7829
bhealy@prosecutor.cuyahogacounty.us
jelliott@prosecutor.cuyahogacounty.us
bdever@prosecutor.cuyahogacounty.us

*/s/ Stephen W. Funk*
Stephen W. Funk (0058506)
ROETZEL & ANDRESS, LPA
222 South Main Street
Akron, Ohio 44308
Telephone: (330) 376-2700
E-mail: sfunk@ralaw.com

David Sporar (0086640)
ROETZEL & ANDRESS LPA
600 Superior Avenue East, Suite 1600
Cleveland, Ohio 44114
Telephone: (216) 830-6821
E-mail: dsporar@ralaw.com

*Attorneys for Defendant Cuyahoga County*

## CERTIFICATE OF SERVICE

     I hereby certify that on this 22nd day of May, 2025, the foregoing *Reply Memorandum* was served upon all counsel of record via the Court's electronic filing system.

                                            */s/ Stephen W. Funk*
                                            Stephen W. Funk (0058506)

23313657 _1