IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ALANNA DUNN, et al., | ) | CASE NO. 1:23-CV-00364-BMB |
| | ) | |
| Plaintiffs, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | |
| CUYAHOGA COUNTY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT REPORTS OF SEAN MALONE, PH.D.

Plaintiffs' Motion to Exclude the Expert Reports of Dr. Sean Malone, filed on May 15, 2025 (Doc.#56 and Doc.#57) is nothing more than a "tit for tat" response to Defendant Cuyahoga County's Motion in Limine to Exclude the Expert Reports and Declaration of Lacey R. Keller, filed on May 1, 2025. (Doc.#50, Def. Motion in Limine, pg. 1, PageID#2263). Indeed, as discussed more fully below, there is no legal basis for excluding Malone's expert reports, which were prepared to rebut Keller's expert reports by raising specific critiques to Keller's methodology for calculating the time to release based upon his expertise as a data analyst. While Plaintiffs argue that Malone's expert reports should be excluded because he did not perform his own statistical analysis, it is well-established that rebuttal experts are entitled to criticize an opposing expert's methodology without conducting their own statistical analysis or damage calculations *See Tera II, LLC v. Rice Drilling D, LLC*, No. 2:19-cv-2221, 2024 WL 621002, *14 (S.D. Ohio Feb. 14, 2024) (holding that rebuttal witnesses "are not required to suggest alternate theories of damages or conduct independent damages calculations; instead they are entitled to criticize Mr. Herzing's damages calculations"); *Equal Employment Opportunity Comm. v. Tepro, Inc.*, 133 F. Supp.3d

1

1034, 1047 (E.D. Tenn. 2015) (rebuttal expert not required to conduct "independent statistical analysis," but may respond to the opposing party's "expert statistical analysis and opinions").

This principle of law is particularly applicable in this case because Malone's opposing expert (Lacey R. Keller) did not perform any sort of statistical analysis at all. Rather, she blindly accepted the data provided by Plaintiffs' counsel, and then relied entirely upon Plaintiffs' counsel to tell her how to interpret the data and to calculate the time to release. (Doc.#50-1, Keller Dep. 51-52, 78-79, 90-91, 94:17-19, 95:23-25, 96:1-5, 97:15-19, 98:13, 100:21-23, 101:24-25, 102:1-15, 106:5-12, 107:12-16, 108:9-21, 109:25, 110:1-4, 111:17-22, 113:10-18, 114:11-22, 123:8-25, 124:1-5, 126:3-9, 131:9-16, 134:17-19, 135:20-23, 136:3-16, 137:18-21, PageID#2288, 2295, 2298-2310). Malone, in contrast, performed his own independent analysis of Keller's methodology and provided specific criticisms about the reliability of Keller's methodology and why it yielded inaccurate and misleading results. His conclusions were not "legal" conclusions; they were based upon Malone's expertise as a data analyst about Keller's methodology. Malone's expert testimony, therefore, should not be excluded because it will be helpful to the Court in determining whether Keller's methodology provides a reliable method for calculating the actual time to release and satisfying the ascertainability requirement for a Rule 23(b)(3) class action.

## LAW AND ARGUMENT

### A. Plaintiffs Mischaracterize Malone's Qualifications and Expert Opinions.

Plaintiffs' Motion to Strike mischaracterizes Malone's qualifications, the nature of his work as an expert in this case, and the nature and purpose of his expert opinions. As set forth in his Curriculum Vitae previously filed with the Court, Malone is the Associate Director of Analytics at IMS Legal Strategies who has significant litigation and consulting experience in the areas of finance, data analysis, and econometrics, including recent work in the overdetention case in *Healey*

*v. Louisville Metro Gov't,* No. 3:17-CV-00071 (W.D. Ky.), where Malone was personally involved in a year-long project to review a "sample" of 10,000 individual files of detainees on a case-by-case basis to determine whether they are members of the class. (Doc.#50-5, Malone CV, PageID#2367-2369); (Doc.#50-6, Malone Dep. pp. 66-74, 274-275, PageID#2387-2389, 2439). In so doing, Malone worked under the lead expert, Charles Cowan, but was personally involved in the work performed by his firm. (*Id.* at 69, PageID#2387). He therefore has significant experience in addressing the type of data analysis issues presented by Keller's Report, and is more than competent to render an expert opinion about whether Keller's methodology provides a reliable method for determining the time to release a detainee from a jail. (*Id.* at 66-74, PageID#2387-89).

Based upon his expertise as a data analyst and his personal experience in the *Healey* case, Malone was retained by Cuyahoga County to review and respond to the Expert Report of Lacey R. Keller that was served by Plaintiffs on January 31, 2025. (Doc.#50-3, Malone Expert Report, ¶ 2, PageID#2324). As part of his work for Cuyahoga County, Malone reviewed and analyzed Keller's expert report and data, along with an extensive list of other documents and records that are set forth in the five (5) page list of documents attached as Exhibit 1 to Malone's Report. (Doc.#50-3, Malone Expert Report Ex. 1, PageID#2343-2347). In so doing, Malone wrote two expert reports in which he presented his expert opinion, based upon his expertise and experience in data analytics, that "Keller's unreliable <u>methodology</u> is not appropriate for ascertaining the time that it actually took to release each inmate." (*Id.* at ¶ 5, PageID#2325) (emphasis added). Moreover, Malone concluded that (i) "due to insufficient data and incomplete methods," Keller's Report "arrives at inaccurate conclusions about individual inmates," (ii) "Keller's opinion is based on insufficient facts because it does not take into account the individual facts and circumstances that may have impacted the timing of each inmate's release"; (iii) that "Keller's analysis

3

wrongfully groups together categories of inmates whose individualize facts and circumstances may impact the timing necessary to process each inmate's release," and (iv) that "Keller's methods are inappropriate to calculate the number of people released in specific time intervals, as she disregards a large portion of inmates or computes an inaccurate time." (*Id.*)

While Plaintiffs' Motion seeks to portray the above-referenced conclusions as "legal" conclusions, this description is incorrect because Malone does not render any opinions about whether the time to release was reasonable or whether a person was overdetained under the applicable constitutional standard. (Doc.#50-6, Malone Dep. 250:15-17, PageID#2433). Moreover, he does not render any opinions about what evidence is legally "relevant" in deciding this constitutional issue, other than explaining that a data analyst must become sufficiently familiar with the nature of the underlying data that is being used to draw <u>factual</u> conclusions and perform their own independent analysis and investigation of the facts to determine whether the data takes into account all of the facts and circumstances that may impact the <u>factual conclusions being drawn by the data analyst's expert report</u>. (Doc.#50-6, Malone Dep. pg. 286, PageID#2442). In this case, in fact, it is Keller who has blindly relied upon the instructions of Plaintiffs' counsel in determining what data was relevant to calculating the time to release, and she did not perform any independent investigation to determine whether the data that she relied upon was complete, and could be used to draw the very definitive conclusions that she made in her expert reports. Thus, it is entirely appropriate for Malone to criticize Keller's methodology and render the expert opinion – as a data analyst in the same profession as Keller – that her methodology is unreliable because she purported to draw expert conclusions about the actual time to release based upon a limited set of data and without conducting her own independent analysis into whether her data was complete and took into account all the facts and circumstances that may impact the time to release.

Indeed, when Plaintiffs' counsel asked Malone at his deposition about whether a data analyst can simply <u>assume</u> the dataset is "perfect" without conducting any independent investigation of the facts, Malone explained that a data analyst must "have a methodology that's aware of all of the circumstances that might occur," (Doc.#50-6, Malone Dep. 290:7-19, PageID#2443), and cannot merely accept a "blank representation" that the data set is complete and that the assumptions are true because "[y]ou need to do some due diligence about the assumptions before you continue to calculate results." (*Id*. at 296:20-22, PageID#2444). Malone further explained that "[y]ou have to understand [the] limitations of the assumptions. It's not that you can't draw any conclusions at all from the data, but you have to understand that there are limitations before you go drawing conclusions." (*Id*. at 297:13-17, PageID#2444).

Again, this testimony is based upon Malone's experience and expertise as a data analyst and a statistical expert, and thus is fully admissible and appropriate to consider under Rule 702 of the Federal Rules of Evidence. As Malone explained on Pages 293-294 of his deposition, "I think my job <u>as a statistical expert</u> requires that I validate the assumptions that are given to me. And especially if they're assumptions that can be ground[ed] in the data that I'm responsible for reviewing." (*Id*. at 293-294, PageID#2443-44) (emphasis added). In particular, Malone further explained that, as a data analyst, he "would check all those assumptions for myself to the extent that it's possible. And if I were to make the conclusions that all of those assumptions are true to – according to the methods that I've chosen to assess them, I may be able to draw some conclusions from – about the data that tells us the time to release," ***but*** he emphasized that "<u>I would need to investigate them</u> to some degree before I would make a conclusion." (Malone Dep. pg. 294:9-17 and 296:5-15, PageID#2444). Thus, it was Malone's expert opinion that Keller's methodology

5

was unreliable because she did not perform her own independent analysis about the completeness of the data and whether it took into account all the facts and circumstances of a release.

This is not a legal conclusion; it is a valid and legitimate critique of Keller's methodology. As Malone explained at his deposition, "I'm just looking at Keller's methodology to measure the time is reliable in coming – arriving at estimates of how long it took to release," and repeatedly explained that Keller's methodology was not reliable because she "chose to rely on an insufficient dataset by just looking at what was conveniently available in the electronic data instead of looking at all of the facts and circumstances." (*Id.* at 250:17-21, 262:11-14, PageID#2433, 2436) (emphasis added). Indeed, as previously discussed, Keller admitted that she did not perform any due diligence to determine whether the spreadsheets provided by Plaintiffs' counsel contained all the facts and circumstances that may impact the time to release, and did not perform any investigation to determine whether the methodology used to calculate the time to release would yield accurate results. Instead, she blindly relied upon Plaintiff's counsel to determine how the data should be interpreted, and whether the results were accurate, any outliers should be excluded, or any other adjustments should be made. (Doc.#50-1, Keller Dep. 97:6-19, 107:14-16, 149:8-15, 150-151, PageID#2300, 2302, 2313). Malone's testimony therefore should not be excluded because it explains why Keller's methodology is incomplete and should not be relied upon this Court in determining the actual time to release.

In their Motion to Strike, Plaintiffs also argue that Malone's expert reports should be excluded because he merely reviewed 100-200 individual files and did not perform any "statistical analysis" to determine whether the individual files were a representative sample. This argument misses the point. Malone was not performing his own independent calculations about the time to release. Rather, he was evaluating whether Keller's methodology was reliable, and his review of

6

the 100-200 individual files and all of the other documents and records listed on Exhibit 1 of his Report only further confirmed that her methodology relied upon "incomplete" data because his review of the release documentation showed that there were "a lot of individual circumstances and facts that show up in these paper records" that were not found in the limited data used by Keller to perform her calculations. (Doc.#50-6, Malone Dep. 139-142, PageID#2310-2311). Thus, it was Malone's professional opinion as a data analyst that "Keller's <u>methodology</u> fails to provide an appropriate method for determining both the length of time to release an inmate and for determining the facts and circumstances that may impact the length of time to takes the release an inmate" for the following valid and legitimate reasons:

> In attempting to draw conclusions about the length of time that it takes to release an inmate, Keller relies upon incomplete information to reach inaccurate and flawed conclusion about the actual time that it took to release an inmate. While Keller attempts to draw conclusions from the data that she was provided, a review of the data confirms that she did not consider any information about the facts and circumstances that may have impacted the time that it took to release an inmate. The facts and circumstances of each release, in fact, are different, and it is not possible to identify the facts and circumstances that may have caused a delay in the release of each inmate without examining the individual records and information about each inmate. Thus, it is my expert opinion that Keller's methodology fails to provide an appropriate method for determining both the length of time to release an inmate or for determining the facts and circumstances that may impact the length of time it takes to release an inmate.

(Doc.#50-3, Malone Expert Report, ¶ 20, PageID#2329-30). This is a valid and legitimate critique of Keller's methodology by a data analyst in the same professional field, and it should not be excluded.

### B. The Court Should Reject Plaintiffs' Meritless Legal Arguments About Why Malone's Expert Reports Should Be Excluded.

In their Motion, Plaintiffs do not present any valid legal basis for excluding Malone's expert reports. In this regard, Plaintiffs generally rely upon three arguments: (1) that Malone's expert reports should be excluded because they allegedly set forth "legal" conclusions; (2) that

7

Malone's expert reports should be excluded because he is not a "subject matter" expert on jail operations; and (3) that Malone's expert opinions should be excluded because he only reviewed 100-200 paper files, and did not perform a "statistical" analysis about the accuracy of Keller's results. All three (3) arguments should be rejected because they both mischaracterize the nature of Keller's testimony and fail to justify the exclusion of Malone's expert opinions as a data analysis about the reliability of Keller's methodology for determining the actual time to release.

### 1. Malone's Opinions Are Not Legal Conclusions; They Are Valid And Admissible Criticisms About The Reliability of Keller's Methodology.

As previously discussed, Malone's expert opinions are not legal conclusions; they are valid and legitimate criticisms of Keller's methodology that are clearly admissible under Evid. R. 702. At his deposition, in fact, Malone made clear that he was not rendering any expert opinion on the <u>legal</u> relevance of what evidence should be considered in determining the constitutionality of an alleged overdetention. Rather, he was criticizing Keller's <u>methodology</u> because she did not take into account all the facts and circumstances that may impact the <u>time to release</u>, which is a <u>factual</u> question that Keller was purporting to calculate in her capacity as a data analyst for each and every pretrial detainee who was released from the Jail during the relevant time period. Thus, the Court should reject Plaintiffs' arguments that Malone's critique of Keller's methodology should be excluded because it allegedly constitutes an inadmissible "legal" conclusion. *See Twin K Construction, Inc. v. UMA Geotechnical Const.*, 597 F. Supp.3d 1204, 1211 (E.D. Tenn. 2022) (rejecting argument that expert testimony should be excluded "House does not opine that Plaintiff is 'legally obligated' for Plaintiff's idle equipment costs," but "instead has reviewed the facts and rendered certain [factual] opinions").

This is a critical point because Plaintiffs wrongfully want to have it both ways. Keller rendered a number of very *definitive* factual opinions about the time to release each inmate from

the Jail without performing her own independent investigation of the facts and whether the data was complete and could be relied upon to draw her specific factual conclusions. Indeed, rather than conducting her own independent investigation of the facts, Keller relied entirely upon Plaintiffs' counsel in determining what data should be considered, what data should be excluded, and even how the data should be ***interpreted*** in calculating the time to release. (Doc.#50-1, Keller Dep. 97:6-19, 107:14-16, 149:8-15, 150-151, PageID#2300, 2302, 2313). In contrast, Malone did not receive any instructions from Defendant's counsel about what data would be "relevant" to calculating the time to release. Rather, Malone reviewed Keller's report, data, and all of the documents listed on Exhibit 1 to his Report, and rendered an expert opinion (based upon his expertise as a data analyst in the same professional field as Keller) about whether Keller's data and methodology provided a reliable method for drawing the factual conclusions set forth in Keller's expert report about the time to release inmates in the Jail.

Finally, we note that, even if the Court were to conclude that any particular statement in Malone's reports or deposition to be a legal opinion, this would not mean that *all* of his expert reports should be excluded. Rather, to the extent that the Court finds that any particular statement in Malone's reports or deposition testimony constitutes an inadmissible "legal" conclusion, then the Court can simply disregard such statements in performing its analysis of whether to certify a class under Fed. R. Civ. P. 23(b)(3). Indeed, given that Malone's expert opinions are merely a critique of Keller's methodology, there is no reason to exclude Malone's expert reports under Fed. R. Evid. 702. Accordingly, the Court should not exclude Malone's expert reports because they are based upon valid and legitimate critiques of Keller's methodology and whether it can be relied upon to prove the actual time of release and to satisfy the ascertainability requirement.

### 2. Malone Does Not Need To Be An Expert In Jail Operations In Order To Present Criticisms About The Methodology Used By Another Data Analyst About The Reliability Of Keller's Methodology.

Plaintiff's second argument is based upon the suggestion that Malone's expert reports should be excluded because he is not an expert in jail operations. This is a meritless argument because it once again ignores the fact that Malone's expert opinions are based upon a critique of Keller's methodology as a data analyst, and thus he is clearly qualified to provide expert opinions why Keller's methodology for determining the time to release is incomplete and unreliable. Indeed, even if a data analyst is not an expert in jail operations, he or she still should become sufficiently familiar with the jail release processes in order to understand the sources of the data that they are being used and relying upon in performing their calculations, and to determine that the data can be effectively used by the analyst in drawing the conclusions set forth in the expert's report. As Malone explained at his deposition, a data analyst must "have a methodology that's aware of all of the circumstances that might occur," and should not merely accept a "blank representation" that the data set is complete and that the assumptions are true because "[y]ou need to do some due diligence about the assumptions before you continue to calculate results." (Doc.#50-6, Malone Dep. 290:7-19, and 296:20-22, PageID#2443-44). Thus, Malone's testimony is clearly based upon his expertise as a data analyst because it pertains to the <u>methodology</u> that a data analyst should follow in making factual conclusions based upon data provided by a client.

In this regard, it is hard to understand why Plaintiffs believe that Keller can be permitted to render expert opinions about the actual time to release without being a jail operations expert, but Malone cannot criticize her methodology as a data analyst because he is not a jail operations expert. Indeed, the only apparent reason why Plaintiffs believe that Keller's methodology is admissible (and Malone's expert reports are not) is because Keller did not conduct ***any***

investigation of the facts to determine what data should be considered in determining the time to release, but blindly accepted the instructions of counsel about what data should be considered, and how the data should be interpreted. (Doc.#50-1, Keller Dep. pg. 107, PageID#2302) ("All I know is what's recorded in the spreadsheet and then how counsel instructed me to interpret that information"). As a result, Keller's calculations fail to satisfy the applicable reliability standards under Fed. R. Evid. 702 because her methodology for calculating the time to release was not actually her own methodology, but was the methodology <u>developed by Plaintiffs' counsel</u>. Accordingly, it is Keller's unreliable methodology – not Malone's criticisms of Keller's methodology – that should be excluded by this Court. *See Ask Chemicals, LP v. Computer Packages, Inc.*, 593 F. App'x 506, 510 (6th Cir. 2014) (affirming exclusion of expert testimony because the expert failed to conduct any "independent verification or analysis" of the data provided by the client); *CIT Grp./Bus. Credit, Inc. v. Graco Fishing & Rental Tools, Inc.*, 815 F.Supp.2d 673, 677 (S.D.N.Y. 2011) (rejecting expert testimony based on "the conclusory statements of [the party's management] and not on his independent evaluation of the facts"); *King-Indiana Forge, Inc. v. Millennium Forge, Inc.*, No. 1:07–cv–00341–SEB–SML, 2009 WL 3187685, at *2 (S.D. Ind. Sept. 29, 2009) ("When an expert's proffered opinion merely parrots information provided to him by a party, that opinion is generally excluded").

    **3.    Malone Is Entitled To Criticize Keller's Methodology Without Performing A Statistical Analysis Of Her Results, Particularly Since Keller Did Not Perform Any Statistical Analysis At All.**

Finally, the Court should reject Plaintiffs' argument that Malone's expert reports should be excluded because he did not perform his own statistical analysis of her time to release results. This is also a meritless argument because it is well-established that a rebuttal expert is entitled to criticize an opposing expert's methodology without conducting his own statistical analysis or

damage calculations. *Tera II, LLC v. Rice Drilling D, LLC*, No. 2:19-cv-2221, 2024 WL 621002, *14 (S.D. Ohio Feb. 14, 2024) (rebuttal witnesses "are not required to suggest alternate theories of damages or conduct independent damages calculations; instead they are entitled to criticize Mr. Herzing's damages calculations") (citing *CDA of America, Inc. v. Midland Life Ins. Co.*, No. 01-cv-837, 2006 WL 5349266, at *6 (S.D. Ohio Mar. 27, 2006) (collecting cases "where the court allowed defendant's expert to testify as to the weaknesses in plaintiff's theory of damages without offering his own theory"); *Equal Employment Opportunity Comm. v. Tepro, Inc.*, 133 F. Supp.3d 1034, 1047 (E.D. Tenn. 2015) (rebuttal expert not required to conduct "independent statistical analysis," but may respond to the opposing counsel's "expert statistical analysis and opinions").

In this regard, Plaintiffs are wrong in suggesting that Malone's expert opinions are based upon "speculation" because he did not conduct a statistical analysis. As previously discussed, Malone's expert opinions are not based upon speculation; they are based upon his comprehensive review of Keller's methodology and data, along with all of the documents and other records listed in Exhibit 1 to his Expert Report. In so doing, Malone was not attempting to identify the <u>percentage</u> of Keller's results that were inaccurate; he was examining whether Keller's <u>entire</u> methodology was unreliable because it purported to determine the actual time to release based upon faulty and incomplete data that did not take into account all the facts and circumstances that may impact the time to release. (Doc.#50-3, Malone Expert Report, ¶ 20, PageID#2329-30). Thus, the Court should reject Plaintiffs' meritless argument that Malone's expert report should be excluded because he did not conduct his own statistical analysis.

Indeed, in arguing that Malone should have performed a "statistical" analysis, Plaintiffs ignore the fact Keller did not perform any statistical analysis in her reports. While Keller testified that she *could* have performed an "outlier" statistical analysis that takes into consideration "the

12

interquartile range and then applies a multiplier to it to get some fences for a regular outlier and an extreme outlier," she did <u>not</u> perform this statistical analysis because she was not asked to identify any outliers by Plaintiffs' counsel. (Doc.#50-1, Keller Dep. 150, PageID#2313). Instead, she relied entirely upon Plaintiffs' counsel to review "all of the data, especially the high end of the spectrum, to ensure that that it was accurate." (*Id.* at 149:8-10, PageID#2313). Accordingly, it is far from clear why Malone's reports should be excluded for failing to perform a statistical analysis when Keller did not perform any statistical analysis at all.

## **CONCLUSION**

For these reasons, therefore, Defendant Cuyahoga County respectfully requests that the Court deny Plaintiffs' Motion to Exclude the Expert Reports of Dr. Sean Malone.

Respectfully submitted,

*/s/ Stephen W. Funk*

| | |
|---|---|
| Michael C. O'Malley, Prosecuting Attorney for Cuyahoga County, Ohio | Stephen W. Funk (0058506) ROETZEL & ANDRESS, LPA 222 South Main Street |
| Brendan D. Healy (0081225) Jake A. Elliott (0093521) Cuyahoga County Prosecutor's Office 1200 Ontario Street, 8th Floor Cleveland, Ohio 44113 Telephone: (216) 443-7800 bhealy@prosecutor.cuyahogacounty.us jelliott@prosecutor.cuyahogacounty.us | Akron, Ohio 44308 Telephone: (330) 376-2700 Facsimile: (330) 376-4577 E-mail: sfunk@ralaw.com  *Attorneys for Defendant Cuyahoga County* |

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of May, 2025, the foregoing *Defendants' Memorandum in Opposition to Plaintiffs' Motion to Exclude Expert Reports of Dr. Sean Malone* was served upon all counsel of record via the Court's electronic filing system.

*/s/ Stephen W. Funk*
Stephen W. Funk (0058506)