# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| Alanna Dunn, *et al.* | Case No. 1:23-cv-00364 |
| Plaintiffs | Judge Bridget Meehan Brennan |
| v. | |
| Cuyahoga County, *et al.* | |
| Defendants | |

# PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE EXPERT REPORTS OF DR. SEAN MALONE

# INTRODUCTION

Defendant's strained attempt to spin Dr. Malone's qualifications and opinions fails to establish that they are adequate or admissible. First, Defendant tries to legitimize Dr. Malone's reports by claiming that they merely rebut Keller's analysis. In reality though, Dr. Malone's reports do not meaningfully engage with Keller's Time to Release analysis. Instead, they focus primarily on the facts and circumstances that he believes should be considered in an altogether different analysis about overdetention—what Dr. Malone refers to as "actual time to release"—which Keller did not seek to conduct, and which Dr. Malone is not qualified to address.

Next, Defendant attempts to recast Dr. Malone's opinions as a narrow critique that a data scientist in Keller's position must simply consider all relevant facts and circumstances, while at the same time Defendant ignores the specific facts and circumstances Dr. Malone identified throughout his reports and opined Keller should have considered. Even this reframed position cannot salvage Dr. Malone's proffered testimony because he is not qualified to opine on whether Keller considered all relevant facts and circumstances, absent the subject matter expertise needed to make that determination. Perhaps recognizing this deficiency, Defendant suggests that Dr. Malone's experience reviewing paper files to identify class members after class certification in *Healey* qualifies him to offer such opinions. But Dr. Malone himself does not make this claim, and the record shows that he could not do so successfully if he tried.

Finally, because Defendant cannot identify a methodological basis for Dr. Malone's opinions, it argues that he was not required to perform any statistical analysis to rebut Keller's work. But this unavailing argument ignores that all expert opinions, including rebuttal opinions, must be grounded in a reliable methodology. Defendant has failed to identify any such methodology here. Accordingly, Dr. Malone's reports should be excluded.

# ARGUMENT

### A. Defendant Insists that Dr. Malone is Purely a Rebuttal Expert, but the Majority of His Opinions Concern Overdetention and are Not Responsive to Keller's Testimony

Defendant's opposition to Plaintiffs' motion to exclude Dr. Malone's expert reports suffers from a fundamental flaw: Defendant refuses to acknowledge that the majority of Dr. Malone's opinions are about calculating *overdetention*, not Time to Release. As Plaintiffs have explained, these two concepts are distinct. Pretrial detainees become entitled to release from the Jail upon the occurrence of one of several possible events (a "Release Triggering Action") and are subsequently free to walk out of the Jail ("Released") some number of hours later. Time to Release is an objective calculation of the fixed duration of time between a detainee's Release Triggering Action and Release. Plaintiffs' expert Lacey Keller simply calculated this duration for all pretrial detainees who met specified criteria. (ECF 54 at 2-4)[1]

By contrast, as Defendant put it, Dr. Malone's primary critique of Keller's work is that she "did not take into account all the facts and circumstances that may *impact* the time to release[.]" (ECF 60 at 8 (emphasis added)) The facts and circumstances that impact a detainee's objective Time to Release are arguably pertinent to an overdetention analysis but not to the objective Time to Release analysis that Keller conducted. Dr. Malone's deposition testimony underscores that his opinions are really about the former. For instance, he testified that even assuming the Release Triggering Action and Release data were accurate and sufficient to measure Time to Release, his critique of Keller's analysis would stand because "that still falls short of what might really matter in this case, it's *overdetention*." (ECF 50-6, 291:5-11 (emphasis added)) Dr. Malone relatedly opined that "a trier of fact may want to consider those [facts and] circumstances [he identified] in

---

[1] Herein, all ECF pincites to page numbers refer to the ECF page numbers stamped at the *top* of the filed document.

a case that's about overdetention." (*Id.,* 287:4-288:7)

The particular facts and circumstances Dr. Malone discusses in his reports further highlight the distinction between Keller's Time to Release analysis and the facts and circumstances that *impact* time to release, which he and Defendant repeatedly refer to as "*actual* time to release." (*E.g.,* ECF 50-3 ¶ 5; ECF 60 at 2 (emphasis added)).[2] For example, Dr. Malone opines that Keller should have considered whether human error caused any delay in a detainee's release. (ECF 50-3 ¶ 28) But, as his deposition testimony shows, this circumstance does not affect Keller's objective Time to Release calculation. He acknowledged: "The calculation of the time to release I'm not exactly disagreeing with." (ECF 50-6, 189:2-13) Rather, he was taking issue with "the fact that [Keller] didn't record or look for, or her methodology didn't consider *circumstances that might explain it*." (*Id.* (emphasis added))

This distinction is further illustrated by another example. Dr. Malone opines that Keller should have considered whether detainees received credit for time served after their Release. (ECF 50-4 ¶¶ 9-12, 14-16) But detainees' receipt of credit for time served *following* their Release obviously does not change the duration of time that passed (by any measure) *before* their Release occurred. Accordingly, this consideration has no bearing on the objective Time to Release calculation Keller conducted, nor does it even affect the subjective so-called "actual time to release" calculation Dr. Malone contends she should have performed. It merely parrots a legal defense Defendant will assert to try and minimize its exposure to damages. (*See* ECF 51 at 12 n.8)

As these examples illustrate, Dr. Malone's critique of Keller for failing to consider particular "facts and circumstances" of each release is not true rebuttal testimony because it is not

---

[2] The facts and circumstances Dr. Malone contends Keller should have considered are listed in Plaintiffs' opening memorandum. (ECF 57 at 6 n.4)

3

responsive to the objective Time to Release analysis Keller actually conducted. In fact, Dr. Malone acknowledged this in his deposition. (*See* ECF 50-6, 188:1-10 (**Q.** But is it fair to say that your analysis about what has *caused* a release time doesn't touch upon Keller's analysis because she is not purporting to discuss what has *caused* any of the release times she's measured? . . . **A.** *It doesn't directly respond to Keller's opinions*. It's just what I feel is a weakness in her methodology is not being able to find those circumstances. (emphasis added)) Dr. Malone's testimony can be excluded on this basis alone. *See E.E.O.C. v. Tepro, Inc.*, 133 F. Supp. 3d 1034, 1047 (E.D. Tenn. 2015) ("[R]ebuttal experts cannot exceed the scope of simply responding to the original expert's testimony and opinions." (internal quotations and citation omitted)); *see also id.* at n.8 (the "scope of [] testimony [by a rebuttal expert] may be substantially limited" where portions of it exceed the scope of responding to the other party's expert's opinions).

In an effort to legitimize Dr. Malone's unresponsive and irrelevant opinions, Defendant repeatedly and emphatically asserts (as Dr. Malone echoed in his deposition, which is quoted in the preceding paragraph) that his opinions merely criticize Keller's "methodology." (*See e.g.*, ECF 60 at 1) But labeling an opinion a critique of methodology does not make it so. Defendant does not—and cannot—dispute that Dr. Malone never opined on the four data-science methods Keller employed in conducting her Time to Release analysis, namely how she: (1) merged and structured the numerous large datasets, (2) cleaned the data, (3) organized the data into distinct Custody Sessions, and (4) calculated the Time to Release for all Custody Sessions that satisfied the defined criteria. (*See* ECF 57 at 3-4) What Dr. Malone actually does in his reports (whether due to a misunderstanding or an intentional mischaracterization of Keller's analysis) is criticize Keller for not conducting an entirely different analysis—one that measures the so-called "actual time to release" rather than the objective Time to Release—and not considering the specific "facts and

circumstances" he believes to be relevant to such an alternative analysis. This is not a rebuttal that critiques Keller's data science methodology. It is an affirmative opinion about the type of analysis Keller should have performed in the first instance and the factors she should have considered in undertaking that hypothetical task. As discussed below, Dr. Malone is not qualified to render such opinions, and they constitute improper legal conclusions.

### B. Dr. Malone Is Not Qualified to Opine on What Facts and Circumstances are Relevant to An Overdetention Analysis

Defendant does not dispute that Dr. Malone is neither a legal expert nor a subject matter expert in any jail's release policies and practices. Defendant also does not attempt to justify Dr. Malone's qualifications on the basis that his opinions are grounded in his statistical expertise. Instead, Defendant argues that Dr. Malone is qualified to opine on what facts and circumstances are relevant to an overdetention analysis primarily because of his experience in the *Healey v. Louisville Metro Government.* case. (ECF 60 at 2-3) This argument fails.

When an expert witness relies "solely or primarily on experience [to demonstrate his qualification], then the witness must explain [1] how that experience leads to the conclusion reached, [2] why that experience is a sufficient basis for the opinion, and [3] how that experience is reliably applied to the facts." Fed. R. Evid. 702 (Advisory Committee Notes, 2000 Amends.). All three of these required explanations are fatally absent from Dr. Malone's reports. In fact, nowhere in his reports or in his attached curriculum vitae ("CV") does Dr. Malone even so much as mention or reference *Healey*, much less claim that he is qualified because of his experience reviewing paper files for the case. (*See* ECF 50-3 at ¶¶ 7-12 (setting forth "Professional Qualifications"); ECF 50-4 ¶ 8 (same); ECF 50-3 at 27-29 (CV)) During his deposition, Dr. Malone only mentioned his experience in the *Healey* case at all because Plaintiffs' counsel inquired about his prior involvement in civil rights cases. (ECF 50-6, 65:24–66:3) And while Dr. Malone

testified that he has "learned quite a bit" from his experience reviewing documents related to release processes, he "wouldn't go [so] far" as to say that he is a subject matter expert in any area that concerns correctional facilities. (*Id.*, 86:3-19) Thus, the Court cannot properly find Dr. Malone qualified based on his experience in *Healey* because its "gatekeeping function requires more than simply 'taking the expert's word for it'" Fed. R. Evid. 702 (Advisory Committee Notes, 2000 Amends.) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995)) and making such a finding here would require an even greater misstep: taking the *Defendant's* word for it.

Moreover, Dr. Malone's limited role in *Healey* is inapposite, and the record shows he could not possibly satisfy the requirements necessary to demonstrate that his experience qualifies him to assert his opinions. For instance, the majority of Dr. Malone's testimony consists of him identifying specific facts and circumstances that he believes should be considered in an analysis of "actual time to release." But when asked in his deposition who determined what holds and other factors he should consider while reviewing paper files in *Healey*, he testified: "they didn't retain me personally. I wasn't the testifying expert, so *none of these decisions would have been mine in particular*." (ECF 50-6, 280:14-281:19 (emphasis added)) Relatedly, when asked whether counsel in *Healey* instructed him on which actions to treat as release triggers, Dr. Malone could not recall the "exact source of what . . . those [release] triggers should be." (*Id.*, 279:21-280:3) Given that Dr. Malone did not establish the criteria for his review of paper files in *Healey*, his experience there cannot serve as the basis for his opinions here.

Dr. Malone also could not possibly explain how his experience in *Healey* can be "reliably applied to the facts" here because the facts differ in material respects. The work he was "involved in" for *Healey* included reviewing detainees' paper files "to determine whether they [were]

6

members of the class," (ECF 60 at 3), which was already defined and certified when Dr. Malone's firm was retained (ECF 50-6, 67:24-68:6). Here, in contrast, Dr. Malone undertook his work on behalf of Defendant before a class was certified, and even before Plaintiffs defined a proposed class in a certification motion. Further, Keller's analysis that Dr. Malone seeks to rebut is not about identifying class members at all; it is about determining the Time to Release for individuals meeting specified criteria, the majority of whom are not even expected to be class members because they were released within 12 hours of their Release Triggering Action. And, perhaps most importantly, critical data such as when a bond was paid was not electronically recorded in *Healey*, making the data insufficient for a Time to Release analysis and necessitating manual paper file review (ECF 50-6, 80:25-81:25), whereas the data provided to Keller here identified when all Release Triggering Actions occurred.

Ultimately, because Defendant cannot substantiate Dr. Malone's qualifications to opine on the facts and circumstances relevant to determining overdetention, it fails to defend or even acknowledge the specific facts and circumstances Dr. Malone identified in his reports as essential to such an analysis. Instead, Defendant devotes the better part of six pages of its opposition to citing Dr. Malone's deposition testimony in an effort to reframe his opinions as methodological critiques. (*See* ECF 60 at 2-7) Specifically, Defendant argues that Dr. Malone merely opined that Keller's methodology was unreliable because she "chose to rely on an insufficient dataset by just looking at what was conveniently available in the electronic data instead of looking at all of the facts and circumstances." (ECF 60 at 6 (citation and quotations omitted); *see also id*. at 4-6, 8.)

Even if Defendant's reframing accurately captured the extent of Dr. Malone's opinion—which it does not—it would still be an opinion he is unqualified to offer because the assertion that Keller used "insufficient" datasets to measure "actual time to release" is not a data science opinion.

7

(*Id.* at 6) Rather, it is a substantive legal opinion that turns on how "actual time to release" is defined. Dr. Malone obviously does not use the phrase "actual time to release" to refer to the straightforward measurement of time between a specified Release Triggering Action and Release (*i.e.* what Keller calculated); he uses it to refer to the broader set of facts and circumstances that may impact whether a detainee has been overdetained. *See supra* Section A. Neither Dr. Malone nor Defendant have offered any basis beyond his inadequate experience in *Healey* to conclude that Dr. Malone possesses the requisite expertise to: (1) define what constitutes a detainee's so-called "actual time to release," (2) determine which specific facts and circumstances must be considered in an analysis of "actual time to release," or (3) conclude that Keller should have conducted such an analysis.

## C. Dr. Malone's Legal Conclusions About What Is Relevant to Determining Overdetention Are Unhelpful and Improper

Defendant contests Plaintiffs' argument that, qualification aside, Dr. Malone's opinions constitute unhelpful and improper legal conclusions. Notably, Defendant does not deny that Dr. Malone's assertions mirror Defendant's legal arguments (*see* ECF 57 at 8 (providing examples)), nor does Defendant deny that Dr. Malone couches his opinions in the very language used in case law holding class certification is not appropriate. (*Id.*) While ignoring those points, Defendant insists that Dr. Malone "does not render any opinions about what evidence is legally 'relevant' in deciding the constitutional issue . . . ." (ECF 60 at 4) But that is *precisely* what Dr. Malone does by opining that Keller needed to consider particular facts and circumstances to determine detainees' so-called "actual time to release." He is opining that the relevant duration of time to measure to determine whether a detainee was overdetained (which, granted, was not the purpose of Keller's analysis) is not the time between their Release Triggering Action and their Release but, for instance, the duration of time between when CCSD received notice of the Release Triggering

Action and the Release. (ECF 50-3 ¶¶ 46-49) That is a contested legal question for the Court to decide at the appropriate time based on case law and legal argument of the parties, not based on the unqualified and baseless opinion of Defendant's expert.

Defendant's related insistence that determining whether particular facts and circumstances "impact the time to release . . . is a factual question" is wrong for the same reason. (ECF 60 at 8 (emphasis omitted)) Dr. Malone's own testimony underscores the *legal* nature of his opinion. He testified that Keller should have considered the specific facts and circumstances he identified because they could be "relevant" to the finder of fact. (*See* ECF 57 at 9 (citing excerpts of Dr. Malone's deposition testimony)) Of course, "[d]etermining relevance is the province of the court, not the parties[,]" *Pemberton v. Bell's Brewery, Inc.*, No. 1:22-CV-739, 2024 WL 2842902, at *2 (W.D. Mich. June 5, 2024), and certainly not the parties' experts. Thus, Dr. Malone's opinions are not only outside the scope of his expertise but also unhelpful and improper because they are reserved for the Court.

Plaintiffs' positions as to Keller and Dr. Malone are entirely consistent and do not indicate any effort "to have it both ways," as Defendant cursorily argues. (ECF 60 at 8; *see also id.* at 10-11 (questioning why Plaintiffs believe Keller is qualified to offer her opinions without being a jail operations expert while the same is not true for Dr. Malone)) Keller appropriately relied on Plaintiffs' counsel to provide assumptions about the contents of the spreadsheets she analyzed and for instructions as to which Custody Sessions to exclude from her analysis because Keller is a data scientist, not a subject matter expert in corrections or overdetention. (ECF 54 at 12-13) That is also why the scope of her assignment was limited to merging, standardizing, and cleaning data, and writing code to calculate the duration of time between two specific types of events for Custody Sessions meeting specified criteria. (*See* ECF 54 at 4-7) In other words, Keller's work and opinions

9

were firmly grounded in her data science expertise and did not stray beyond the bounds of it. In stark contrast, Dr. Malone's work and opinions strayed far beyond the bounds of his statistical expertise, as he reviewed a sample of detainee paper files and unilaterally determined which facts and circumstances reflected in those records were purportedly relevant to an analysis of "actual time to release." Those opinions are not grounded in Dr. Malone's expertise and are wholly improper.

**D. Dr. Malone's Conclusions are not Based on any Methodology, Reliable or Otherwise**

Finally, in response to Plaintiffs' argument that Dr. Malone did not utilize *any principles or methods*, much less reliable ones, to conclude Keller's analysis is flawed, Defendant counters that Dr. Malone may criticize Keller's methodology without conducting his own statistical analysis. (ECF 60 at 11-12) As one court responded to a party's comparable assertion: "That argument is frivolous. Although a rebuttal expert has no burden to produce models or methods of their own, a rebuttal expert must still meet *Daubert*'s threshold standards regarding . . . [among other things] reliability of the methodology[.]" *Mirkin v. XOOM Energy, LLC*, No. 18-CV-2949 (ARR) (JAM), 2025 WL 16333, at *6 (E.D.N.Y. Jan. 2, 2025) (internal quotations and citation omitted). *Accord In re Generic Pharms. Pricing Antitrust Litig.*, No. 16-CB-27242, 2024 WL 4980784, at *14 (E.D. Pa. Dec. 3, 2024) (rebuttal expert need not "necessarily produce a competing analysis to the methodology that they criticize" but because all experts must satisfy *Daubert,* a rebuttal expert who "discredit[s] another expert's model . . . must still provide good grounds *based in methods and principles of analytical evaluation* to ground their opinions that discredit an analytical expert opinion" (emphasis added)). This critical limitation is even recognized in the very case Defendant cites for support. *See TERA II, LLC v. Rice Drilling D, LLC*, No. 2:19-cv-2221,

2024 WL 621002, at *14 (S.D. Ohio Feb. 14, 2024) ("[R]ebuttal witnesses [] designated as experts . . . must still meet the standard in Rule 702.").

Since Defendant cannot point to any principles or methods Dr. Malone used to critique Keller's analysis (because he used none), it simply makes the conclusory assertion that Dr. Malone's "opinions are not based upon speculation [but on] his comprehensive review of Keller's methodology and data . . . ." (ECF 60 at 12) But, as Plaintiffs pointed out in their opening brief, the record shows that Dr. Malone's review was far from comprehensive. He based his broad conclusions about the accuracy of Keller's findings on a review of a small, non-representative sample of 100 to 200 paper files—selected randomly in a lay, not statistical, sense—without employing any methodology that would permit extrapolation from that limited review to the broader dataset (of over 5,000 Custody Sessions) that Keller analyzed. (*See* ECF 57 at 10-11) *Cf. GeigTech E. Bay LLC v. Lutron Elecs. Co.*, No. 18 CIV. 05290 (CM), 2023 WL 6614486, at *39 (S.D.N.Y. Sept. 20, 2023) (rebuttal expert's opinions "still must be rooted in some sort of analysis or expertise" otherwise it "amounts to little more than lay criticisms").

Defendant goes on to state that Dr. Malone "was not attempting to identify the percentage of Keller's results that were inaccurate; he was examining whether Keller's entire methodology was unreliable because it purported to determine the actual time to release based upon faulty and incomplete data that did not take into account all the facts and circumstances that may impact the time to release." (ECF 60 at 12 (emphases in original)) Yet, therein lies the problem. Dr. Malone concluded that the Time to Release calculation Keller actually conducted was unreliable because it produced "inaccurate" results. (ECF 50-3 ¶¶ 5, 32–42; ECF 50-4 ¶¶ 22–36) But this sweeping conclusion regarding the accuracy of Keller's *entire analysis* was based solely on Dr. Malone's review of *less than four percent* of the Custody Sessions Keller analyzed—fewer than 200 out of

more than 5,000 Sessions—and his identification of only eight Custody Sessions impacted by two errors, which represents *less than sixteen hundredths of a percent* (0.16%) of the total Custody Sessions Keller analyzed. (*See* ECF 57 at 10-13) As explained, absent any methodology—statistical or otherwise—that would allow him to draw broader conclusions about the accuracy of Keller's entire analysis based on the small number of Custody Sessions reviewed and errors identified, Dr. Malone's conclusions amount to pure speculation. (*Id.*)

Similarly, Dr. Malone provides no basis for concluding that the facts and circumstances he identified as applying to a handful of Custody Sessions are present in the other Custody Sessions Keller analyzed. Unsurprisingly, when asked during his deposition how he could draw any conclusions about whether the individual facts and circumstances he identified—or any others—were present in the more than 4,800 Custody Sessions for which he did not review the corresponding paper files, Dr. Malone testified: "I can't tell you what the individual circumstances and facts are of the other files until I actually review the other files, or somebody else does." (ECF 50-6, 139:21–25). Accordingly, his opinion that the facts and circumstances he identified would be germane to an analysis of "actual time to release" for the over 4,800 Custody Sessions he did not analyze is equally speculative.

Curiously, Defendant claims it "is far from clear why Malone's reports should be excluded for failing to perform a statistical analysis when Keller did not perform any statistical analysis at all." (ECF 60 at 13) But Keller is not a statistician, and she was not retained to perform a statistical analysis. (*See, e.g.*, ECF 45-30 ¶¶ 1, 7) She was retained to apply her *data science* expertise to merge and standardize large datasets in order to calculate the Time to Release for all Custody Sessions that met specified criteria. And because she calculated Time to Release for *all* such

Custody Sessions, no statistical method such as extrapolation or sampling was necessary.[3] By contrast, Dr. Malone is a statistician, and he reviewed only a small *fraction* of the Custody Sessions Keller analyzed, yet sought to draw conclusions about her *entire* analysis without applying any statistical extrapolation or other methodology.

In sum, where Defendant does not and cannot point to any sound principle or methodology underlying Dr. Malone's opinions that Keller's methods or analysis as a whole are flawed, his opinions are unreliable and, accordingly, inadmissible.

**CONCLUSION**

For the reasons discussed in Plaintiffs' opening memorandum and this reply memorandum, the Court should grant Plaintiffs' motion to exclude Dr. Malone's expert reports.

Dated: May 30, 2025

Respectfully submitted,

/s/ *Kate Schwartz*

Kate Schwartz
Caryn Lederer
Emily Brown
HUGHES SOCOL PIERS RESNICK & DYM LTD.
70 W. Madison Street, Suite 4000
Chicago, Illinois 60602
T. (312) 580-0100
kschwartz@hsplegal.com
clederer@hsplegal.com
ebrown@hsplegal.com

Akeeb Dami Animashaun
355 South Grand Avenue, Suite 2450
Los Angeles, California 90071
(929) 266-3971
dami@animashaun.me

Drew Legando (0084209)
MERRIMAN LEGANDO WILLIAMS & KLANG, LLC
1360 West 9th Street, Suite 200
Cleveland, Ohio 44113
(216) 522-9000
drew@merrimanlegal.com

Janet Herold
JUSTICE CATALYST LAW
40 Rector Street, Floor 9
New York, New York 10006
(518) 732-6703
jherold@justicecatalyst.org

*Counsel for Plaintiffs & Proposed Class*

---

[3] Defendant argues that Keller could have performed an outlier analysis, but does not explain why that would be relevant. (ECF 60 at 12-13)