**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ALANNA DUNN, *et al.,* | ) | CASE NO. 1:23-CV-00364-BMB |
| | ) | |
| Plaintiffs, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | |
| CUYAHOGA COUNTY, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT CUYAHOGA COUNTY'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant Cuyahoga County

hereby moves for summary judgment in its favor on all claims alleged by the Plaintiffs in their First

Amended Complaint.

Respectfully submitted,

MICHAEL C. O'MALLEY,
Prosecuting Attorney of Cuyahoga County, Ohio


/s/ *Brendan D. Healy*
Stephen W. Funk (0058506)                                By: BRENDAN D. HEALY (0081225)
ROETZEL & ANDRESS, LPA                                   bhealy@prosecutor.cuyahogacounty.us
222 South Main Street                                    Phone: (216) 698-6447
Akron, Ohio 44308                                        JAKE A. ELLIOTT (0093521)
Telephone: (330) 376-2700                                jelliott@prosecutor.cuyahogacounty.us
Facsimile: (330) 376-4577                                Phone: (216) 443-5756
E-mail: sfunk@ralaw.com                                  BRIDGET E. DEVER (0102462)
                                                         bdever@prosecutor.cuyahogacounty.us
                                                         Phone (216) 443-5947
                                                         Cuyahoga County Prosecutor's Office
                                                         1200 Ontario Street, 8th Floor
                                                         Cleveland, Ohio 44113

                                                         *Counsel for Defendant Cuyahoga County*

**<u>TABLE OF CONTENTS</u>**

Page(s)

TABLE OF AUTHORITIES ......................................................................................... iii

SUMMARY OF ARGUMENT AND ISSUES PRESENTED ....................................... 1

STATEMENT OF FACTS ............................................................................................. 1

    A.    Summary Of County's Release Procedures ............................................. 1

    B.    The Jail Has Continuously Worked To Improve The Release Process ................... 4

LAW AND ARGUMENT ............................................................................................. 5

I.    PLAINTIFFS CANNOT ESTABLISH THAT THEY WERE OVERDETAINED UNDER THE APPLICABLE CONSTITUTIONAL STANDARDS ................................ 5

    A.    Plaintiffs Cannot Establish A Substantive Due Process Violation ........................ 6

        1.    Alanna Dunn ................................................................................. 8

        2.    Cameron Leonard ......................................................................... 9

        3.    Adam Day .................................................................................... 9

        4.    Jason Wilson .............................................................................. 10

        5.    Eric Zeider ................................................................................. 11

        6.    Reginald Haymon ...................................................................... 12

    B.    Plaintiffs Cannot Establish A Procedural Due Process Violation ......................... 13

II.    PLAINTIFFS CANNOT ESTABLISH THE ESSENTIAL ELEMENTS OF THEIR *MONELL* CLAIM AGAINST CUYAHOGA COUNTY ...................................... 14

    A.    Plaintiffs Cannot Prevail On An Inaction Theory Of *Monell* Liability ................. 14

        1.    Plaintiffs Cannot Establish That The County Had Notice Or Constructive Notice Of A Clear And Persistent Pattern Of Prior Unconstitutional Conduct By Jail Employees ........................................... 15

        2.    Plaintiffs Cannot Establish The Deliberate Indifference Element Of An Inaction Theory of *Monell* Liability ................................................. 16

i

        3.      Plaintiffs Cannot Show That Any County Policy Or Custom Was The Direct Cause Or Moving Force Behind Their Alleged Overdetentions .............................................................................................. 17

    B.    Plaintiffs Cannot Establish A Failure to Train or Supervise Claim ........................ 18

CONCLUSION ...................................................................................................................... 20

# TABLE OF AUTHORITIES

Page(s)

**Cases:**

*Baker v. McCollan*, 443 U.S. 137 (1979) ................................................................... 13

*Bd. of County Comm'rs v. Brown*, 520 U.S. 397 (1997) ............................................. 16

*Brass v. County of Los Angeles*, 328 F.3d 1192 (9th Cir. 2003) ...................................7

*Chambers v. Sanders*, 63 F.4th 1092, 1101 (6th Cir. 2023) ..........................................5

*Codrington v. Dolak*, 142 F.4th 884 (6th Cir. 2025) .....................................................5

*Cnty. of Sacramento v. Lewis*, 523 U.S. 833 (1998) .....................................................7

*D'Ambrosio v. Marino*, 747 F.3d 378 (6th Cir. 2014) ........................................... 17, 18

*Doe v. Clairborne Cnty., Tenn.*, 103 F.3d 495 (6th Cir. 1996) ................................... 15

*Franklin v. Franklin Cnty., Kentucky*, 115 F.4th 461 (6th Cir. 2024) ..........15, 17, 18, 20

*Garcia v. Federal National Mortgage Assn.*, 782 F.3d 736 (6th Cir. 2015) ................ 13

*Goldberg v. Hennepin Cnty.*, 417 F.3d 808 (8th Cir. 2005) ....................................... 6, 7

*Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F. 3d 377 (6th Cir. 2004) ........ 20

*Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531 (6th Cir. 2012) ........................ 13

*Hoxie v. Drug Enforcement Admin.*, 419 F.3d 477 (6th Cir. 2005) ............................. 12

*Kovalchuk v. City of Decherd*, 95 F.4th 1035 (6th Cir. 2024) .......................................5

*Lewis v. O'Grady*, 853 F.2d 1366 (7th Cir. 1988) .........................................................7

*Martinez v. Wayne Cnty., Michigan*, 142 F.4th 828 (6th Cir. 2025) ..............................5

*Miller v. Calhoun Cnty.*, 408 F.3d 803 (6th Cir. 2005) ................................... 15, 16, 18

*Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658 (1978) .................. 1, 5, 14, 16

*NRA of Am. v. Magaw*, 132 F.3d 272 (6th Cir. 1997) ................................................. 12

*Rhoades v. Tilley*, 2022 WL 684576 (6th Cir. Mar. 8, 2022) ........................................6

*Shorts v. Bartholomew*, 255 F. App'x 46 (6th Cir. 2007) ................................................. 6

*Thomas v. City of Chattanooga,* 398 F.3d 426 (6th Cir. 2005) ....................................... 14

*West v. Tillman*, 496 F.3d 1321 (11th Cir. 2007) ............................................... 6, *passim*

*Wharton v. Danberg*, 854 F.3d 234 (3d Cir. 2017) ......................................................... 6

*Wilkinson v. Austin*, 545 U.S. 209, 225 (2005) ........................................................... 13

*Winkler v. Madison Cnty.,* 893 F.3d 877 (6th Cir. 2018) ......................................... 17, 18

**Statutes:**

42 U.S.C. § 1983 ............................................................................................................. 5

Ohio Revised Code, Section 2901.07(D) ......................................................................... 8

Ohio Revised Code, Section 2911.12(D) ......................................................................... 8

Ohio Revised Code, Section 2911.12(E) .......................................................................... 8

Ohio Revised Code, Section 2949.08 ............................................................................. 10

Ohio Revised Code, Section 2949.08(C)(1) .................................................................... 10

Ohio Revised Code, Section 2967.191 ..................................................................... 10, 12

**Constitutional Provisions:**

U.S. Constitution, Eighth Amendment ............................................................................. 6

U.S. Constitution, Fourteenth Amendment ............................................................... 1, 5, 6

**Regulations:**

OAC Rule 5120:1-8-09(A) ............................................................................................. 10

OAC Rule 5120:1-8-09(N)(3) ........................................................................................ 10

# INDEX OF EXHIBITS

| Doc. # | Description |
|--------|-------------|
| 66-1 | Second Declaration of Kevin O'Donnell |
| 66-2 | Deposition of Plaintiff Alanna Dunn |
| 66-3 | Deposition of Plaintiff Cameron Leonard |
| 66-4 | Deposition of Plaintiff Jason Wilson |
| 66-5 | Deposition of Plaintiff Eric Zeider |
| 66-6 | Deposition of Plaintiff Reginald Haymon |
| 66-7 | Certified Copy of Judgment Entry in Case No. 2022-TRC-001319 |
| 66-8 | Certified Copy of Judgment Entry in Case No. 2019-TRD-020815 |
| 66-9 | Certified Copy of Judgment Entry Sheet |
| 66-10 | Declaration and Expert Report of Jeff Eiser |

## SUMMARY OF ARGUMENT AND ISSUES PRESENTED

This case involves alleged over-detention claims by six plaintiffs who have alleged that Cuyahoga County violated their due process rights under the Fourteenth Amendment by failing to release them from the Cuyahoga County Correctional Center ("CCCC" or the "Jail") in a timely manner. Since Cuyahoga County is the sole Defendant, Plaintiffs cannot prevail on their Section 1983 claims unless they can prove (1) a constitutional violation; and (2) that the constitutional violation was directly caused by a "policy or custom" of the County under the legal standards set forth in *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658 (1978). Here, as discussed below, the County is entitled to summary judgment on all claims because none of the six plaintiffs can establish that they were overdetained by the Jail under the applicable constitutional standards. Moreover, even if one or more of them could establish a constitutional violation, they cannot satisfy the other essential elements of a *Monell* claim. Accordingly, the Court should enter summary judgment in Defendants' favor on all of the claims alleged in the Plaintiffs' Amended Complaint.

## STATEMENT OF FACTS

### A.  Summary Of County's Release Procedures.

The Cuyahoga County Corrections Center ("CCCC" or the "Jail") houses pretrial detainees and misdemeanor sentenced inmates, and annually books into custody about 20,000 inmates. (Doc.#49-1, Associate Warden, Kevin O'Donnell, Decl. ¶ 6, PageID# 2022). Since early 2018, the Jail also houses "fresh arrests" from the City of Cleveland Police Department ("CPD") pursuant to a written agreement with the City of Cleveland ("Cleveland Contract"). (Doc.#45-1, Cleveland Contract, PageID#342-391). As a detention facility, the Jail generally does not have the discretion to release an inmate on its own. (Doc.#49-1, O'Donnell Decl. ¶15, PageID#2022). Rather, the Jail relies on the courts and the arresting agencies to determine whether an inmate is entitled to release, which are often called "dispositions." (*Id.*) Inmates may have multiple charges, so the Jail must

receive a disposition for each charge before that inmate can be released. (*Id.* at ¶¶16-17, PageID#2027).

During ordinary business hours, employees of the Cuyahoga County Sheriff's Criminal Records Division ("Criminal Records") are responsible for monitoring the Cuyahoga County Common Pleas docket management system, called "CCJIS," to determine whether an inmate is entitled to release, either through Court order or the posting of a bond. (Doc.#49-1, O'Donnell Decl. ¶¶ 33-34, PageID#2030). In so doing, Jail Records Clerks have access to CCJIS system "queues" that alert them when there is relevant action on an inmate's criminal case. (*Id.*); (Doc.#50-8, Decl. of Krystal Lawyer ¶ 12, PageID#2518). The Records Clerk is then responsible for "pulling" the bond information or journal entry from the queue and adding it to the inmate's physical file. (Doc #45-13, Janiese Cage Depo., PageID#1171). Additionally, corrections staff collect disposition paperwork from the Cleveland Municipal Court ("CM Court") and deliver it to the Criminal Records office. (Doc. #45-17, O'Donnell Rule 30(b)(6) Depo., PageID#1414). They also email disposition paperwork to the Records Clerks via a dedicated email address. (*Id.*)

Disposition paperwork is also received from the CPD's "Charging Unit." (Doc. #49-2, Decl. of Kevin Boll, at ¶¶ 10, 18, PageID## 2125-2136). This occurs when the CPD Charging Unit declines to file formal charges – which is called a release with no formal charges or "RNFC" – on an arrestee whom the CPD brought to the Jail. Although not required by the Cleveland Contract, County Jailers historically collected "Final Disposition Receipts" (colloquially called "green slips") from the CPD's Charging Unit. (*Id.* at ¶¶ 18-19, PageID#2136). In 2024, however, the Charging Unit began notifying the County that RNFC dispositions and associated paperwork via email to the Jail Administrator as required by the Cleveland Contract. (Doc. 45-5, Jaenke Depo., PageID# 762); (Doc. #45-17, O'Donnell 30(b)(6) Depo., PageID#1420).

A detailed summary of the release procedures at the Jail is set forth in the First Declaration of Kevin O'Donnell (Doc.#49-1), and in the written procedures and post orders attached to O'Donnell's Second Declaration, which is being filed with this Motion. (Doc.#66-1, O'Donnell Decl. II, Ex. A-K); (Doc.#49-1, O'Donnell Decl. I ¶ 14-48, PageID# 2026-2033). In particular, the Jail's written procedures provide that the Records Clerks are responsible for collecting disposition paperwork and compiling an inmate's release packet. (Doc. #49-1, O'Donnell Decl. ¶¶ 15-16, PageID##2026-2027). After all documentation is received for all charges, a Law Enforcement Automated Data Systems ("LEADS") clerk will then check for any outstanding warrants or other "holds" that may delay the inmate's release. (Doc.#45-5, Jaenke Depo. PageID# 725-726). The Criminal Records supervisor then conducts a final check of the release paperwork for accuracy, and the Records Clerk forwards the completed "release packet" to the Jail's Release Desk via email. (*Id.*). Outside business hours – and on weekends and holidays – supervisors and other correction officers collect the disposition paperwork and will carry out the release clerk's duties. (Doc.#49-1, O'Donnell Decl. at ¶ 23, PageID# 2028).

The Jail has a number of written policies and procedures relating to the release of detainees. (Doc.#66-1, O'Donnell Decl. II, Ex. A-K). In particular, it has adopted "CCCC Policy Number 0008 – Release of Inmates," along with written procedures and post orders that set forth the duties and responsibilities of all employees. (*Id.*) Records Clerks have access to these policies and procedures, and are generally trained for a period of three to six months, either by a supervisor or a more senior Records Clerk, before processing releases on their own. (Doc.#49-1, O'Donnell Decl. ¶ 28, PageID#2029); (Doc.#45-13, Cage Depo., pp. 34-39, PageID#1175-76). Records Clerks are trained on how to access and identify information from IMACS, CCJIS, and the County's dedicated email servers. (Doc.#45-5, Jaenke Depo. pg. 87, PageID#727). They are also taught to recognize documents from the CP Court, the CM Court, the CPD, and other law enforcement agencies. (*Id.*)

There are multiple avenues by which the Jail seeks to ensure that inmates are timely released. As discussed above, an inmate's physical file is reviewed multiple times for accuracy during the release process. Furthermore, after an inmate's disposition paperwork is received, a LEADS check performed, and the paperwork reviewed by a supervisor, the Records Clerk places the inmate's physical file in a bin designated "Outs." (Doc.#49-1, O'Donnell Decl. ¶ 24, PageID# 2028). Each day, Records Clerks are responsible for cross-checking the "Outs" bin with information in the Jail's inmate management system, IMACS, to confirm that inmates have in fact been released from the Jail. (*Id.* at ¶ 25, PageID## 2028-2029). If an inmate has not been released, or if there is a discrepancy between IMACS information and the inmate's physical file, the Records Clerk must notify a supervisor immediately. (*Id.* at ¶ 24-25, PageID## 2028-2029).

**B.     The Jail Has Continuously Worked To Improve The Release Process.**

The Jail has continuously worked over the past 7 years to improve the release process.  In particular, jail officials worked with Cleveland to change the procedure for notifying Jail staff that an arrestee is eligible for a personal bond.  (Doc.#45-16, Tabor Depo. PageID#1369); (Doc.# 45-12, Boll Depo. pp. 143-144, PageID#1145).  The Jail also worked with CPD's Charging Unit to streamline notifications for RNFC dispositions. (Doc.# 45-5, Jaenke Depo., PageID#762). RNFC dispositions are now sent via email to communicate CPD's charging decisions more effectively to the Jailer, who can in turn more quickly notify Criminal Records or the Jail Release Desk to start the release process. (*Id.* at PageID#763).

The County does not ignore mistakes when they are made by its employees in processing releases. Among other things, "coaching" is frequently used as a tool to redress employee mistakes and to help employees to improve. (Doc. #45-10, Henry Depo., PageID # 990); (Doc.#45-5, Jaenke Depo., PageID#754). Moreover, a number of employees were subject to formal discipline, including suspension and removal. (Doc. #45-10, Henry Depo., PageID# 990); (Doc.# 45-6,

Palagyi Depo., PageID# 836); (Doc.#45-11, Brewer Depo. pp. 223-30, PageID#1101-1103); (Doc. #45-13, Cage Depo. pp. 230-231, PageID#1223). Records Supervisor Leah Palagyi received an unpaid suspension after an inmate's release was delayed by two months. (Doc.#45-6, Palagyi Depo. pg. 179, PageID#836). Jailer Terrance Williams and Records Clerks Janiese Cage and Amanda Brewer also were disciplined or received coaching for mistakes. (Doc. #45-14, Boardman Depo. pp. 310-314, PageID #1311-1312); (Doc. #45-11, Brewer Depo. pp. 218-222, 227-230, PageID ##1101-1103); (Doc. #45-13, Cage Depo. pp. 226-231, PageID #1223-1224).

## LAW AND ARGUMENT

### I. PLAINTIFFS CANNOT ESTABLISH THAT THEY WERE OVERDETAINED UNDER THE APPLICABLE CONSTITUTIONAL STANDARDS.

Plaintiffs allege that the County is liable under 42 U.S.C. § 1983 for their alleged overdetentions under the Due Process Clause of the Fourteenth Amendment. Since Cuyahoga County is the sole Defendant, it cannot be held liable under Section 1983 "for an injury inflicted solely by its employees or agents." *Martinez v. Wayne Cnty., Michigan*, 142 F.4th 828, 843 (6th Cir. 2025); *Kovalchuk v. City of Decherd*, 95 F.4th 1035, 1038 (6th Cir. 2024) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Instead, Plaintiffs must show that the constitutional injury was caused by "policy or custom" under the applicable legal standards for *Monell* liability. *See Martinez*, 142 F.4th at 843.

It is well-established that "there can be no liability under *Monell* without an underlying constitutional violation." *Codrington v. Dolak*, 142 F.4th 884, 896 (6th Cir. 2025); *Chambers v. Sanders*, 63 F.4th 1092, 1101-02 (6th Cir. 2023). Thus, before addressing whether the County can be held liable under a *Monell* theory of liability, the Court must first address whether each of the six plaintiffs in the Amended Complaint can establish an underlying constitutional violation.

**A.    Plaintiffs Cannot Establish a Substantive Due Process Violation.**

Plaintiffs' constitutional claims are all based upon the allegation that they were unconstitutionally "overdetained" in violation of the Due Process Clause of the Fourteenth Amendment because they were not timely released from the Jail following a release-triggering event. With respect to this type of over-detention claim, the federal courts have held that "the detention of sentenced inmates is governed by the Eighth Amendment," and "the treatment of pretrial detainees is governed by the Due Process Clause" of the Fourteenth Amendment. *Wharton v. Danberg*, 854 F.3d 234, 247 (3d Cir. 2017). The relevant constitutional standards, however, are not substantially different under the applicable case law. In cases involving an alleged delay in releasing a sentenced inmate, the Sixth Circuit has adopted the following three-part test for analyzing a claim under the Eighth Amendment in the over-detention context:

> [1] [A plaintiff must] first demonstrate that a prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted.
>
> [2] Second, the plaintiff must show that the official either failed to act or took only ineffectual action under circumstances indicating that his or her response to the problem was the product of deliberate indifference to the prisoner's plight.
>
> [3] Finally, the plaintiff must demonstrate a causal connection between the official's response to the problem and the infliction of the unjustified detention.

*Rhoades v. Tilley*, 2022 WL 684576, *3 (6th Cir. Mar. 8, 2022) (quoting *Shorts v. Bartholomew*, 255 F. App'x 46, 55 (6th Cir. 2007)).

Although the alleged over-detention of pretrial detainees is governed by the Due Process Clause of the Fourteenth Amendment, the federal courts generally have applied the same "deliberate indifference" standard that applies to Eighth Amendment claims. *See West v. Tillman*, 496 F.3d 1321, 1327 (11th Cir. 2007); *Goldberg v. Hennepin Cnty.*, 417 F.3d 808, 811 (8th Cir. 2005). In so doing, the federal circuits have emphasized that the "deliberate indifference standard is 'a difficult burden for a plaintiff to meet,'" and requires "conduct that is more than mere

negligence." *West*, 496 F.3d at 1327; *see also Goldberg*, 417 F.3d at 811 ("evidence of merely negligent or unreasonable conduct was not sufficient to establish liability"). Moreover, these federal courts have held that the question of whether a plaintiff can satisfy the "deliberate indifference" standard is a question of law that can be decided via a motion for summary judgment. *West*, 496 F.3d at 1327 ("we are competent to decide *as a matter of law* whether Plaintiffs have carried their burden") (emphasis sic).

In this regard, the "deliberate indifference" standard is based, in part, upon the "shocks-the-conscience" test that the Supreme Court has applied to substantive due process claims. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998). In *Lewis*, the Supreme Court held that "the substantive component of the Due Process Clause is violated by executive action only when it 'can be properly characterized as arbitrary, or conscience shocking, in a constitutional sense.'" *Id.* at 847. Applying this standard, the *Lewis* Court held that a violation of substantive due process relating to the treatment of pretrial detainees cannot arise from mere negligence, but can arise only when, at a minimum, there is "deliberate indifference" to their due process rights. *Id.* at 849-850.

Here, none of the six plaintiffs can establish that their substantive due process rights were violated by an employee of the Jail under the applicable constitutional standard. While Plaintiffs have suggested that they must be immediately released as soon as a jail employee receives notice of a release-triggering event, this argument ignores the fact that a "reasonable time must be allowed for such matters as transportation, identity verification, and processing." *Lewis v. O'Grady*, 853 F.2d 1366, 1370 (7th Cir. 1988). As the Ninth Circuit has held, "delays are inevitable" in processing the release of detainees. *Brass v. County of Los Angeles*, 328 F.3d 1192, 1202 (9th Cir. 2003). Thus, it is not sufficient merely to show that there was a delay, or even a negligent delay; plaintiffs must satisfy "the standard of criminal recklessness needed to prove that [a jail employee] was deliberately indifferent to [their] constitutional rights." *Goldberg*, 417 F.3d at 812.

In this case, there are six plaintiffs – Alanna Dunn, Cameron Leonard, Adam Day, Jason Wilson, Eric Zeider, and Reginald Haymon – who allege that they were not timely released by the Jail. All six Plaintiffs were arrested by the CPD and briefly detained at the County Jail, but none of them suffered a constitutional injury that can give rise to a valid claim for relief.

### 1. *Alanna Dunn*

Dunn was arrested by CPD on March 30, 2021, and booked into the Jail at approximately 1:59 a.m. on charges of menacing and burglary, which is a felony under R.C. 2911.12(D) and (E). (Doc. #49-1, O'Donnell Decl., Ex. 4 & 5 (Dunn Jail Records), PageID#2073-2085). During the booking process, Dunn refused to provide a buccal/DNA swab, as required by R.C. 2901.07(D). (*Id*. at PageID## 2038). Thus, a "Hold" was placed on her release until this condition was met.

Although the CPD later declined to pursue criminal charges, Jail staff did not receive notice of this RNFC decision until 10:23 a.m. on April 1, 2021. (Doc. #49-2, Boll Decl. ¶ 23, PageID #2138). In fact, when Jailer Kevin Boll checked CPD's LERMS system after 5:00 p.m. on March 30, 2021, CPD still showed that Dunn was charged with burglary. (*Id*.) Thus, the Jail did not learn that CPD was not going to charge Dunn with burglary until April 1, 2021, when a Jailer retrieved a green slip from CPD's Charging Unit. (*Id.* at ¶¶18-23. PageID #2136-2137). The Jail released Dunn on April 1 at 2:37 p.m., approximately four hours after receiving CPD's notice and after she provided her required DNA swab. (*Id.*); (Doc.#49-1, O'Donnell Decl. ¶73, PageID##20038-39).

In this regard, there is no evidence in the record to show that Jail employees exhibited "deliberate indifference" to Dunn's due process rights. Dunn testified that she had no memory or personal knowledge of the circumstances of her release. (Doc.#66-2, Dunn Depo. pp. 34-35). Moreover, there is no deposition testimony to show any deliberate indifference by the Jail employees who actually processed Dunn's release, which occurred *in a matter of hours* after receiving notice from the Cleveland Police that Dunn would not be charged. Indeed, in Dunn's

case, some of the delay, if any, was due to her own refusal to provide a DNA swab upon booking. Thus, Dunn cannot establish a constitutional violation under the applicable constitutional standards.

### 2. Cameron Leonard

Leonard was booked into the Jail on July 15, 2022, after his arraignment on a domestic violence and contempt of court charge. (Doc. #49-1, O'Donnell Decl. Ex. 6 (Leonard Jail Records), PageID#2086-2098). On July 17, 2022, the CM Court found that Leonard may be released on a personal bond, but it did not immediately send over the necessary paperwork to effectuate his release. (*Id.*) The Jail does not have the authority to release a detainee on a personal bond until they receive an executed "Court Release Agreement" from the Court. (Doc.#49-1, O'Donnell Decl., ¶ 76, PageID#2039). With respect to Leonard, this Release Agreement was not faxed to the Jail until 3:58 p.m. on July 17, 2022, as indicated by the timestamp on the bottom left corner of the document. (Doc.#49-1, O'Donnell Decl. Ex. 7, Court Release Agreement, PageID#2099); (Doc. #49-3, Tabor Decl., PageID# 2143). The Jail promptly released Leonard shortly after it received this agreement. (Doc.#66-3, Leonard Depo. pp. 31, 36). Accordingly, Leonard cannot show that he was overdetained, let alone satisfy the deliberate indifference standard.

### 3. Adam Day

It is undisputed that Day was booked into the Jail on February 10, 2025, on a driving under the influence charge. (Doc.#49-1, O'Donnell Decl. ¶ 78, PageID#2309, and Ex. 8 (Day Jail Records), PageID## 2101-2113). At that time, however, Day was placed on suicide precautions because he stated that he "had thoughts about killing [him]self or doing serious harm to [him]self" while answering pre-classification questions. (Doc.#49-1, O'Donnell Decl. ¶¶ 79-82, Page ID#2039-40, and O'Donnell Decl. Ex. 8, PageID# 2103). Day was not released from full precautions until February 11, 2022, at 10:10 a.m. (*Id.* at ¶¶ 83-84 and Ex. 9, PageID# 2128). He was then released that day at around 7:00 p.m. (Doc. #49-1, O'Donnell Decl. PageID# 2040).

Under OAC Rule 5120:1-8-09(N)(3), inmates identified as suicide risks must be assessed and cleared by a qualified mental health professional before they can be released. (*See also* Doc.# 49-4, Baskin Decl. ¶ 10-13, PageID# 2152). Under OAC 5120:1-8-09(A), in fact, the health care and mental health care of detainees is "the sole responsibility of qualified health care and mental health professionals." *Id.* Thus, as set forth in the Declaration of Joseph Baskin, M.D., an inmate on suicide precautions may not be released until a mental health professional determines that they are no longer at risk. (Doc. #49-4, Baskin Decl., PageID ## 2151-2152).

Day was eventually found guilty of DUI and sentenced to a jail term of 180 days. He received two days of jail time credit towards his sentence for the time that he spent in the County Jail. (Doc.#66-7, Certified Copy of Judgment Entry in Case No. 2022-TRC-001319). This is fatal to Day's constitutional claims for two reasons. First, there is no evidence that Day was not timely released, or that his release was unconstitutionally delayed under the applicable deliberate indifference standard. Second, Day has not suffered any constitutional injury because he received a credit on his sentence for the time when he was allegedly overdetained in the Jail. Under R.C. 2949.08, a person sentenced to a misdemeanor offense *must* have his or her sentence reduced by the "total number of days the person was confined" as a pretrial detainee. *See* R.C. 2949.08(C)(1); *see also* R.C. §2967.191. Here, it is undisputed that Day received a two-day credit on his sentence. Thus, for this additional reason, Day has not suffered a constitutional injury and cannot prevail on his substantive due process claim.

### 4. Jason Wilson

Like Adam Day, Jason Wilson did not suffer a constitutional injury because he also received jail time credit for the time he was confined in the County Jail. On May 7, 2022, Wilson was arrested and booked into the Jail for drug possession, expired plates, and other charges. (Doc.#66-4, Wilson Depo., pg. 18). The Jail held Wilson until his court date on May 10, 2022, where he pled

guilty to one of the charges, and received three days of jail time credit. (Doc.#49-3, Tabor Decl., Ex. 3, PageID# 2148); (Doc.#66-8, Certified Copy of Judgment Entry in Case No. 2019-TRD-020815). Indeed, like the other named plaintiffs, there is no evidence to show that any jail employee exhibited deliberate indifference in effectuating Wilson's release. Accordingly, the Court should grant summary judgment on Wilson's substantive due process claim because he cannot demonstrate that he was overdetained, cannot demonstrate deliberate indifference, and cannot establish a constitutional injury.

### 5. Eric Zeider

Zeider also received jail time credit for the time he spent in the Jail. On April 12, 2022, CPD arrested Zeider for criminal damaging/endangering and disorderly conduct. (Doc.#66-5, Zeider Depo. pg. 18). Zeider was brought to the Jail and booked into custody on April 13, 2022. (*Id.* at 47-48). He was held until his arraignment on April 14, 2022, where he was given a $7,500 bond. (*Id.* at 47). The Jail released Zeider on April 15, 2022, resulting in Zeider being held in custody for a total of three days. (Doc.#66-5, Zeider Depo. pg. 33). The Court found Zeider guilty for the April 12, 2022, offenses and sentenced him to jail, but granted him three days of Jail Time Credit for the time previously served in the County Jail. (Doc.#49-3, Tabor Decl. ¶ 8-11, PageID#2143); (Doc.#66-9, Certified Copy of Judgment Entry Sheet). Therefore, Zeider also did not sustain a constitutional injury.

Like Wilson, there also is no evidence in the record to show that any jail employee exhibited deliberate indifference in processing Zeider's release on April 15. To establish a constitutional violation, Zeider must show more than a delay in his release. He must show deliberate indifference. Accordingly, the Court should grant summary judgment on Zeider's claim because he cannot demonstrate that he was overdetained, cannot demonstrate deliberate indifference, and cannot establish a constitutional injury.

### 6. Reginald Haymon

Like the other five plaintiffs, Haymon also cannot show that he was overdetained, or that any delay in his release was caused by deliberate indifference by the jail employees who were involved in processing his release. Here, Haymon's overdetention claim is based upon the allegation that his bond was posted on Friday, December 8, 2023, and that he was not released until the following Monday, December 11, 2023. (Doc.#66-6, Haymon Depo. pp. 25-27 and pg. 36). There is no evidence, however, that any jail employee acted with deliberate indifference after receiving actual notice of the bond.

Further, Haymon's claim must be dismissed because the question of whether Haymon has suffered a constitutional injury is not ripe for adjudication. Following his release from the Jail, the Prosecutor re-filed the felony charges against him in Cuyahoga County Case No. CR-24-697778. (Doc.#66-6, Haymon Depo, pp. 56–58); (*see generally* Cuyahoga County Court Docket for Case No. CR-24-697778-A). If he is convicted or pleads guilty to the felony charges against him, Haymon would be entitled to receive credit for the time spent in jail as part of his sentence under R.C. 2967.191. During his deposition, Haymon asserted his Fifth Amendment right when asked whether he committed the charged criminal offenses. (Haymon Depo, pp. 56–58). This is fatal to his civil claim against the County because the Sixth Circuit has held that a negative inference can be drawn from a failure to testify in civil proceedings. *See Hoxie v. Drug Enforcement Admin.*, 419 F.3d 477, 483 (6th Cir. 2005). Thus, for purposes of his civil claim against the County, this Court should infer that Haymon is guilty of the criminal charges, and that he has not suffered a constitutional injury because he will be entitled to jail time credit for the time spent in the Jail.

Indeed, even if the Court did not adopt a negative adverse inference, it nevertheless should dismiss Haymon's substantive due process claim because his alleged constitutional injury is hypothetical and cannot give rise to ripe claim. *NRA of Am. v. Magaw*, 132 F.3d 272, 284 (6th Cir.

1997) (claim is not ripe for adjudication if the first element for Article III standing ("injury in fact") depends on "future events that may not occur as anticipated, or at all"). Accordingly, under the circumstances, the Court should either grant summary judgment in the County's favor because Haymon failed to show a constitutional violation under the applicable deliberate indifference standard or, in the alternative, dismiss Haymon's constitutional claim for lack of ripeness.

### B. Plaintiffs Cannot Establish A Procedural Due Process Violation.

Plaintiffs also cannot establish a procedural due process violation. In general, constitutional claims alleging the over-detention of a pretrial detainee are analyzed under the substantive due process standard, not the procedural due process standard. To show a violation of procedural due process, in fact, the key legal issue is whether "notice and an opportunity to be heard" has been provided "at a meaningful time and in a meaningful context." *Garcia v. Federal National Mortgage Assn.*, 782 F.3d 736, 741 (6th Cir. 2015). Thus, "[w]hen reviewing a procedural due process claim, [a court] must determine whether a protected liberty or property right is at stake and, if so, what process is due." *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 546 (6th Cir. 2012).

Here, over-detention claims generally are not based upon a violation of procedural due process because the Jail does not adjudicate a detainee's right to be released; it merely engages in the administrative task of processing a release that has been ordered by a court or law enforcement agency. Indeed, as the Supreme Court has held, "[t]he Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released." *See Baker v. McCollan*, 443 U.S. 137, 145 (1979). Thus, in the context of criminal prosecutions, procedural due process merely requires that the accused have notice of the factual basis for the criminal charges, and a fair opportunity to be heard on the criminal charges at a meaningful time and in a meaningful manner. *Wilkinson v. Austin*, 545 U.S. 209, 225-26 (2005).

For this reason, there is no case law holding that a jail must provide notice and a hearing before performing the administrative tasks necessary to process a release. Indeed, in this case, there is no evidence in the record to show that the Jail violated any of the plaintiffs' procedural rights to notice and an opportunity to be heard on the underlying criminal charges. Moreover, as previously discussed, they cannot show that they were deprived of a constitutionally protected liberty interest based upon a mere delay in the processing of their release. Accordingly, for all of these reasons, the Court should grant summary judgment on the procedural due process claim.

## II.   PLAINTIFFS CANNOT ESTABLISH THE ESSENTIAL ELEMENTS OF THEIR *MONELL* CLAIM AGAINST CUYAHOGA COUNTY.

Even if Plaintiffs could establish that a jail employee violated their constitutional rights, such a showing still would be insufficient to establish liability by Cuyahoga County under *Monell*. In general, there are four avenues by which a plaintiff can prove a *Monell* claim against a county or municipality:  (1) legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations. *See Thomas v. City of Chattanooga,* 398 F.3d 426, 429 (6th Cir. 2005). Here, Plaintiffs are pursuing the third and fourth avenues, which is often referred to as the "inaction" theory of *Monell* liability.  Plaintiffs, however, cannot satisfy the necessary elements of their "inaction" claim.

### A.   Plaintiffs Cannot Prevail On An Inaction Theory Of *Monell* Liability.

To succeed on an "inaction" theory of *Monell* liability in the Sixth Circuit, the plaintiff must show " '(1) the existence of a clear and persistent pattern of' unconstitutional conduct; (2) 'notice or constructive notice' on the part of the municipality; (3) the municipality's 'tacit approval of the unconstitutional conduct, such that [its] deliberate indifference in [its] failure to act can be said to amount to an official policy of inaction'; and (4) 'that the [municipality's] custom was the 'moving

force' or direct causal link in the constitutional deprivation.' " *Franklin v. Franklin Cnty., Kentucky*, 115 F.4th 461, 472 (6th Cir. 2024) (citations omitted); *Miller v. Calhoun Cnty., Mich.*, 408 F.3d 803, 815 (6th Cir. 2005); *Doe v. Clairborne Cnty., Tenn.*, 103 F.3d 495, 508 (6th Cir. 1996). Here, Plaintiffs cannot establish any of the essential elements.

> **1.** **Plaintiffs Cannot Establish That The County Had Notice Or Constructive Notice Of A Clear And Persistent Pattern Of Prior Unconstitutional Conduct By Jail Employees.**

To show a clear and persistent pattern of unconstitutional conduct, Plaintiffs cannot merely rely upon general allegations that detainees were "overdetained." Rather, Plaintiffs must show that the County had notice of a "clear and persistent pattern" of *unconstitutional* conduct, which, as previously discussed, cannot be based upon mere errors or mistakes in the processing of releases. Indeed, as the Sixth Circuit recently explained in *Franklin*, the "alleged pattern of constitutional violations '*must be particularized*,'" which means, in practical terms, that "the prior examples of wrongdoing must violate the same constitutional rights [as the plaintiff's] and violate them in the same way." *Id.*, 115 F. 4th at 472 (emphasis added) (citations omitted). Thus, Plaintiffs must show that jail employees engaged in unconstitutional conduct that was similar to the conduct that allegedly caused the "overdetentions" of each of the six plaintiffs. *Id.*

In this case, Plaintiffs have relied heavily upon certain reports that were provided to the Jail by Lisa Scafidi, an employee of the City of Cleveland. (Doc.#45-4, Animashaun Decl. Ex. C, Scafidi Reports, PageID#566-589). At her deposition, however, Scafidi repeatedly testified that her reports were prepared for "accounting purposes" and "billing purposes" and were not intended to allege that any person was overdetained. (Doc.#45-2, Scafidi Depo., pp. 22-32, PageID#399-401). Scafidi even conceded there may be "additional factors" that she "did not have access to that may be holding a person in custody that has nothing to do with them being a Cleveland Prisoner." (*Id.* at p. 31, PageID #401). Accordingly, the Scafidi reports are not legally sufficient to put the

County on notice of a clear and persistent pattern of unconstitutional conduct, particularly since Scafidi has no personal knowledge of whether the Jail acted with deliberate indifference under the applicable constitutional standards.

Similarly, Plaintiffs have relied upon certain internal reports authored by CCSD Records Supervisor Leah Palagyi to demonstrate a clear and persistent pattern of unconstitutional conduct. (Doc.#45-4, Animashaun Decl. Ex. D, Palagyi Reports, PageID#592-675). While Plaintiffs' counsel, Dami Animashaun, alleged in a Declaration that Palagyi identified "22 instances" of alleged overdetentions, a review of the reasons for the alleged overdetentions set forth in Animashaun's Declaration shows that the alleged delays were based upon clerical mistakes or errors by individual clerks that, at most, amounted to negligence, not deliberate indifference. (Doc.#45-4, Animashaun Decl. ¶ 6, PageID#478). Thus, there is insufficient evidence to show that the County was on notice of a clear and persistent pattern of *unconstitutional* conduct, which requires evidence of deliberate indifference, not mere negligence. *See West*, 496 F.3d at 1333.

### 2. Plaintiffs Cannot Establish The Deliberate Indifference Element Of An Inaction Theory of *Monell* Liability.

Second, Plaintiffs cannot establish the deliberate indifference element of an "inaction" claim. As the Supreme Court and the Sixth Circuit has held, "[d]eliberate indifference' is a stringent standard of fault, requiring proof that the municipal actor disregarded a known or obvious consequence of his action." *Miller*, 408 F.3d at 815, quoting *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 410 (1997). This deliberate indifference standard "typically requires proof that the municipality was aware of prior unconstitutional actions by its employees and failed to take corrective measures." *Miller*, 408 F.3d at 815.

Here, as previously discussed, the County was not put on notice of a clear and persistent pattern of prior unconstitutional conduct by its employees. While there may be evidence of

mistakes and errors by employees that may have caused delays, the evidence in the record shows that the County did not fail to take corrective measures to address such mistakes. At her deposition, in fact, Warden Michelle Henry testified that she participated in internal meetings with O'Donnell, Palagyi, and Jaenke to discuss how to remedy employee mistakes, and that she tasked Associate Warden O'Donnell with implementing appropriate corrective action to improve employee performance. (Doc. #45-10, Henry Depo., pp. 102-103, PageID #992). Among other things, "coaching" was frequently used as tool to redress employee mistakes and to help employees to improve. (*Id.* at PageID # 990); (Doc.#45-5, Jaenke Depo., PageID# 754). Moreover, as in *West*, the record shows that a number of employees were subject to formal discipline, including suspension and removal. (Doc. #45-10, Henry Depo., PageID#990); (Doc.#45-6, Palagyi Depo., PageID# 836); (Doc.#45-11, Brewer Depo. pp. 223-30, PageID#1101-1103); (Doc. #45-13, Cage Depo. pp. 230-231, PageID#1223). Thus, as in *West*, the evidence in this case simply is "insufficient to support the conclusion" that the County Jail's administrators and supervisors "were deliberately indifferent towards or ignored their supervisory responsibilities." *Id.*, 496 F.3d at 1332.

### 3. Plaintiffs Cannot Show That Any County Policy Or Custom Was The Direct Cause Or Moving Force Behind Their Alleged Overdetentions.

Plaintiffs also cannot demonstrate that the County's alleged policy of "inaction" was the direct cause or the "moving force" behind their alleged constitutional violations. *Franklin*, 115 F. 4th at 473 (affirming summary judgment because "there is no evidence in the record that Franklin County's alleged 'policy of inaction was the 'moving force' of the constitutional deprivation.'") (quoting *Winkler*, 893 F.3d at 902 and *D'Ambrosio v. Marino*, 747 F.3d 378, 387 (6th Cir. 2014). Here, there is no evidence to show that Plaintiffs' alleged overdetentions were due to Jail employees' deliberate indifference, let alone that they were caused by any policy or custom of the County. While Plaintiffs will likely argue that the County should have adopted different supervisory

procedures to prevent potential errors and mistakes by employees, this argument fails to show how a particular change in procedures would have actually prevented the alleged delay in the release of each of the six plaintiffs. Thus, the Court can and should grant summary judgment in the County's favor because, as in *Franklin*, *Winkler*, and *D'Ambrosio*, there is no evidence that any deficiency in the County's policies was the actual cause of the constitutional injury alleged by each plaintiff.

**B.      Plaintiffs Cannot Establish a Failure to Train or Supervise Claim.**

In addition to the arguments set forth above, Plaintiffs also cannot establish a failure to train/supervise claim. "To succeed on a failure to train or supervise, [a plaintiff] 'must prove the following:  (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Winkler v. Madison Cnty.*, 893 F.3d 877, 902 (6th Cir. 2018) (citations omitted). "Mere allegations that an officer was improperly trained or that an injury could have been avoided with better training are insufficient to prove liability." *Miller*, 408 F.3d at 816.  In *West*, the Eleventh Circuit specifically rejected the argument that the jail's training was "inadequate" because it only involved "on-the-job training" and because "records personnel may have benefited from more training." *Id.*, 496 F.3d at 1330-31.  Rather, the Eleventh Circuit affirmed the district court's grant of summary judgment because there was no evidence that the county jail supervisors "were aware of the need for a *different kind* of training or that the training problem . . . actually led regularly to the over-detention of inmates." *Id.* at 1331 (emphasis sic).

The same ruling should be made here.  First, as in *West*, there is insufficient evidence to prove that the training of the County's jailers and records clerks was "*constitutionally* inadequate" for the performance of their duties. *Id.*, 496 F.3d at 1330 (emphasis sic). Rather, the evidence shows that records clerks are trained on their duties and responsibilities for three-to-six months and have access to documents outlining their duties and responsibilities. (Doc. #49-1, O'Donnell Decl. ¶ 26,

PageID# 2029). They are also trained on how to access and identify information in the various computer systems used to process an inmate's release and in understanding the various documents sent by the courts and law enforcement agencies. (Doc.#45-5, Jaenke Depo., PageID#754). Furthermore, records clerks must show proficiency in a particular task before learning a new aspect of their duties. (*Id.* at PageID#727-728); (Doc. #45-13, Cage Depo., PageID#1175).

The evidence further shows that supervisors provide on-the-job training to new employees that includes daily interaction to gauge their progress and answer any questions. (Doc. #45-5, Jaenke Depo., PageID#727-728). All new records clerks receive detailed written procedures on their duties and responsibilities. (Doc. #49-1, O'Donnell Decl., PageID#2029); (Cage Depo., Doc. #45-13, PageID#1175). Similarly, jailers receive post orders outlining how they should perform their job duties. (Doc. #45-12, Boll Depo., PageID#1154); (Doc. #66-1, O'Donnell Decl. II, Exhibit B (IMIS Post Orders)). New jailers are trained on the post order, as well as any other duties they are required to perform, by an existing jailer. (Doc. #45-12, Boler Depo., PageID#1154-55). Thus, based upon all of the undisputed evidence set forth above, Plaintiffs cannot show that the County's training was inadequate, or that any alleged deficiency was due to deliberate indifference and the moving cause of the alleged constitutional violation.

Second, Plaintiffs cannot establish any constitutional deficiency or deliberate indifference in the supervision of jail employees. As previously discussed, "coaching" was frequently used as tool to redress employee mistakes and to help employees to improve. (Doc. #45-10, Henry Depo., PageID #990); (Doc. #45-5, Jaenke Depo., PageID #754). Moreover, as in *West*, the record shows that a number of employees were subject to formal discipline, including suspension and removal. (Doc. #45-10, Henry Depo., PageID #990); (Doc.# 45-6, Palagyi Depo., PageID #836); (Doc. #45-11, Brewer Depo. pp. 223-30, PageID#1101-1103); (Doc. #45-13, Cage Depo. pp. 230-231, PageID#1223). Thus, as in *West*, the evidence in this case is simply "insufficient to support the

conclusion" that the County Jail's administrators and supervisors "were deliberately indifferent towards or ignored their supervisory responsibilities." *Id.*, 496 F.3d at 1332.

Third, Plaintiffs cannot show that there was any constitutional deficiency in their written release policies. Although Plaintiff alleged that there were deficiencies in the County's written release policies in their Motion for Class Certification, they failed to identify any expert from a jail administrator to substantiate their allegations. In contrast, Defendants have retained an expert jail administrator, Jeff Eiser, who has reviewed the County's written procedures and the Plaintiffs' allegations, and has rendered the opinion that the County's existing procedures are not deficient and comply with standard industry practices. (Doc.#66-10, Declaration and Expert Report of Jeff Eiser). Indeed, as in *West*, it is undisputed in this case that "the Jail did have a written policy covering basis procedures for intake and release of inmates." *Id.*, 496 F.3d at 1332. While Plaintiffs allege that the Jail's written procedures did not address every situation that may arise, "the fact that alternative procedures may have better addressed a prisoner's needs does not show that the County was deliberately indifferent." *Franklin*, 115 F. 4th at 474 (quoting *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F. 3d 377, 384 (6th Cir. 2004) (cleaned up). Accordingly, since there is no evidence in the record to show that the County was on notice of an alleged deficiency in their written procedures, the Court should grant summary judgment in the County's favor. *West*, 496 F. 3d at 1333 (holding that evidence of "oversights" and "mistakes" were insufficient to support the contention that the County's supervisors "were on notice that the Jail's release policy was inadequate").

## **CONCLUSION**

For all these reasons, this Court should grant summary judgment in Cuyahoga County's favor on the substantive and procedural due process claims alleged in the Amended Complaint.

Respectfully submitted,

MICHAEL C. O'MALLEY, Prosecuting
Attorney of Cuyahoga County, Ohio

Stephen W. Funk (0058506)
ROETZEL & ANDRESS, LPA
222 South Main Street, Suite 400
Akron, OH 44308
Telephone: 330-849-6602
E-mail: sfunk@ralaw.com

/s/ *Brendan D. Healy*
By: BRENDAN D. HEALY (0081225)
bhealy@prosecutor.cuyahogacounty.us
Phone: (216) 698-6447
JAKE A. ELLIOTT (0093521)
jelliott@prosecutor.cuyahogacounty.us
Phone: (216) 443-5756
BRIDGET E. DEVER (0102462)
bdever@prosecutor.cuyahogacounty.us
Phone (216) 443-5947
Cuyahoga County Prosecutor's Office
1200 Ontario Street, 8th Floor
Cleveland, Ohio 44113

*Counsel for Defendant Cuyahoga County*

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that the case is currently assigned to the standard track, and that this foregoing Memorandum in Support of Defendant's Motion for Summary Judgment complies with the 20-page limitation in N.D. Ohio Loc. R. 7.1(f) for memoranda relating to dispositive motions in standard track cases.

*/s/ Brendan D. Healy*
Brendan D. Healy

**CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of September, 2025, the foregoing *Defendant Cuyahoga County's Motion for Summary Judgment* was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Brendan D. Healy
Brendan D. Healy