| | |
|---|---|
| Alanna Dunn, *et al.* | |
| | |
| Plaintiffs | Case No. 1:23-cv-00364 |
| | |
| v. | Judge Bridget Meehan Brennan |
| | |
| Cuyahoga County, *et al.* | |
| | |
| Defendants | |

**PLAINTIFFS' MEMORANDUM IN**
**OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ......................................................................................... ii

STATEMENT OF ISSUES AND SUMMARY OF ARGUMENT ............................... 1

FACTUAL BACKGROUND .......................................................................................... 1

    A.    CCSD Was on Notice That Its Deficient Release Processes Caused Overdetentions .. 1

    B.    CCSD Made No Meaningful Effort to Remedy Its Overdetention Problem ................ 4

ARGUMENT ................................................................................................................... 6

    A.    The Record Precludes Summary Judgment on Plaintiffs' Constitutional
           Claims ...................................................................................................... 7

        1.    A Jury Could Find CCSD Violated Plaintiffs' Substantive Due Process Rights ... 7

        2.    A Jury Could Find CCSD Violated Plaintiffs' Procedural Due Process
              Rights ................................................................................................ 12

    B.    The Record Precludes Summary Judgment on Plaintiffs' Municipal Liability
           Claims ..................................................................................................... 13

        1.    The Record Shows Clear and Repeated Notice of Overdetentions ...................... 14

        2.    The Record Contains Substantial Evidence of Deliberate Indifference .............. 15

CONCLUSION ............................................................................................................... 20

INDEX OF EXHIBITS CITED ................................................................................. A-1

INDEX OF PREVIOUSLY FILED EXHIBITS CITED .......................................... A-2

# TABLE OF AUTHORITIES

PAGE

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .................................................................................. 6

*Austin v. Mosley*,
No. 23-1425, 2025 WL 448879 (6th Cir. Feb. 10, 2025) ...................... 19

*Barnes v. D.C.*,
242 F.R.D. 113 (D.D.C. 2007) ............................................................. 7, 17

*Berry v. Baca*,
379 F.3d 764 (9th Cir. 2004) .................................................................. 7

*Brooks v. Celeste*,
39 F.3d 125 (6th Cir. 1994) .................................................................. 15

*Carey v. Piphus*,
435 U.S. 247 (1978) ............................................................................. 12

*City of Canton, Ohio v. Harris*,
489 U.S. 378 (1989) ............................................................................. 19

*Farmer v. Brennan*,
511 U.S. 825 (1994) ............................................................................. 14

*Fiacco v. City of Rensselaer, N.Y.*,
783 F.2d 319 (2d Cir. 1986) ................................................................. 20

*Foucha v. Louisiana*,
504 U.S. 71 (1992) ................................................................................. 7

*Franklin v. Franklin Cnty.*,
115 F.4th 461 (6th Cir. 2024) ............................................................... 14

*Gifford v. Hamilton Cnty., Tenn.*,
No. 24-5893, 2025 WL 1541805 (6th Cir. May 30, 2025) ........... 6, 13, 15

*Hicks v. LeBlanc*,
832 F. App'x 836 (5th Cir. 2020) .................................................... 16, 18

*Leach v. Shelby County Sheriff*,
891 F.2d 1241 (6th Cir. 1989) .............................................................. 17

*Mann v. Helmig*,
    289 F. App'x 845 (6th Cir. 2008) ................................................................. 17

*Mathews v. Eldridge*,
    424 U.S. 319 (1976) ...................................................................................... 13

*Meirs v. Ottawa Cnty.*,
    821 F. App'x 445 (6th Cir. 2020) ................................................................. 15

*Ouza v. City of Dearborn Heights, Michigan*,
    969 F.3d 265 (6th Cir. 2020) ................................................................. 18, 19

*Oviatt By & Through Waugh v. Pearce*,
    954 F.2d 1470 (9th Cir. 1992) ............................................................... 13, 16

*Shadrick v. Hopkins Cnty., Ky.*,
    805 F.3d 724 (6th Cir. 2015) ......................................................................... 18

*Shorts v. Bartholomew*,
    255 F. App'x 46 (6th Cir. 2007) ................................................... 6, 8, 13, 14

*Shumate v. City of Adrian*,
    No. 20-10856, 2021 WL 3145709 (E.D. Mich. July 26, 2021) ...................... 20

*Singfield v. Akron Metro. Hous. Auth.*,
    389 F.3d 555 (6th Cir. 2004) ......................................................................... 12

*Spears v. Ruth*,
    589 F.3d 249 (6th Cir. 2009) ........................................................................... 6

*Thomas v. City of Chattanooga*,
    398 F.3d 426 (6th Cir. 2005) ......................................................................... 16

*Tompkins v. Frost*,
    655 F. Supp. 468 (E.D. Mich. 1987) ............................................................. 17

*United States v. Sylver*,
    No. 1:22-CR-708, 2025 WL 1028206 (N.D. Ohio Apr. 7, 2025) .................... 12

*West v. Tillman*,
    496 F.3d 1321 (11th Cir. 2007) ..................................................................... 20

**Statutes**

42 U.S.C. § 1983 ................................................................................................... 6

**Rules**

Fed. R. Civ. P. 56(a) ..............................................................................................6

OAC Rule 5120: l-8-09(N)(3) ...................................................................................9

<u>**STATEMENT OF ISSUES AND SUMMARY OF ARGUMENT**</u>

The key issue is whether material facts exist to show Defendant's deliberate indifference to a persistent pattern of overdetention that caused Plaintiffs' injuries. The record contains sufficient evidence to support such a finding, especially when the evidence is viewed in Plaintiffs' favor, as required. Defendant's motion for summary judgment ignores the applicable legal standard and disregards substantial evidence from which a jury could find that each Plaintiffs' due process rights were violated and that the County is liable. Summary judgment should be denied.[1]

<u>**FACTUAL BACKGROUND**</u>

**A. CCSD Was on Notice That Its Deficient Release Processes Caused Overdetentions**

In 2019, shortly after the Cuyahoga County Sheriff's Department ("CCSD") began housing Cleveland "fresh" (*i.e.* new) arrestees (the "Jail Transition"), Cleveland began warning CCSD of overdetentions. From January 2019 through May 2023, Cleveland sent monthly "Held Beyond Release" Reports ("OD Reports") to CCSD officials identifying Cleveland pretrial detainees whom the Jail failed to release on the day they became eligible. (ECF 45-2, 42:4-19, 227:3-23) The OD Reports were meant to "alert" CCSD to examine its release process and determine whether individuals were improperly held. (ECF 45-2, 28:9-29:3; 222:18-223:11) In an email accompanying its January 2019 OD Report, Cleveland stated: "some people booked into the County jail are . . . held for a day or two and some weeks beyond their release[.]" (Ex. 2)[2]

County officials acknowledged that the OD Reports revealed a systemic issue. In April 2019, a Captain stated he had "been notified that there is a continuing problem with inmates being kept longer than they should." (Ex. 3) Four months later, a Lieutenant described an OD Report as

---

[1] Documents produced by Defendant are authentic and are either business records or records of a regularly conducted activity under Federal Rule of Evidence 803 (Exceptions to Rule Against Hearsay). (*See* Ex. 1)

[2] Plaintiffs cite new exhibits first filed with this memorandum as "Ex." and previously filed documents by their ECF Number. All ECF pincites to page numbers refer to the ECF page numbers stamped at the **top** of the filed document.

"most disturbing," adding, "I can't wrap my head around the inmates . . . that receive bonds and [are] not released until the next day." (Ex. 4) Upon receiving the September 2019 OD Report, CCSD's then-Sheriff wrote: "WE NEED TO FIX THIS PROBLEM!!" (Ex. 5 (emphasis in original)) Defendant's Public Safety and Justice Services Director blamed the problem on poor Jail Transition planning, noting that "delayed release[s]" were "mostly due to the taking of Cleveland prisoners"—which introduced different "Records Systems," "processes and paperwork," and "mechanisms for receiving the info"—and expressing "frustrati[on] that *significant consolidation planning items such as this weren't even planned out*." (Ex. 6 (emphasis added))

In 2019 and 2020, Cleveland's OD Reports collectively listed over 900 possible overdetentions. (*See* Exs. 7, 8) During that time, CCSD did not assign anyone to regularly review the reports to determine the causes of overdetentions. (ECF 45-5, 169:9-170:4; ECF 45-10, 184:23-185:13) Still, from what appears to be one of the few OD Reports CCSD analyzed during that time, it found that **30** individuals were overdetained in one month because Jailers did not process a Release No Formal Charge ("RNFC") after it was entered into "LERMS."[3] (Ex. 9) In 2021, CCSD finally began routinely analyzing all OD Reports to determine how each listed overdetention occurred and where the release process broke down. (ECF 45-5, 170:16-171:7)

As detailed in the Animashaun Declaration (ECF 45-4), CCSD's own findings revealed individuals were routinely not released within a day of receiving an RNFC disposition. (*Id.* ¶ 19, Exs. C, D). In most cases, CCSD's Jailers failed to process the RNFC or CCSD failed to complete the release after a Jailer initiated it. (*Id.*) CCSD also found that individuals entitled to release on minor misdemeanor ("MM") or personal bond eligible ("PBE") charges were routinely

---

[3] Cleveland's electronic LERMS database is the primary way Cleveland conveys RNFC dispositions to CCSD. (ECF 45-12, 66:14-20)

overdetained because staff failed to complete required plea forms or request personal bonds. (*Id.* ¶¶ 21-22, Exs. C, D) Similarly, individuals fitted with GPS monitors were not released within a day because staff failed to notify the Records Department of the installation or process the release after notification. (*Id.* ¶ 23, Exs. C, D) Finally, people who posted bond were frequently not timely released due to staff negligence in processing release paperwork. (*Id.* ¶ 20, Exs. C, D)

Even after CCSD began routinely analyzing OD Reports in 2021, it neither tracked recurring patterns of nor identified the root causes of overdetentions. (ECF 45-10, 123:15-19, 266:22-267:2; ECF 45-6, 64:18-65:14) As such, CCSD officials did not know how many overdetentions occurred during the putative class period, how many resulted from recurring errors, or how many were attributable to specific employees. (ECF 45-10, 40:6-41:12, 268:4-22, 285:4-18; ECF 45-5, 45:4-18) Further, while Warden Henry admitted that it is "important" to know when overdetentions are occurring (*e.g.*, weekends vs. weekdays) to develop targeted solutions, she never ordered anyone to track that information. (ECF 45-10, 203:5-204:2)

Despite receiving years of OD Reports—and warning from Cleveland that "[t]his issue is *clearly* not just a Cleveland prisoner problem" (Ex. 10 (emphasis added))—CCSD made no effort to assess whether similar errors were causing overdetentions of County (Common Pleas Court) detainees. Years later, in January 2022, after learning of CCSD's overdetention of Cleveland detainees, the County Common Pleas Clerk began sending a daily "Bond Report" listing individuals who posted a County bond the previous day but had not been released. (ECF 45-7, 123:2-20, 129:9-130:18; ECF 45-4 at Ex. A) CCSD's analysis of the first Bond Report revealed that an individual was actively being overdetained—already held 17 days beyond release— because a clerk "did not process" her bond. (ECF 45-4 at 61) Thereafter, CCSD Supervisor Palagyi took it on herself to review Bond Reports, but CCSD never assigned her the task, provided any

guidance, or required her to report her findings to supervisors—even when she found CCSD staff caused an overdetention. (ECF 45-6, 110:17-112:18.) Plaintiffs' counsel's review of Bond Reports produced in discovery showed that, in every instance of untimely release—absent a hold or transfer—CCSD was at fault, primarily due to staff error. (ECF 45-4 at ¶ 6, Table 1)

## B. CCSD Made No Meaningful Effort to Remedy Its Overdetention Problem

Despite Palagyi's Bond Report analyses showing CCSD repeatedly overdetained County detainees, CCSD leadership neither evaluated nor modified its release procedures, nor engaged any entity to do so. (ECF 45-18, 115:3-12) Because CCSD leadership did not oversee the Bond Report reviews, they were unaware of overdetentions following Common Pleas bond postings (ECF 45-5, 57:5-17; ECF 45-18, 103:22-104:16; ECF 45-10, 45:3-19) and claimed "[t]here was no reason to" make changes to that release process. (ECF 45-5, 59:22-60:3; ECF 45-18, 115:3-12)

Similarly, despite six years of warnings from Cleveland about systemic overdetentions, CCSD made **no** changes to its **internal release processes**. Indeed, Defendant only claims it made two "improve[ments] [to] the release process" and both relate to release *notifications*: in 2023, it asked Cleveland to send personal bonds with clerk checks identifying PBE charges (ECF 45-5, 256:1-23), and in 2024, it asked Cleveland to email RNFC dispositions in addition to entering them into LERMS (ECF 45-2, 149:2-8). (*See* ECF 66 at 10)[4] CCSD has done nothing to prevent overdetentions caused by common staff errors—such as failing to access release information; overlooking, misplacing, or neglecting to process release paperwork; or failing to forward paperwork for further processing. Instead, CCSD continues to operate without basic safeguards to ensure that its staff receives and acts on all available release information. (*See, e.g.*, ECF 45-10,

---

[4] Notably, these changes occurred after the release of Plaintiff Wilson (PBE overdetention), *see infra* 10-11, and Dunn (RNFC overdetention), *see infra* 7-8, and are therefore irrelevant to this motion.

280:18-281:4 (no action to prevent release emails from being overlooked); ECF 45-5, 209:23-211:2 (no system to identify overlooked release emails); ECF 45-6,138:9-16, 157:24-158:5 (no way to detect an overlooked release record); *id.,* 170:20-171:18 (no processes to identify or address release paperwork that is misplaced or not acted upon); ECF 45-5, 213:14-214:22 (same); ECF 45-6, 173:3-20 (no procedures to ensure full and correct transmission of release paperwork))

Worse, CCSD has not implemented any failsafe procedures, such as basic cross-checks, to prevent overdetentions. For instance, it has never asked Cleveland to provide daily lists of bonds, releases orders, and RNFCs to verify that it received and processed all records. (ECF 45-6, 138:17-142:3; ECF 45-18, 209:5-213:17; ECF 45-17, 298:2-5; ECF 45-19, 7:11-18). Nor does CCSD periodically print a list of all Common Pleas bonds to ensure they were processed. (ECF 45-6, 154:14–156:12; ECF 45-5, 35:3-17) CCSD operates without any system or designated employee responsible for identifying overdetentions, (ECF 45-5, 62:16-24), and only learns of its own errors through external sources (*id.*, 55:12-16, 60:4-8). Warden Henry acknowledged that overdetentions persist but, rather than implementing failsafe procedures, she dismissed them as inevitable, stating "[h]umans make mistakes" and she "can't hire perfect people." (ECF 45-10, 47:2-48:12)

The two processes Defendant cites are not failsafe procedures. (ECF 66 at 9-10) The "second check"—where a supervisor reviews completed release packets (ECF 45-13, 124:23-125:2)—is a procedure to prevent *misreleases* not *overdetentions*. (ECF 45-17, 47:17-21) The "outs process"—where a Record Clerk cross-checks the prior day's release list with the Clerk's pile of completed release packets—is CCSD's only method for confirming releases. (ECF 45-6, 201:8-22) But it can detect only one type of error: when release paperwork is fully processed but the detainee is not released. (*Id.*, 202:1-16) It cannot prevent errors like overlooked, misplaced, or unprocessed release records, which routinely caused overdetentions. (ECF 45-18, 83:3-10; ECF

45-6; 202:6-203:24) It is further deficient since it is a next-day check and is conducted only on weekdays, leaving weekends particularly vulnerable. (*See* ECF 45-6, 201:8-18)

CCSD has made no effort to comprehensively address overdetentions, such as hiring a consultant or specialist. (ECF 45-10, 145:17-146:1, 238:6-14) And it has taken no meaningful steps to do so internally. Though Henry ordered Associate Warden O'Donnell and Lieutenant Jaenke to "come up with an action plan" to comprehensively address the problem in October 2020 (ECF 45-24), no plan had been created by January 2021, when Henry again demanded "a corrective plan." (ECF 45-25; ECF 45-10, 164:17-21) Indeed, Henry testified that she never received "anything official . . . [resembling] an actual outlined plan." (ECF 45-10, 166:10-24)

## **ARGUMENT**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). It is the moving party's burden to demonstrate the absence of a genuine issue of material fact. *Id.* at 256. A court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Id.* at 255.

 Plaintiffs bring procedural and substantive due process claims against the County under 42 U.S.C. § 1983 for overdetaining them. To prevail, Plaintiffs must establish an underlying constitutional violation and municipal liability. *See Spears v. Ruth*, 589 F.3d 249, 256 (6th Cir. 2009). In overdetention cases, the two are intertwined, as both require a showing of deliberate indifference. *See Shorts v. Bartholomew*, 255 F. App'x 46, 55, 57-58 (6th Cir. 2007); *Gifford v. Hamilton Cnty., Tenn.*, No. 24-5893, 2025 WL 1541805, at *3 (6th Cir. May 30, 2025). As explained below, a reasonable jury could find an underlying constitutional violation for each

plaintiff, and there is ample evidence of Defendant's deliberate indifference.

## A. The Record Precludes Summary Judgment on Plaintiffs' Constitutional Claims

### 1. A Jury Could Find CCSD Violated Plaintiffs' Substantive Due Process Rights

"Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause[.]" *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (citation omitted). Accordingly, failing to release a detainee within the time reasonably required to complete administrative tasks incident to release violates substantive due process. *See, e.g.*, *Berry v. Baca*, 379 F.3d 764, 771 (9th Cir. 2004). Indeed, "the great weight of precedent suggests that release must occur within a matter of hours after the right to it accrues." *Barnes v. D.C.*, 242 F.R.D. 113, 117 (D.D.C. 2007). Here, testimony by CCSD's Warden supports the conclusion that six hours was sufficient time to process applicable releases. (ECF 45-10, 27:20-28:21)[5] Since each Plaintiffs' release took significantly more than twice that amount of time, summary judgment is improper.

*Alanna Dunn* was overdetained for over **38 hours**. She was booked into the Jail on two charges on March 30, 2021, and entitled to release by 11:59 p.m. that day,[6] after Cleveland entered RNFCs on both charges. (ECF 45-32 at 2-3; ECF 45-17, 14:7-16:7, 212:13-213:15) Cleveland initially entered a "charged" disposition on one charge but changed it to RNFC. (ECF 45-32 at 7; ECF 45-19, 9:9-10:14, 12:9-13:1) CCSD knew that Cleveland sometimes made such changes (ECF 45-19, 17:8-15; ECF 45-5, 228:1-6) but stopped checking LERMS once a charged disposition was entered, even if Cleveland's charging window remained open (ECF 45-5, 228:12-24; ECF 45-19, 13:12-17). Thus, CCSD did not notice Dunn's disposition change (ECF 45-19,

---

[5] The testimony of staff who perform the Jail's administrative release steps corroborates that six hours should have been sufficient. (*See* ECF 45 at 11-12 (citing testimony by Jailer Boll, Lieutenant Jaenke, and Release Desk LEADS Officer Belle concerning how long it takes to complete steps in release process)

[6] The precise time is unknown because LERMS only provides a date field for the entry of charge dispositions; there is no field identifying the time of such entries. (ECF 45-19, 13:2-11)

13:18-14:23, 18:16-22) and did not begin processing her release until two days later (ECF 45-17, 213:12-214:10; ECF 45-32 at 2, 10). She was released on April 1 at 2:37 p.m. (ECF 45-9, ¶ 6)

Defendant implicitly argues that Dunn was not entitled to release until CCSD retrieved the physical RNFC disposition document (a "Green Slip") from Cleveland on April 1. (ECF 66 at 14) This is wrong. A jailer has an affirmative duty to secure release records. *Shorts*, 255 F. App'x at 59. A jury could find that CCSD failed to release Dunn on March 30 because it routinely stopped checking LERMS after seeing a "charged" entry, despite knowing such entries were sometimes changed—particularly since the Jail has "always" been allowed to release detainees solely based on RNFC entries in LERMS (ECF 45-6, 276:8-15). It could also conclude that CCSD's two-day delay in retrieving the Green Slip—dated March 30, but not picked up until April 1 (ECF 45-32 at 4-5)—independently caused Dunn's overdetention, especially since staff received no guidance on when to retrieve Green Slips and sometimes failed to do so. (ECF 45-14, 66:12-19; ECF 45-5, 138:23-139:6) Finally, a jury could find that Dunn would not have been overdetained had CCSD implemented failsafe procedures to ensure RNFCs were received and processed. *See supra* 4-5.[7]

**Adam Day** was overdetained for more than **21 hours**. He was booked into the Jail on February 10, 2022, and entitled to release when Cleveland issued a personal bond at 10:17 p.m., but was not released until 7:57 p.m. the next day. (ECF 45-9 ¶¶ 11-12, 14; ECF 45-35) Day had no holds but was on medical "full precaution[]" status when the Jail received his bond. (*See* ECF 66 at 15) Defendant argues that Day's release was timely because he remained on "full precautions" until the morning of February 11, asserting that "inmates identified as suicide risks must be

---

[7] Defendant's passing suggestion that "some of the delay, if any" was Dunn's fault because she declined to have her DNA taken during booking is unsupported. (ECF 66 at 14-15) Detainees are released from the Jail in groups, and completing a person's DNA swab to remove a Booking Hold during the release process "doesn't impede the flow" of the group's collective release. (ECF 45-14, 214:7-17) Dunn further testified that her DNA collection, together with other final steps of her release, did not take more than an hour. (ECF 66-2, 44:20-45:13)

assessed and cleared by a qualified mental health professional *before they can be released*." (ECF 66 at 16 (emphasis added)) This is a disputed material fact. The administrative rule Defendant cites for support does not even reference release, much less mandate removal of precautionary status before release. *See* OAC Rule 5120: l-8-09(N)(3). The only additional evidence Defendant cites is Dr. Baskin's declaration that the County "cannot" release a detainee until precaution status is resolved (ECF 49-4 ¶ 13) But when asked about his use of the word "cannot," Dr. Baskin testified that it was a best practice, and he knew no Jail policy prohibiting release because of a detainee's precaution status. (Ex. 11, 77:17-78:22) *CCSD's representative confirmed no such policy exists.* (ECF 45-17, 200:7-14, 202:20-203:3)

Moreover, ample evidence supports a jury finding that Day's overdetention was unrelated to his precaution status. First, reviewing a detainee's precaution status is not a part of CCSD's release process. (*Id.*, 212:4-7) Second, none of CCSD's release policies or post orders for release staff mention checking precaution status. (*See* ECF 66-1, Exs. A-K) Third, Dr. Baskin, who removed Day's precaution status on February 11, indicated that seeing Day first that morning would not have been a priority, as he had no way of knowing Day was entitled to release but awaiting his evaluation. (Ex. 11, 86:12–22) Fourth, Day's release file contains no evidence that Records or the Release Desk was ever notified of Day's removal from precautions or that it triggered Day's release. (Ex. 12) Fifth, the record shows Day's release was triggered by his family contacting the Jail, prompting a Records Clerk to "initiate[] [the] release process." (ECF 45-33) He was released five hours later, consistent with testimony that the release process should take no more than six hours. *See supra* 7. Indeed, Defendant offers no explanation for why Day remained in his housing unit nine hours after his precaution status was resolved (ECF 49-1 at 111), or why he was not released until 10 hours after, which would still render him overdetained.

**Cameron Leonard** was overdetained for over **41 hours**. He was booked into the Jail on July 15, 2022, on one fresh charge, which Cleveland RNFC'd by 11:59 p.m., and a non-jailable MM charge. (ECF 45-38 at 2-3, 6) Leonard was eligible for release after the RNFC. (ECF 45-17, 117:2-8, 242:4–7) Where, as in Leonard's case, a detainee is being held solely on a MM, the Jail Transition Contract requires CCSD to facilitate the release via a plea form, (ECF 45-2, 213:10-214:18, 298:7-11; ECF 45-1 at 5 ¶ E), but CCSD never developed a process to ensure such releases, by plea forms or other means. Between 2018 and 2023, CCSD consistently failed to complete plea forms. (ECF 45-16, 189:14-190:18, 193:3-10) Indeed, CCSD staff and supervisors did not know the process for releasing detainees held solely on MMs or who was responsible for completing plea forms. (ECF 45-14, 108:20-110:6, 116:12-19; ECF 45-12, 150:5-151:10)

Defendant does not—and cannot—dispute that Leonard was entitled to release by midnight on July 15, once he was held solely on MMs, yet he was not released until 5:09 p.m. on July 17, 2022. (ECF 45-39) Nor can it dispute that CCSD had no process for releasing such individuals in 2022. Defendant argues only that Leonard was released the day Cleveland issued a personal bond—two days after he became eligible—after Cleveland, by chance, discovered the error. (ECF 66 at 15) This is irrelevant. A jury could reasonably conclude—based on undisputed evidence—that Leonard was entitled to release once held only on a non-jailable MM, and that CCSD's systemic failure to implement a release process for such individuals caused his overdetention.

**Jason Wilson** was overdetained for over **18 hours**. He was booked into the Jail on May 7, 2022, on one fresh charge and three PBE charges. (ECF 45-36 at 2, 7-8, 10) By 11:59 p.m. on May 9, Cleveland had entered an RNFC for the fresh charge (*id*. at 11), making him eligible for release upon issuance of personal bonds (ECF 45-17, 117:9-14). Between 2018 and 2023, CCSD leaders were aware that Cleveland expected CCSD to request a personal bond to facilitate the release of

individuals held on PBE charges. (ECF 45-5, 255:16-256:23; ECF 45-10, 56:13-57:12) However, CCSD never required staff to make such requests. (ECF 45-10, 249:22-250:22; ECF 45-18, 256:3-7, 261:8-14) Jaenke admitted he hoped staff would use "common sense" and request personal bonds but conceded that this critical process should have been governed by written policy. (ECF 45-5, 258:3-259:3) As a result, Wilson was detained until May 10, 2022, at 6:43 p.m., because CCSD failed to request personal bonds to facilitate his release. (ECF 45-37; ECF 45-17, 220:1-4)

Defendant does not dispute that Wilson was entitled to release once he was held solely on PBE charges. Nor can it deny that, in 2022, CCSD had no policy to facilitate PBE releases, despite knowing Cleveland required it to request personal bonds in order to do so. A jury could reasonably conclude that the only reason Wilson appeared in court on May 10 was because CCSD had no process to—and failed to—release him the day prior, when he became entitled to release.

*Eric Zeider* was overdetained for over **25 hours**. On April 14, 2022, he was ordered released upon payment of a bond and installation of a GPS monitor (ECF 45-40), both of which were satisfied later that day—at 1:22 p.m. and 3:11 p.m., respectively—entitling him to release (*id*.; ECF 45-41). CCSD's review found that the Records Department was not notified of the GPS installation until April 15, and Zeider was not released until 4:36 p.m. that day. (ECF 45-40) CCSD staff were not always present during monitor installations and that caused people to be overdetained because CCSD had no "set procedure" to ensure prompt notification of installations in those circumstances. (ECF 45-6, 220:21-221:23) Defendant does not address—and cannot dispute—this. A jury could conclude that such deficiency was the cause of Zeider's overdetention.

*Reginald Haymon* was overdetained for **over 48 hours**. On December 8, 2023, he was booked into the Jail and ordered released by the County Common Pleas Court upon payment of a bond, which he posted the same day. (Ex. 13; ECF 45-17, 243:18-21) CCSD took no action to

facilitate his release until three days later, when staff finally checked the status of a warrant for which he had a hold, found the warrant to be "no good," and processed his release. (Ex. 13 at CC[]392910; ECF 45-17, 245:1-247:22) Haymon was finally released on December 11, 2023. (ECF 45-9 ¶ 10) Because CCSD took no action to process Haymon's release for three days, a jury could reasonably find that the delay resulted from CCSD's error-prone system for handling release paperwork. CCSD's Bond Report analyses show that individuals were repeatedly overdetained after posting Common Pleas bonds due to staff errors. (ECF 45-4 ¶ 6) Critically, CCSD had no system in place to catch such errors or ensure that all bonds were processed each day. (ECF 45-13, 70:9-12) Defendant does not address these failures.

Defendant claims Plaintiffs Day, Wilson, and Zeider, suffered no substantive due process violation because they received jail credit for the time they were overdetained and that Haymon's claim is not ripe because he *may* later receive credit for such time. (ECF 66 at 16-19) If anything, this argument goes to damages, but because Defendant offers no authority or argument to support the premise that a jail's substantive due process violation can be cured by a judge later awarding credit for time served, it should be deemed waived as insufficiently developed. *See United States v. Sylver*, No. 1:22-CR-708, 2025 WL 1028206, at *9 (N.D. Ohio Apr. 7, 2025) ("It is well settled that perfunctory and undeveloped arguments, unaccompanied by some effort at developed argumentation, are waived." (internal quotations, alterations, and citations omitted)).

### 2. A Jury Could Find CCSD Violated Plaintiffs' Procedural Due Process Rights

The right to procedural due process is "absolute" and protects individuals "from the mistaken or unjustified deprivation of life, liberty, or property," regardless of the "claimant's substantive assertions." *Carey v. Piphus*, 435 U.S. 247, 259, 266 (1978). To prevail on such a claim, a plaintiff must show that existing procedures were inadequate to safeguard a protected interest. *See Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 565 (6th Cir. 2004). "[T]he

paradigmatic liberty interest . . . is freedom from incarceration." *Oviatt By & Through Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992). Thus, due process is violated when safeguards are inadequate to protect against overdetentions. *Id.* at 1473. Here, CCSD violated Plaintiffs' due process rights by failing to implement safeguards to prevent overdetentions and instead relying on third-party complaints to identify individuals entitled to release. *See supra* 4-5.

Defendant ignores CCSD's procedural deficiencies and argues only that no due process violation occurred because notice and opportunity to be heard was not required. (ECF 66 at 19-20) This is wrong. Procedural due process "is not a technical conception with a fixed content[,]" *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976), such that any—or no—procedures would suffice to protect fundamental rights simply because notice and a hearing are not required. Rather, it is "flexible and calls for such procedural protections as the particular situation demands." *Id.* In *Oviatt,* the plaintiff was overdetained for 114 days without arraignment because "the jail system had no internal procedures for keeping track of whether inmates had received an arraignment[.]" 954 F.2d at 1473. Applying *Mathews*, 424 U.S. 319, the Ninth Circuit held that the sheriff violated procedural due process because, as in this case, the only safeguard against known overdetention risk was third-party protestations, and "additional or alternate procedures," including manually comparing jail and court records, could have mitigated that risk. *Oviatt*, 954 F.2d at 1476-77. *See also Shorts*, 255 F. App'x at 59-60. A jury could reach the same conclusion here.

## B. The Record Precludes Summary Judgment on Plaintiffs' Municipal Liability Claims

Deliberate indifference can be established by showing: (1) ratification; (2) tolerance or acquiescence; or (3) inadequate training, supervision, or discipline. *Gifford*, 2025 WL 1541805, at *3; *Shorts*, 255 F. App'x at 55, 57-58. The evidence supports a finding of municipal liability under

all these theories, including the requisite elements of notice and causation. *See id.* at 55.

### 1. The Record Shows Clear and Repeated Notice of Overdetentions

To establish notice, Plaintiffs must show that the County was aware of a clear and persistent pattern of unconstitutional conduct. *See Franklin v. Franklin Cnty.*, 115 F.4th 461, 472 (6th Cir. 2024). Defendant does not and cannot dispute that there was a pattern of unlawful conduct; it contests only that it was on notice. (*See* ECF 66 at 20-24) But the record contains substantial evidence of notice. From 2019 through 2023, Cleveland sent CCSD leaders monthly OD Reports warning that over a **thousand** "people booked into the County jail [were] not released when they should be," with "some [being] held for a day or two and some weeks beyond their release," including "those who are given personal bonds, money bonds, released no formal charges, etc." (Ex. 2). (*See* Exs. 7, 8; ECF 45-4, Exs. C, D) CCSD analyzed these reports in 2021 and 2022 and found that scores of pretrial detainees were not released within 24 hours of becoming eligible. (ECF 45-4, Exs. C, D) A similar conclusion was reached in CCSD's analyses of the Bond Reports. (*Id.* at Ex. A) This alone creates a genuine issue of material fact regarding notice.

Defendant argues, incorrectly and without citation or support, that the OD Reports were not "legally sufficient" notice because they were purportedly sent for administrative purposes and included no conclusions about deliberate indifference. (ECF 66 at 21-22) Notice is satisfied when an official is "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and "also draw[s] the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). In 2019, CCSD's Sheriff wrote in response to an OD Report, "WE NEED TO FIX THIS PROBLEM!!" underscoring that CCSD long inferred and knew from the OD Reports that

substantial harm was occurring.[8] Further, as noted below (*see Ratification*), deliberate indifference may be shown when a defendant ignores multiple complaints—meaning that it need not investigate, let alone adjudicate, each complaint for it to constitute notice of a risk of serious harm. Defendant also claims the 22 overdetentions identified in CCSD's Bond Report analyses cannot establish a pattern of unconstitutional conduct because they reflect "mere negligence." (ECF 66 at 22) This argument fails because, even if the Bond Reports were the only source of notice (they are not), "repeated examples of [negligence] *bespeak* []deliberate indifference by [] authorities." *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994) (emphasis in original) (citation omitted).

### 2. The Record Contains Substantial Evidence of Deliberate Indifference

*Ratification*. A plaintiff can "demonstrate municipal ratification by showing a failure to investigate when there were multiple earlier inadequate investigations that concern comparable claims." *Gifford*, 2025 WL 1541805, at *3. Ample evidence supports municipal liability on this ground. A jury could find that in 2019 and 2020, Defendant routinely failed to investigate potential overdetentions identified in the OD Reports CCSD officials received monthly. (ECF 45-5, 170:1-4; ECF 45-10, 37:19-39:1) And while CCSD began analyzing all OD Reports in 2021, its "failure to conduct a more comprehensive investigation" could reasonably be found to reflect deliberate indifference. *Meirs v. Ottawa Cnty.*, 821 F. App'x 445, 454 (6th Cir. 2020). For instance, despite the importance of knowing when and how overdetentions occurred, CCSD failed to track recurring patterns of overdetention or identify their root causes (ECF 45-10, 203:5-204:2; 266:22-267:2; ECF 45-6, 64:18-65:6) Thus, CCSD does not know how many overdetentions occurred, whether they stemmed from recurring errors, or which employees were responsible, and could not

---

[8] A jury could find that the OD Reports were meant to alert CCSD to possible overdetentions, not just serve billing purposes. (*See* ECF 45-2, 28:9-29:3) Scafidi's practice was to send two separate reports—one to CCSD's fiscal department and one "worded a little clearer" to leadership as an "alert" to "look at [CCSD's] process." (*Id.*, 28:17-24)

adequately address the problem. (ECF 45-10, 40:6-41:9, 268:16-24, 285:4-18; ECF 45-5, 45:4-18)

*Acquiescence/Inaction*. To prevail on an inaction theory, Plaintiffs must show that CCSD had an "unwritten but nevertheless entrenched" policy of tolerating rights violations. *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The record supports such a finding. First, it is undisputed that over a four-year period (2019 to 2023) during which CCSD repeatedly received notice and confirmed that it overdetained pretrial detainees, including the Plaintiffs, CCSD implemented no policies to address overdetentions or improve its release procedures. *See supra* 4-5. Indeed, for the better part of four and five years, respectively, CCSD had no process to effectuate the release of individuals being detained on MMs or PBE charges. *See supra* 10-11. CCSD's failure to adopt a policy in response to the known risk of overdetentions constitutes deliberate indifference. *See Hicks v. LeBlanc*, 832 F. App'x 836, 841 (5th Cir. 2020). Second, as in *Oviatt*, CCSD's failure to implement checks and failsafe procedures to prevent overdetentions, despite clear evidence it had a problem, shows deliberate indifference. 954 F.2d at 1476. Third, CCSD's failure to implement a comprehensive plan to address overdetentions further supports a finding of deliberate indifference. Based on Warden Henry's own directives, a jury could conclude that, since 2020, CCSD recognized the need for a comprehensive "corrective plan" to address overdetentions. (ECF 45-10, 166:10-13) Yet, no plan was ever created. (*Id.*, 166:14-17)

Defendant ignores this substantial evidence of inaction and instead selectively highlights limited parts of the record to argue that the evidence of inaction "simply is insufficient[.]" (ECF 66 at 23 (internal quotations omitted)) But even if the record were confined to the narrow issues Defendant addresses, summary judgment would still be inappropriate. Defendant argues that CCSD's inaction cannot, as a matter of law, constitute deliberate indifference because Henry tasked O'Donnell and Jaenke with issuing corrective action, and formal discipline and coaching

were issued. (*Id.*) However, Henry admitted that she did not instruct her direct reports to always coach staff whose errors caused overdetentions, and she did not know whether CCSD coached every employee responsible for such errors or disciplined all employees who committed repeated errors that caused overdetentions. (ECF 45-10, 99:4-100:2, 100:22-101:1) Indeed, at this stage, this Court must conclude that no corrective action was taken for over a year after Henry's December 2020 directive, as the next documented action produced by Defendant is dated March 2022. (ECF 45-4 ¶ 27; *see also* ECF 45-10, 233:6-234:9 (discussing reissuing directive in January 2022)) And, as explained below, a jury could find that the limited corrective actions CCSD issued were plainly inadequate to address the scope and severity of the problem. *See infra* 19-20.

Defendant also argues that Plaintiffs cannot establish causation for their injuries under this theory[9] because they cannot prove that any procedures would have prevented their overdetentions. (ECF 66 at 23-24) This is incorrect. To show causation, Plaintiffs need only demonstrate an "affirmative link between the policy and the particular . . . violation," *Mann v. Helmig*, 289 F. App'x 845, 850 (6th Cir. 2008)—a question typically left to the jury, *Barnes v. D.C.*, 793 F. Supp. 2d 260, 285 (D.D.C. 2011). Here, a jury could easily find that if Defendant had policies to effectuate MM and PBE releases—which it did not—Leonard and Wilson would not have been overdetained. Similarly, even setting aside other systemic deficiencies that could be found to have caused their overdetentions in the first instance, *see supra* 7-9, 11-12, a jury could find that Dunn, Day, Zeider, and Haymon, would not have been overdetained if CCSD had implemented periodic checks or other failsafe procedures to ensure all releases were properly processed and completed.

---

[9] Defendant does not challenge causation on any other theories of municipal liability. In any event, a "very strong inference" of causation exists where, as here, a defendant failed to adequately investigate repeated complaints. *Tompkins v. Frost*, 655 F. Supp. 468, 472 (E.D. Mich. 1987). And as the court did in *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1247-48 (6th Cir. 1989), a jury could find CCSD's systematic failure to discipline staff concerning dozens of overdetention incidents, *see infra* 19-20, constituted deliberate indifference.

Palagyi confirmed this, testifying for instance that she and her supervisor Jaenke believed it was a "good idea" to request a daily list of bonds posted to enable a "crosscheck" and ensure all bonds were received and processed, but it was never implemented. (ECF 45-6, 138:17-139:6, 140:14-141:19) Similar internal crosschecks could have prevented other overdetentions. (*E.g.*, ECF 45-2, 97:5-101:17 (testifying that reviewing a daily list of RNFCs would serve as a "backup" and "check[] and balance[]")) A jury could conclude safeguards weren't just "good" ideas—they were necessary, and Defendant's failure to implement them caused Plaintiffs' overdetentions.

***Failure to Train/Supervise.*** To prevail on this theory, Plaintiffs must show that Defendants' "training program and supervision were inadequate for the tasks [their employees] were required to perform." *Shadrick v. Hopkins Cnty., Ky.*, 805 F.3d 724, 738 (6th Cir. 2015). A jury could find CCSD's failure "to provide any type of training [on] . . . recurring situations"—including releasing detainees being held on MM or PBE charges, or after GPS installations—"amount[s] to deliberate indifference." *Ouza v. City of Dearborn Heights, Michigan*, 969 F.3d 265, 289 (6th Cir. 2020).

A jury can further find that clerical errors and staff failures, such as those found by CCSD in its analyses of OD and Bond Reports, "speak to the incompetence of [CCSD] employees and the lack of adequate training and supervision[,]" especially given Defendants' failure to implement any new procedures after over four years of documented overdetention. *Hicks*, 832 F. App'x at 842. For instance, CCSD does not require supervisors to periodically verify that all bonds received by email or queue were processed (ECF 45-5, 214:23-215:4, 224:13-21), nor are staff required to submit end-of-shift reports confirming that they completed such checks themselves (*id.* 251:5-10). The same is true for RNFC releases—supervisors are not required to verify that they have been processed, nor are Jailers required to confirm this themselves. (*Id.* 226:14-18, 227:4-8) The evidence also shows CCSD did not provide annual or other periodic training to Records Clerks or

Jailers about performing their jobs, despite knowing staff errors routinely caused overdetentions. (*Id.* 91:21-92:1, 146:11-14) And it repeatedly failed to conduct annual performance reviews for the first four years it was aware of its overdetention problem, in violation of its own polices, and only finally did so after this suit was filed. (ECF 45-10, 139:2-17; ECF 45-6, 44:3-13). *See Ouza*, 969 F.3d at 289 (failure to conduct performance evaluation is evidence of deliberate indifference).

Defendants argue there was no failure to train since CCSD staff received some generalized training and supervision. (ECF 66 at 24-25) But the relevant question is not whether staff received any training or supervision at all; it is whether there was a "need for more or different training" or supervision. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989). Where evidence shows CCSD failed to train staff on recurring issues and failed to implement new training or supervision procedures to prevent repeated errors from causing overdetentions, a jury could reasonably find that CCSD staff needed more and different training and supervision.

***Failure to discipline.*** A failure to discipline can be established by showing the defendant was on notice that its discipline was inadequate and likely to result in constitutional violations, yet failed to change. *See Austin v. Mosley*, No. 23-1425, 2025 WL 448879, at *4 (6th Cir. Feb. 10, 2025) (citation omitted). A jury could find that in 2021 CCSD knew staff errors repeatedly caused overdetentions, but it issued no coaching or discipline—which must be documented (ECF 45-10, 96:2-7)—for an entire year prior to March 2022. (ECF 45-4, ¶¶ 25-27, Exs. E-G) Even after that, a jury could conclude CCSD's response was insufficient. A jury could find CCSD disciplined only one employee and issued coaching just 11 times (*id.*), despite its own analyses identifying over 100 staff-caused overdetentions[10] between 2021 and 2023. CCSD did not even coach or discipline

---

[10] This figure is conservative and includes only the following: 22 instances of staff-caused overdetentions after a Common Pleas bond was posted (ECF 45-4 ¶ 6); 59 instances in which staff failed to complete RNFCs releases entered into LERMS (*id.* ¶¶ 19 a, b); 21 instances where staff failed to process a bond or release order after it was sent to Records (*id.* ¶ 20 b); and 8 instances where Records did not process a release after a GPS notification (*id.* ¶ 23 b).

an employee known to have caused a 17-day overdetention. (*Id.* at Exs. E-G; ECF 45-18, 121:17-122:2, 124:17-21) By contrast, it disciplined at least one employee (sometimes even supervisors) after every misrelease. (ECF 45-5, 201:14-203:2) That CCSD responded to an "alarming pattern [of overdetentions] . . . with nothing more than 'counseling,'" or coaching, "rather than any substantial discipline," is evidence of deliberate indifference. *Shumate v. City of Adrian*, No. 20-10856, 2021 WL 3145709, at *10 (E.D. Mich. July 26, 2021). This is especially true given that CCSD's reliance on coaching—rather than discipline—to address staff negligence that caused overdetentions violated its own policies. (ECF 45-10, 92:18-93:8 (admitting employee negligence warrants at minimum a formal written warning, per disciplinary policy); ECF 45-5, 197:10-15). *See Fiacco v. City of Rensselaer, N.Y.*, 783 F.2d 319, 329 (2d Cir. 1986) ("[E]vidence . . . that the City had in place general procedures relating to the appropriate [discipline] of police officers but had declined to implement them" supports a finding of deliberate indifference).

Citing *West v. Tillman*, 496 F.3d 1321 (11th Cir. 2007), Defendant argues that there was no failure to discipline because *some* unspecified discipline was issued. (ECF 66 at 25) But *West* is inapposite. There, unlike here, the "record [did] not show that before Plaintiffs' over-detentions, the [] Defendants were aware of *regular,* as opposed to occasional, instances of inmate over-detention." *West*, 496 F.3d at 1332 (emphasis in original). Moreover, unlike here, there was no indication in *West* that systemic failures caused Plaintiffs' overdetentions. Under the circumstances here—where CCSD was long aware of a pattern of overdetentions—a jury could readily find that CCSD's infrequent and sporadic discipline, despite repeatedly determining that its employees caused overdetentions, demonstrates deliberate indifference.

## <u>CONCLUSION</u>

This Court should deny Defendant's Motion for Summary Judgment.

Dated: October 20, 2025        Respectfully submitted,

/s/ *Kate Schwartz*

Drew Legando (0084209)
MERRIMAN LEGANDO WILLIAMS & KLANG, LLC
1360 West 9th Street, Suite 200
Cleveland, Ohio 44113
(216) 522-9000
drew@merrimanlegal.com

Kate Schwartz
Caryn Lederer
Emily Brown
HUGHES SOCOL PIERS RESNICK & DYM LTD.
70 W. Madison Street, Suite 4000
Chicago, Illinois 60602
T. (312) 580-0100
kschwartz@hsplegal.com
clederer@hsplegal.com
ebrown@hsplegal.com

Janet Herold
JUSTICE CATALYST LAW
40 Rector Street, Floor 9
New York, New York 10006
(518) 732-6703
jherold@justicecatalyst.org

Akeeb Dami Animashaun
355 South Grand Avenue, Suite 2450
Los Angeles, California 90071
(929) 266-3971
dami@animashaun.me

*Counsel for Plaintiffs & Proposed Class*

## INDEX OF EXHIBITS CITED

| | |
|---|---|
| Exhibit 1 | *Dunn v. Cuyahoga County* - Stipulations Regarding Authenticity and FRE 803 Foundation as to Documents Produced by County |
| Exhibit 2 | March 28, 2019, email from **David Carroll**, ***Cleveland Acting Commissioner***, to **Clifford Pinkney**, ***CCSD Sheriff***, re: "Prisoners held beyond release dates" |
| Exhibit 3 | August 15, 2019, email from **Donald Gerome, *CCSD Captain***, to David Carroll re: being notified of "continuing problem with inmates being kept longer than they should" |
| Exhibit 4 | August 29, 2019, email from **Miguel Caraballo, *CCSD Lieutenant***, to **Leah Palagyi, *CCSD Records Supervisor***, re: July 2019 Cleveland OD Report |
| Exhibit 5 | November 13, 2019, email from **David Schilling, *CCSD Sheriff***, to **Kevin O'Donnell, *CCSD Jail Associate Warden***, and others re: September 2019 OD Report, stating "WE NEED TO FIX THIS PROBLEM!!" |
| Exhibit 6 | August 29, 2019, email from **Brandy Carney, *County Director of Public Safety & Justice Services***, to **Nailah Byrd, *County Clerk of Court*s**, stating "significant consolidation planning items" for Jail Transition "weren't even planned out" |
| Exhibit 7 | 2019 Cleveland OD Reports and cover emails |
| Exhibit 8 | 2020 Cleveland OD Reports and cover emails |
| Exhibit 9 | August 5, 2019, email from Miguel Caraballo to Leah Palagyi attaching modified June 2019 OD Report identifying "ones we determined are the Jailer's responsibility to review [LERMS]" |
| Exhibit 10 | August 27, 2019, email from David Carroll to **Ronda Gibson, *CCSD Jail Administrator***, stating overdetention "issue is clearly not just a Cleveland prisoner problem" |
| Exhibit 11 | Excerpts of Deposition of **Joseph Baskin, M.D. – *MetroHealth, Division Director of Correctional Medicine*** |
| Exhibit 12 | CCSD Paper Booking/Release File for Plaintiff Adam Day |
| Exhibit 13 | CCSD Paper Booking/Release File for Plaintiff Reginald Haymon |

# INDEX OF PREVIOUSLY FILED EXHIBITS CITED

| ECF 45-1 | Agreement Between the City of Cleveland and Cuyahoga County, Ohio for the Cuyahoga County Sheriff's Department to House and Provide Services for City Prisoners (CC0000371929-977) |
|---|---|
| ECF 45-2 | Deposition of **Lisa Scafidi – *Cleveland Jail Liaison*** |
| ECF 45-4 | Declaration of A. Dami Animashaun Regarding Defendant's Discovery Productions |
| ECF 45-5 | Deposition of **Russell Jaenke – *CCSD Jail Lieutenant*** |
| ECF 45-6 | Deposition of **Leah Palagyi – *CCSD Records Department Supervisor (a.k.a. Administrative Support Supervisor)*** |
| ECF 45-7 | Deposition of **Krystal Lawyer – *Cuyahoga County Common Pleas Clerk of Court, Criminal Manager*** |
| ECF 45-9 | Defendant's Supplemental Responses to Plaintiff's First Set of Requests for Admission |
| ECF 45-10 | Deposition of **Michelle Henry – *CCSD Jail Warden*** |
| ECF 45-12 | Deposition of **Kevin Boll** (Part 1, dated August 28, 2024) **– *CCSD Jailer*** |
| ECF 45-13 | Deposition of **Janiese Cage – *CCSD Records Clerk*** |
| ECF 45-14 | Deposition of **Steven Boardman – *CCSD Jail Sergeant*** |
| ECF 45-16 | Deposition of **Ronald Tabor** – *Cleveland Municipal Court, Director, Criminal Division* |
| ECF 45-17 | Deposition of County's Rule 30(b)(6) Representative, Kevin O'Donnell |
| ECF 45-18 | Deposition of **Kevin O'Donnell** (Individual Capacity) **– *CCSD Jail Associate Warden*** |
| ECF 45-19 | Deposition of Kevin Boll (Part 2, dated October 7, 2024) - CCSD Jailer |
| ECF 45-24 | October 29, 2020, email from Michelle Henry to Kevin O'Donnell and Russell Jaenke stating: "need to come up with an action plan [for] recent release problems" |
| ECF 45-25 | January 5, 2021, email from Michelle Henry to Kevin O'Donnell and Russell Jaenke stating: "Draft up a corrective plan" in response to Cleveland OD Report |
| ECF 45-32 | CCSD Paper Booking/Release File for Plaintiff Alanna Dunn |
| ECF 45-33 | Excerpt of CCSD Analysis of February 2022 Cleveland OD Report (Entry for Plaintiff Adam Day Highlighted) |
| ECF 45-35 | Excerpt from Cleveland Data Production "Cleveland Municipal Updated Bond Posted with Times" - Entry for Plaintiff Adam Day |
| ECF 45-36 | CCSD Paper Booking/Release File for Plaintiff Jason Wilson (CC0000392911-926) |

| | |
|---|---|
| ECF 45-37 | Excerpt of CCSD Analysis of May 2022 Cleveland OD Report (Entry for Plaintiff Jason Wilson Highlighted) |
| ECF 45-38 | CCSD Paper Booking/Release File for Plaintiff Cameron Leonard (CC0000392949-957) |
| ECF 45-39 | Excerpt of CCSD Analysis of July 2022 Cleveland OD Report (Entry for Plaintiff Cameron Leonard Highlighted) |
| ECF 45-40 | Excerpt of CCSD Analysis of April 2022 Cleveland OD Report (Entry for Plaintiff Eric Zeider Highlighted) |
| ECF 45-41 | June 2, 2022, email from Lisa Scafidi attaching April 2022 Cleveland OD Report (Entry for Plaintiff Eric Zeider Highlighted) |